

**Jeff Landry**
Attorney General

# State of Louisiana
DEPARTMENT OF JUSTICE
LITIGATION DIVISION
**LAFAYETTE**

556 JEFFERSON ST., 4TH FLOOR
LAFAYETTE, LA 70501
TEL: (337) 262-1700
FAX: (337) 262-1707

February 28, 2022

*Via Certified Mail*
*Return Receipt Requested*
*7016 1370 0001 4400 2925*

Kimonlyn Minor
409 South Bailey St.
Abbeville, LA 70510

Re:   *Kimonlyn Minor vs. LSU-E, et al.*
Western USDC; Lafayette Parish; Docket #: 6:21-cv-4036
USDC-Lafayette; ORM # 21G1028MI0075; TPA # C299200095-0001-01

Dear Ms. Minor:

Enclosed please find the following documents which were filed on behalf of Defendants, Louisiana State University at Eunice, the Board of Supervisors of Louisiana State University Agricultural and Mechanical College, and Dr. Kyle Smith:

1)   Motion to Dismiss Pursuant to FRCP 12(B)(4), 12(b)(5), and 12(b)(6);
2)   Memorandum in Support of Motion to Dismiss Pursuant to FRCP 12(B)(4), 12(b)(5), and 12(b)(6);
3)   Exhibit A – LSUE Fall 2020 Code of Student Conduct;
4)   Exhibit B – LSUE 2020-11-05 Charge Letter Smith-Minor;
5)   Exhibit C – LSUE 2020-11-06 Accountability Outcome Letter Smith-Minor;
6)   Exhibit D – Smith 2020-11-11 Internal Memo;
7)   Exhibit E – LSUE 2020-11-06 Letter Smith-Minor; and
8)   Exhibit E (corrected) – LSUE 2020-11-16 UHP Findings.

With kindest regards, I am

Sincerely,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:

**CRANAY D. MURPHY**
**Assistant Attorney General**

CDM:ald
Enclosures
cc:   Rose German, Examiner

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| KIMONLYN MINOR | : | CIVIL ACTION NO. 6:21-CV-04036 |
| VERSUS | : | JUDGE MICHAEL J. JUNEAUX |
| LOUISIANA STATE UNIVERSITY AT EUNICE, ET AL | : | MAGISTRATE JUDGE PATRICK J. HANNA |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## MOTION TO DISMISS
## PURSUANT TO FRCP 12(b)(4), 12(b)(5), AND 12(b)(6)

NOW INTO COURT, through undersigned counsel, come Defendants, **LOUISIANA STATE UNIVERSITY AT EUNICE (hereinafter "LSUE"), the BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVIERSITY AGRICULTURAL AND MECHANICAL COLLEGE (erroneously referred to as "The LSUE Board of Supervisors)(hereinafter "the BOARD"), and DR. KYLE SMITH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSOCIATE VICE CHANCELLOR FOR STUDENT AFFAIRS AND DEAN OF STUDENTS FOR LOUISIANA STATE UNIVERSITY AT EUNICE (hereinafter "DR. SMITH"),** who respectfully submit this Motion to Dismiss in response to the Complaint filed by Plaintiff, Kimonlyn Minor, on November 22, 2021, in the above-captioned matter. Defendants seek the prejudicial dismissal of Plaintiff's claim(s) against them pursuant to Federal Rules of Civil Procedure 12(b)(4), 12(b)5), and 12(b)(6) for the reasons set forth more fully in the accompanying Memorandum in Support.

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**

*/s/ Cranay D. Murphy*
Cranay D. Murphy T.A. (36600)

Assistant Attorney General
Louisiana Department of Justice –
Division of Risk Litigation
556 Jefferson Street, 4th Floor
Lafayette, Louisiana   70501
Telephone: (337) 262-1700
Facsimile: (337) 262-1707
Email: Murphyc@ag.louisiana.gov
Counsel for Defendants, Louisiana State
University at Eunice, the Board of
Supervisors of Louisiana State University
Technical and Mechanical College, and
Kyle Smith, individually and in his official
capacity as Vice Chancellor for Student
Affairs and Dean of Students for Louisiana
State University at Eunice

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| KIMONLYN MINOR | : | CIVIL ACTION NO. 6:21-CV-04036 |
| VERSUS | : | JUDGE MICHAEL J. JUNEAUX |
| LOUISIANA STATE UNIVERSITY AT EUNICE, ET AL | : | MAGISTRATE JUDGE PATRICK J. HANNA |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(4), 12(b)(5) and 12(b)(6)

Respectfully submitted:

**JEFF LANDRY
ATTORNEY GENERAL**

*/s/ Cranay D. Murphy*
Cranay D. Murphy (36600)
Assistant Attorney General
Louisiana Department of Justice –
Division of Risk Litigation
556 Jefferson Street, 4th Floor
Lafayette, Louisiana 70501
Telephone: (337) 262-1700
Facsimile: (337) 262-1707
Email: Murphyc@ag.louisiana.gov
Counsel for Defendants, Louisiana State
University at Eunice, the Board of
Supervisors of Louisiana State University
Technical and Mechanical College, and
Kyle Smith, individually and in his official
capacity as Vice Chancellor for Student
Affairs and Dean of Students for Louisiana
State University at Eunice

–1–

**TABLE OF CONTENTS**

I.  **INTRODUCTON** .................................................................................................4

II. **BACKGROUND** .................................................................................................6

    **A.**    *Minor enrolls in the LSUE nursing program; is informed of the requirements under the Code of Student Conduct as well as the criteria for retention, progression, and re-entry/readmission process for the LSUE nursing program; but struggles to meet academic requirements and criteria* ....................................6

    **B.**    *Minor requests and is granted disability accommodations at LSUE; is informed of her responsibility to request test accommodations a minimum of three weekdays prior to each test; Minor neither requested nor arranged to receive testing accommodations for the October 28, 2020 NURS 2532 Exam 2; is caught and charged with using unauthorized materials and failing to follow course requirements in violation of the LSUE Code of Student Conduct* ...........8

    **C.**    *Minor is provided written notice of the charges against her; attends accountability meeting; receives written notice of the accountability outcome finding her responsible for charges and sanction of zero credit for Exam 2 in NURS 2532; appeals to the University Hearing Panel (UHP) and attends UHP hearing; is given written notice of the UHP decision to uphold the decision to find her responsible for charges* ..........................................................................9

    **D.**    *Minor is dismissed from the LSUE nursing program for failure to meet the criteria for retention/progression; files suit in federal court against LSUE, the Board of Supervisors of Louisiana State University Technical and Mechanical College (the Board), and Kyle Smith* 11

II. **LAW AND ARGUMENT** .................................................................................12

    **A.**    *Motion to Dismiss Standard of Review* ...............................................................12

    **B.**    *As LSUE is not a legal entity with the capacity to be sued, the Complaint fails to state a claim upon which relief may be granted* ..................................................15

    **C.**    *Plaintiff failed to timely serve the Board pursuant to FRCP Rules 4(m); La. R.S. 13:5107; and La. R.S. 39:1538* ...................................................................19

**D.**   *Plaintiff's Complaint fails to state a claim upon which relief can be granted under the ADA* ...................................................................................................20

    **1.**   No individual-capacity liability exists under the ADA

    **2.**   Claims against Kyle Smith in his official capacity are redundant

    **3.**   Plaintiff has failed to state a claim against the Board under the ADA

**E.**   *§ 1983 cannot be used as an alternative method for the enforcement of rights set forth in the Rehabilitation Act or Title II of the ADA, because the Rehabilitation Act, by its express terms, provides comprehensive enforcement and remedial measures for violations of its provisions* ...............................23

**III.** **CONCLUSION** ...............................................................................................................24

## EXHIBITS

**Exhibit A –**   LSUE Fall 2020 Code of Student Conduct;

**Exhibit B –**   November 5, 2020, Charge Letter to Kimonlyn Minor providing written notice of alleged academic misconduct in violation of the LSUE Code of Student Conduct and providing notice of Accountability Hearing;

**Exhibit C –**   November 6, 2020, Accountability Outcome Letter providing written notice of outcome determination;

**Exhibit D –**   November 11, 2020, Internal Memo; and

**Exhibit E –**   November 16, 2020, UHP Findings.

**MAY IT PLEASE THE COURT**:

**LOUISIANA STATE UNIVERSITY AT EUNICE (hereinafter "LSUE"), the BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVIERSITY AGRICULTURAL AND MECHANICAL COLLEGE (erroneously referred to as "The LSUE Board of Supervisors)(hereinafter "the BOARD"), and KYLE SMITH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSOCIATE VICE CHANCELLOR FOR STUDENT AFFAIRS AND DEAN OF STUDENTS FOR LOUISIANA STATE UNIVERSITY AT EUNICE (hereinafter "DR. SMITH"),** respectfully request that the Court grant their Motion to Dismiss Pursuant to FRCP 12(b)(4), 12(b)(5), and 12(b)(6) for the following reasons:

## I.     INTRODUCTION

The Plaintiff is a former nursing student who was dismissed from school after failing two nursing classes during the course of her enrollment in accordance with the LSUE nursing program's criteria for progression and/or retention. While enrolled at LSUE, Plaintiff was charged and found to be responsible for violating the LSUE Code of Student Conduct (the "Code"). With the understanding that Plaintiff was a first generation college student, Plaintiff was not issued the minimum required sanction of failing the course, as required under the Code; but was instead sanctioned by receiving zero credit on the assignment from which her misconduct arose.

Plaintiff subsequently appealed this finding to the University Hearing Panel ("UHP"), which was comprised of a Chairman, an academic advisor, an instructor, and a student representative. Ms. Minor, with the presence of her counsel, attended the UHP hearing and availed herself of the opportunity to be heard and dispute the charges alleged against her. Following the

hearing, UHP upheld the charges and sanction, finding Plaintiff responsible for the alleged Code of Student Conduct violations. Ms. Minor again appealed the findings to the Chancellor, who ultimately upheld the charges and sanction brought against her. As a result of her misconduct, Ms. Minor received zero credit on only one assignment; and her subsequent dismissal from the LSUE nursing program was the result of her failure to meet the criteria for retention and/or progression in the program.

She now brings this lawsuit, seeking compensatory damages, punitive damages, attorneys' fees and costs, as well as declaratory and injunctive relief. Defendants assert that Plaintiff's Complaint contains critical defects and fails to state a plausible claim for relief. The Court, therefore, should grant this motion and dismiss this suit with prejudice.

According to the Complaint, Kimonlyn Minor, "attained consistently high grades in her classes," throughout her time at LSUE. [Court Doc. #1, ¶15, p. 4]. However, Plaintiff had previously received a failing grade in a nursing course during the Fall semester of 2018; and pursuant to the LSUE Nursing Student Handbook, receiving a second failing grade in a nursing course mandates dismissal from the program. Ms. Minor's sanction for academic misconduct was to receive a failing grade on the *assignment only*, and although unfortunate, her ultimate dismissal was a result of her failure to earn a final passing grade in a nursing course.

Minor's Complaint should be dismissed because it does not allege viable claims. At the outset, Defendants submit that LSUE is not a juridical entity capable of being sued, and all claims against it should be dismissed. Further, Plaintiff failed to properly serve the Board, the Louisiana Attorney General, and the Office of Risk Management as required under La. R.S. 13:5107 and La.

R.S. 39:1538. Therefore, La. R.S. 13:5107(D) requires the mandatory dismissal of all claims against LSUE and the Board mandatory for Plaintiff's failure to properly and timely effectuate service. Additionally, while Minor now claims that LSUE discriminated against her and failed to accommodate her under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1983, she has failed to allege that she made any request whatsoever to receive reasonable accommodations for the October 28, 2020 exam. Minor does not allege that— prior to being charged with misconduct—she asked for accommodations for the exam at issue. Nor does she allege any facts showing that her dismissal was due to supposed disability discrimination, as opposed to her failing to meet the nursing program criteria. Finally, Plaintiff's Complaint contains no allegations which assert a plausible claim for relief under 42 U.S.C. § 1983.

## II.    BACKGROUND

### A.    *Minor enrolls in the LSUE nursing program; is informed of the requirements under the Code of Student Conduct as well as the criteria for retention, progression, and re-entry/readmission process for the LSUE nursing program; but struggles to meet academic requirements and criteria.*

Plaintiff, Kimonlyn Minor, enrolled at LSUE as a nursing student in the Fall semester of 2017, at which time she was made aware of her obligation to abide by the LSUE Code of Student Conduct[1] at all times during her enrollment at LSUE. The Code of Student Conduct sets out certain rules and regulations that LSUE students are required to follow, and puts students on notice of the processes, procedures, and potential consequences which may result from violations of it. Specifically, it states that, "[i]t is the responsibility of each individual student to be familiar with

---

[1] Exhibit A - referenced in Plaintiff's Complaint, Court Doc. #1, ¶31, p. 7.

and adhere to the Louisiana State University Eunice Code of Student Conduct, which will hereafter be referred to as the "Code."[2] At all times pertinent to the subject incident of this lawsuit, Plaintiff was aware that she was obligated to abide by the Code.

Section 10.1 of the Code addresses Academic Misconduct, and establishes that Failure to Follow Course Requirements and Unauthorized Materials are both considered misconduct under the Code. The Code further defines Failure to Follow Course Requirements as, "[f]ailure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors."[3] If further defines Unauthorized Materials as, "[u]sing materials, techniques, or devices on an academic assignment that are prohibited; *having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material.*"[4]

Plaintiff alleges that she was ". . . admitted into LSUE's nursing program. In this program, Plaintiff maintained an extremely high grade point average (GPA)." [Court Doc. #1, ⁋58]. Upon enrolling in the nursing program, Plaintiff was also obligated to abide by the LSUE Nursing Student Handbook, and was informed that in order to be retained and progress in the nursing program, a student must not earn a "D", "F", "NC", and/or "W" in any nursing course *more than once*. Under the LSUE Nursing Student Handbook, any student who obtains a *second* "D", "F", "NC", and/or "W" in any nursing course will be dismissed from the program. During the Fall semester of 2018, Plaintiff received a final grade of "NC" in Nursing Concepts II and Nursing Pharmacology II, and an "F" in Nursing Clinical Practice II.

---

[2] Exhibit A – Statement of Policy 3.1, p. 3
[3] Exhibit A – Academic Misconduct 10.1 D, p. 17
[4] Exhibit A – Academic Misconduct 10.1 I, p. 18.

**B.**      ***Minor requests and is granted disability accommodations at LSUE; is informed of her responsibility to request test accommodations a minimum of three weekdays prior to each test; Minor neither requested nor arranged to receive testing accommodations for the October 28, 2020 NURS 2532 Exam; is caught and charged with using unauthorized materials and failing to follow course requirements in violation of the LSUE Code of Student Conduct.***

In her Complaint, Plaintiff references the disability accommodations she received from LSUE. [Court Doc. #1, ¶¶ 16-17]. Specifically, she alleges that, ". . . Defendant LSUE was fully aware of plaintiff's disability. *LSUE had previously granted <u>multiple accommodations</u> for her disabilities*, including allowing Plaintiff to take exams at the LSUE testing center and allowing Plaintiff extra time to take her exams." [Court Doc. #1, ¶ 61, p. 13]. What she has failed to allege, however, is that she requested accommodations for the October 28, 2020, exam. <u>Ms. Minor was fully aware of her affirmative duty to request testing accommodations a minimum of three weekdays prior to each test pursuant to LSUE's Disability Services policies, and did in fact request accommodations prior to multiple examinations that semester, except for the Exam 2 of NURS 2532 on October 28, 2020.</u> Despite having prior knowledge and experience with the required procedure to request test accommodations, Plaintiff simply opted out requesting test accommodations altogether, advising her professors that she preferred not to use the testing center services or its computers. [Court Doc. #1, ¶ 19, p. 5]. Nowhere in the Complaint does there lie any allegation that Ms. Minor requested reasonable accommodations for the October 28, 2020, exam, nor did she allege a request for accommodations with regards to any subsequent review of any her

–8–

exams.

On the date of the exam at issue, students were allowed to have scratch paper, which was provided by the faculty at the time of testing. All scratch paper was to be turned in at the *end of the exam*. However, at the end of the exam, after the students had been required to turn in their scratch paper, the instructor asked Plaintiff to show the test upload screen on her laptop, which is the standard practice for all students. The instructor was required to ask Ms. Minor to open the laptop and show the test upload screen twice. After the first request, Plaintiff stated that the test was complete and refused to comply.[5] She subsequently complied upon being asked a second time to open her laptop, at which time she was found to be in possession of a piece of scratch paper after the time to turn in all scratch paper had passed.[6] The scratch paper included information related to the exam, and Plaintiff's retention of the paper after having been instructed to turn it in was in violation of both the nursing program guidelines, as well as the Code of Student Conduct. This incident of alleged incident misconduct was reported to Kyle Smith in accordance with Section 7.2 A of the Code.

      **C.**    *Minor is provided written notice of the charges against her; attends accountability meeting; receives written notice of the accountability outcome finding her responsible for charges and sanction of zero credit for Exam 2 in NURS 2532; appeals to the University Hearing Panel (UHP) and attends UHP hearing; is given written notice of the UHP decision to uphold the decision to find her responsible for charges.*

On November 5, 2020, a charge letter was sent to Kimonlyn Minor in accordance with the LSUE Code of Student Conduct, which provided written notice of the alleged violations of the

---

[5] Exhibit D – November 11, 2020, Internal Memo.
[6] *Id.*

–9–

LSUE Code of Student Conduct for Unauthorized Materials and Failure to follow Course Requirements.[7] The Charge letter further advised that, pursuant to Section 6.2 B of the Code of Student Conduct, she was required to meet with a student conduct hearing officer on November 6, 2020, regarding the charges against her.[8] The Code further provides that once misconduct has been reported, the university ". . . *may* investigate any alleged or potential Misconduct. . . . The investigation can begin <u>before or after</u> a Charge Letter has been issued."[9]

Ms. Minor attended an Accountability Meeting with Defendant, Kyle Smith, on November 6, 2020, at which time she was allowed to respond to the charges against her before an outcome determination was made. Thereafter, on November 6, 2020, Plaintiff was issued a written notice of the outcome and findings that she was responsible for violating the Code for Unauthorized Materials and Failure to Follow Course Requirements.[10] The November 6th notice further advised Plaintiff that:

> According to Section 11.4.A.1 of the Code of Student Conduct, the *minimum sanction* for a violation for academic misconduct *must be a failing grade in the course*. <u>I found mitigating circumstances to be Ms. Minor's status as a first generation college student to lower the sanction to failing the assignment</u>. Also, according to Section 11.4.A.1 of the Code, 'in no instance may the Student receive credit for the exam on which the violation occurred.'[11]

As a result of these findings, Plaintiff was sanctioned to receive zero credit for Exam 2 in Nurse 2532.[12]

---

[7] Exhibit B – November 5, 2020 Charge Letter referenced in the Complaint – [Court Doc. #1, ¶ 31, pp. 7-8].
[8] *Id*.

[10] Exhibit C – November 6, 2020 Outcome Letter referenced in the Complaint – [Court Doc. #1, ¶ 34, p. 8].
[11] *Id*.
[12] *Id*.

Plaintiff subsequently appealed the outcome of the Accountability Meeting, and requested to have the University Hearing Panel (UHP) to review the charges brought against her. [Court Doc. #1, ¶ 40, p. 9]. At the hearing, Ms. Minor was accompanied by her counsel, and was provided an opportunity to be heard, ask questions, and dispute the charges against her. Ultimately, the UHP upheld the findings and sanction of zero credit for the October 28, 2020, exam. Ms. Minor was afforded and availed herself of the appropriate due process procedures in relation to the charges of misconduct, and subsequently appealed the UHP's findings to the Chancellor, who also determined that the findings would be upheld.

**D.**   *Minor is dismissed from the LSUE nursing program for failure to meet the criteria for retention/progression; files suit in federal court against LSUE, the Board of Supervisors of Louisiana State University Technical and Mechanical College (the Board), and Kyle Smith.*

Throughout the remainder of the fall semester of 2020, Plaintiff resumed her normal practice of requesting accommodations prior to her exams, and was provided the requested accommodations. Despite having only received zero credit for the one assignment in connection with her misconduct, Ms. Minor ultimately received her second failing final grade in one of her nursing courses. As provided in the LSUE Nursing Student Handbook, the second failing grade in a nursing course mandated Plaintiff's dismissal from the program. She subsequently filed the instant action against Defendants herein on November 22, 2021.

## II.   LAW AND ARGUMENT

### A.   *Motion to Dismiss Standard of Review*

Generally, when considering a Rule 12(b)(6) motion, a court cannot look beyond the pleadings. *Roberts v. Wal-Mart La. LLC*, 2016 U.S. Dist. LEXIS 152935, *5 (W.D. La. Nov. 2,

–11–

2016); citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, for the purpose of a Rule 12(b)(6) motion, pleadings include any documents attached to the complaint. *Roberts*, 2016 U.S. Dist. LEXIS 152935, *5; citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). "Specifically, documents 'attache[d] to a motion to dismiss are considered part of the pleadings, if they are *referred to in the plaintiff's complaint* and are *central to [the plaintiff's] claim*.'" *Id.*; citing *Collins*, 224 F.3d at 499. **The Unites States Fifth Circuit Court of Appeal has established that, ". . . if the documents in question are attached to a motion to dismiss, referenced in the complaint, and central to the plaintiff's claims, they are considered pleading materials**." *Leleux v. Hassan*, 2018 WL 328155, at *1 (W.D. La. Jan. 8, 2018). "Courts may consider documents meeting these criteria without converting the motion to dismiss into one for summary judgment." *Id.*; citing *Causey v. Sewell Cadillac-Chevrolet Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "Additionally, it is well-settled that 'it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'" *Id.*; citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir.2007); see also *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994).

A motion to dismiss for failure to state a claim is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 1338, 1343 fn.6 (5th Cir. 1994). In considering such a motion, the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, this principle is subject to some limitations.

As explained by the Fifth Circuit:

> **First, conclusory allegations and unwarranted deductions of fact are not accepted as true**. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir.1974); *Collins*, 224 F.3d at 498. **Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."** *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).
>
> To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. **The plaintiff's obligation is "to provide the 'grounds" of his 'entitlement to relief' [and] requires more than mere labels and conclusions."** *Id*. at 1964-1965 citing *Papasan*, 478 U.S. at 286. The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004). If a plaintiff fails to allege facts sufficient to "nudge [ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*. at 1974.

*Lawrence v. Morris*, 2010 WL 1434288, at (W.D. La. Mar. 16, 2010), report and recommendation adopted, 2010 WL 1434286 (W.D. La. Apr. 8, 2010).

To survive a Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The plaintiffs' obligation is "to provide the 'grounds' of his 'entitlement to relief' [and] requires more than mere labels and conclusions." *Id*. at 1964-1965 citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986). The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 1965 citing 5 C. Wright & A. Miller, Federal Practice

–13–

and Procedure § 1216, pp. 235-236 (3d ed.2004). If a plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*

**B.** *As LSUE is not a legal entity with the capacity to be sued, the Complaint fails to state a claim upon which relief may be granted.*

LSUE is a higher education facility of the State of Louisiana established in 1964, pursuant to Act 74 of the 1964 Regular Session of the Legislature. La. R.S. 17:1521. The administration of LSUE was placed within the authority of the Board of Supervisors of Louisiana State University Agricultural and Mechanical College. La. Const., Art. 8, § 7; La. R.S. 17:1523. Additionally, pursuant to La. R.S. 17:3215, LSUE falls within the Louisiana State University System under the supervision and management of the Board.

It has been long established under Louisiana law that a college or university lacks the procedural capacity to either sue or be sued. See *State ex rel. Dodd v. Tison*, 175 La. 235, 143 So. 59 (La. 1932); *Huckabay v. Netterville*, 263 So.2d 113 (La. App. 1st Cir. 1972), and *Marson v. Northwestern State University*, 607 So.2d 1093 (La. App. 3rd Cir. 1992). The Louisiana Third Circuit Court of Appeal recognized the lack of a university's existence separate and apart from the Board of Supervisors in *Marson v. Northwestern State University*, 607 So.2d 1093 (La. App. 3 Cir. 1992). In *Marson*, a professor filed wrongful discharge litigation against the University. With regard to legal capacity, the Court explained:

We do find that the exception of no cause of action to be an appropriate method of

–14–

> raising the objection the NSU cannot be sued or stand in judgment. Simply stated,
> Marson has nocause of action against NSU. It is the wrong defendant. The Board
> of Trustees, under the constitution and statues, is the right defendant under its
> supervisory powers.

*Id.* at 1095. The United States Fifth Circuit Court of Appeal has also acknowledged the fact that,

under Louisiana law, only the Board, and not the university itself, can sue or be sued. *Richardson*

*v. Southern University*, 118 F.3d 450, 456 (5ᵗʰ Cir. 1997), *cert denied*, 118 S.Ct. 858, 139 L.Ed.2d

757 (1998); citing to *Marson*, *supra*; see also *Mire v. Board of Supervisors of Louisiana State*

*University*, 2016 WL4761561 (E.D. La. 2016)(wherein the plaintiff sued LSU Health rather than the

LSU Board):

> The Court finds that the LSU Board, rather than LSU Health, is the proper
> defendant. Louisiana Revised Statutes Section 17:3215 lists "institutions under
> the supervision and management" of the LSU board. La. Rev. Stat. § 17:3215
> (2011). These include "Louisiana State University Health Sciences Center at New
> Orleans, which shall include medical and related health schools and programs
> located in New Orleans." *Id.; see also* La. Rev. Stat. § 17:1519.5 (2010) ("The
> [LSU B]oard as a body corporate shall have authority to exercise all power to
> direct, control, supervise, and manage [LSU Health]."). Because LSU Health is
> an institution of postsecondary education under the control of the LSU Board, the
> Board is the proper defendant in a suit alleging misconduct by LSU Health. *See*
> La. Rev. Stat. § 17:3351(A)(l) (2015) (granting the LSU Board authority to "sue
> and be sued" on behalf of "institutions of postsecondary education under its
> control"); *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 148 (5th Cir. 1991)
> ("Although the Board has the right to sue and be sued in its own name...the
> University does not."); *Raj v. Louisiana State Univ.,* No. 11-1126, 2012 WL
> 629954, at *2 (E.D. La. Feb. 27, 2012), *ajfd,* 714 F.3d 322 (5th Cir. 2013) ("[I]t
> is the Board that has the capacity to be sued, and LSU and LSU Health were
> wrongly added as defendants because they lack said capacity."); *Huggins v. Univ.*
> *of Louisiana Sys. Bd. of Supervisors,* No. 08-1397, 2009 WL 223272, at (W.D.La.
> Jan. 6, 2009) ("[T]he University is not a juridical person subject to suit.").

The same laws apply with regards to the juridical status of LSUE, and it is irrefutable that

LSUE lacks the procedural capacity to be sued and is not a proper party defendant in this matter.

Furthermore, as Plaintiff has named the Board as a defendant herein, naming LSUE as a party-defendant is redundant. Therefore, Defendants respectfully submit that LSUE must be dismissed from this suit, since Plaintiff has no viable claim against it.

### C.   *Plaintiff failed to timely serve the Board pursuant to F.R.C.P. Rules 4(m); La. R.S. 13:5107; and La. R.S. 39:1538.*

Dismissal of this suit for failure to serve the defendants within ninety (90) days of the filing of the Complaint is compulsory under FRCP Rule 4(m). Rule 4(m) provides, in pertinent part, "[i]f a defendant is not served within 90 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff -*must dismiss the action* without prejudice against that defendant or order that service be made within a specified time." FRCP Rule 4(m)(emphasis added). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."*Id.*

"Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process was not properly served in the appropriate manner." *Evans v. Johnson*, 2018 U.S. Dist. LEXIS 20955,*5, (W.D. La. Feb. 6, 2018); citing *Gartin v. Par Pharm. Co., Inc.*, 289 F.App'x 688, 691 n.3 (5th Cir.2008)(noting that Rule 12(b)(4) motions concern the form of process, while Rule 12(b)(5) motions challenge the mode, manner, or lack of delivery). "**In the absence of valid service of process, proceedings against a party are void.**"*Evans*, 2018 U.S. Dist. LEXIS 20955, *6; quoting *Aetna Bus.Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Or. 1981). "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Evans, supra*; quoting *Signs*

–16–

*Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). "Good cause under Rule 4(m) requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Sream, Inc. v. Drell*, 20189 U.S. Dist. LEXIS 131074, *7 (W.D. La. July 6, 2018); quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir.2013). "**A litigant's pro se status neither excuses his failure to effect service nor excuses him forlack of knowledge of the Rules of Civil Procedure.**" *Thrasher*, 709 F.3d at 512.

As set forth above, LSUE is not a juridical entity capable of being sued and is not a proper party defendant in this matter. However, Plaintiff only requested an issuance of summons on LSUE and Kyle Smith. [Court Doc. #5]. There has been no valid request for an issuance of summons on the Board since the filing of the Complaint, nor has Plaintiff effectuated service on the Board.

Rule 4(j) provides that a plaintiff who sues, "[a] state, a municipal corporation, or any other state-created governmental organization" must effectuate service of process on the defendant by either: 1) "delivering a copy of the summons and of the complaint to its chief executive officer" or 2) "serving a copy in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FRCP 4(j)(2). Plaintiff has not requested nor effectuated service of the summons and Complaint on the chief executive officer of the Board. Furthermore, the state law service statute that is applicable to the instant lawsuit is La. R.S. 13:5107, which provides in pertinent part as follows:

In all suits filed against the state of Louisiana or a state agency, citation and service

–17–

> may be obtained by citation and service on the attorney general of Louisiana, or on
> any employee in his office above the age of sixteen years, or any other proper
> officer or person, depending upon the identity of the named defendant and in
> accordance with the laws of this state, <u>and</u> on the department, board, commission,
> or agency head or person, depending upon the identity of the named defendant and
> in accordance with the laws of this state, <u>and</u> on the La. R.S. 13:5107(A) head or
> person, depending upon the identity of the named defendant and the identity of then
> named board, commission, department, agency, or officer through which or through
> whom suit is to be filed against.

(Emphasis added). Additionally, because Plaintiff has filed this suit against the Board to recover

money damages, La. R.S. 39:1538(D) mandates that service of process ***shall*** be made on the <u>head</u>

<u>of the department concerned</u>, the <u>Office of Risk Management</u>, and the <u>Attorney General</u>, as well

as any others required by La. R.S. 13:5107. Therefore, in a suit against a State agency, service of

process on the State is effective only if service is made in accordance with La. R.S. 13:5107 and

La. R.S. 39:1538.

The Louisiana Supreme Court has held that, "<u>[P]laintiffs are strictly held to the obligation</u>

<u>of serving the correct agent for service of process</u>. . . ." quoting *Barnett v. Louisiana State*

*University Medical Center-Shreveport*, 2002-2576 (La. 2003), 841 So.2d 725, 726; see also

*Conner v. Continental Southern Lines*, 294 So.2d 485 (La. 1974) (holding that service of process

on incorrect agent is illegal and without effect); *Brooks v. Terry*, 91-1234 (La. App. 1 Cir.

10/16/92), 608 So.2d 1047 (annulling judgment against defendant who had been improperly

served). Further, "with regard to service of citation upon a designated agent for a corporation, the

law is clear that service of process directed to a corporate defendant, but made on one other than

the person authorized to accept such service is <u>illegal and without effect</u>." *Thomas v. Louisiana*

*Dept. of Public Safety and Corrections*, 2002-0897 (La. App. 1 Cir. 03/28/03), 848 So.2d 635,

639; citing La. C.C.P. art. 126; see also *Conner*, 249 So.2d at 487. It is well settled under Louisiana law that a "request for service of process upon the wrong agent for service of process for the state agency involved herein [is] not a 'valid and effective request' and likewise is void and without effect." *Thomas, supra.*

Here, Plaintiff was required to request and effectuate service on: 1) the Board; 2) the Louisiana Attorney General; and 3) the Office of Risk Management. As can be clearly seen from the record, Plaintiff has neither requested, nor effectuated service on any of the necessary parties. La. R.S. 13:5107(D)(1) requires that, "[i]n all suits in which a state, a state agency, or political subdivision, or any officer or employee thereof is named as a party, service of citation <u>shall be requested within ninety days of the commencement of the action</u>. . . ." Pursuant to La. R.S. 13:5107 (D)(2), "[i]f service is not requested by the party filing the action within [ninety days], the action <u>shall be dismissed without prejudice, after a contradictory motion. . . as to the state, state agency, or political subdivision, or any officer or employee thereof, upon whom service was not requested within [ninety days]</u>." **Plaintiff commenced this action on November 21, 2022, and was thereby required to request and perfect service on the Board, the Attorney General, and Office of Risk Management no later than <u>February 21, 2022</u>**. The record establishes that Plaintiff has neither requested or perfected service on the Board within ninety days of commencing this action, as required under La. R.S. 13:5107 and La. R.S. 39: 39:1538. Therefore, La. R.S. 13:5107(D) requires the mandatory dismissal of all claims against the Board mandatory for Plaintiff's failure to properly and timely effectuate service.

**D.**    *Plaintiff's Complaint fails to state a claim upon which relief can be granted under both the ADA and Rehabilitation Act.*

The Rehabilitation Act (42 U.S.C. § 794) prohibits discrimination against disabled persons "under any program or activity receiving Federal financial assistance." Title II of the ADA (42 U.S.C. § 12132) also prohibits discrimination in "services, programs, or activities of a public entity." "When a Section 504 claim is made together with a Title II ADA claim . . . most courts consider them together as they provide the same remedies, procedures and rights." *Pisauro, et al. v. Silvia, et al.*, 15-02832, 2016 WL 8730584, at *3 (W.D. La. March 23, 2016); citing 42 U.S.C. § 12133; *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The Fifth Circuit applies the same standard to both Section 504 and ADA claims under review. *Id.*; citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc).

### 1.   No individual-capacity liability exists under the ADA and Rehabilitation Act.

Neither Title II of the ADA, nor section 504 of the Rehabilitation Act, provide causes of action for individual liability, thus any claims against Kyle Smith under the ADA and the Rehabilitation Act should be dismissed.

### 2.   Claims against Kyle Smith in his official capacity are redundant.

"A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Demeke v. Board of Supervisors of Louisiana State University and A&M College, et al*, 2020 WL 6386872, at *4 (M.D. La. 10/29/20). Since Plaintiff has named the Board as a defendant to this litigation, the allegations against Kyle Smith in his official capacity are redundant and should be dismissed.

### 3.   Plaintiff has failed to state a claim against the Board under the ADA and

Rehabilitation Act.

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which the school district is responsible; and (3) that such exclusion or discrimination was *because* of her disability." *Pisauro, supra*; quoting *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 292 (5th Cir. 2012). Both ADA and Section 504 claims share these three elements; however, Section 504 requires a fourth element, "that the relevant program or activity be receiving Federal financial assistance." *Id.*; see also *S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008). Of importance, a plaintiff who asserts a private cause of action for ADA and Section 504 violations, ". . . may only recover compensatory damages upon a showing of *intentional discrimination*." *Delano-Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002).

This Honorable Court has established that, "[t]o show disability discrimination in the educational context. . . ." a plaintiff is required to show "that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school." *Pisauro, supra*. Further, "[f]acts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under Section 504 or ADA against a school district." *Id.* "Allegations that educational authorities 'exercised professional judgment,' even mistakenly, do not suffice unless the "depart grossly from accepted standards among educational professionals." *Id.*; quoting *Bennett*, 431 F.3d at 454-55.

At the outset, Defendants point out that Plaintiff asserts alleged ADA violations against

LSUE *only*, which is not a juridical entity capable of being sued. Plaintiff has also failed to timely effectuate service on the Board, as explained above. In her Complaint, Plaintiff asserts that she is "*entitled* to receive accommodations from LSUE," and that "LSUE had previously granted Plaintiff multiple accommodations for her disabilities, including *allowing* Plaintiff to take exams at the LSUE testing center and *allowing* Plaintiff extra time to take her exams." [Court Doc. #1, ¶ 16 p. 4; ¶ 61, p. 18].

Although Plaintiff has artfully crafted her Complaint to *appear* to allege that LSUE forced her to take her October 28, 2020, exam in a classroom setting; <u>a careful review of Plaintiff's allegations clearly show that, as a part of her reasonable accommodations, Ms. Minor had the *option* to take her exams in the testing center and be granted extended time to complete them</u>. [Court Doc. #1, ¶¶ 16-19]. Importantly, Ms. Minor does not allege that she was denied reasonable accommodations to take her exams, but alleges only that she did not receive accommodations on the October 28, 2020, exam *only*. **Plaintiff alleges a denial of accommodations in relation to this singular exam; however, the Complaint is completely <u>void</u> of any allegation whatsoever that she *requested* <u>and</u> *was denied* reasonable testing accommodations**. In fact, Plaintiff did not raise any issue or grievance pertaining to her accommodations *until <u>after</u> she was accused and charged with academic misconduct in violation of the Code*, because, as she has alleged, she <u>voluntarily</u> forwent her testing center accommodations. [Court Doc. #1, ¶ 19, p. 5]. In sum, Plaintiff has alleged that she was denied accommodations that were never requested. Further, Plaintiff also alleges that that the exam software provided by LSUE did provide her 30 extra minutes, but *fails to allege that she was required to finish the exam early*. Instead, Plaintiff alleges

that her anxiety "increased dramatically" upon hearing the instructor announce that there were five minutes left in the exam to the classroom full of non-accommodated students, since she had opted out of her testing center accommodations, which afforded her an environment with reduced distractions. [Court Doc. #1, ¶¶ 23-14, p. 6].

Plaintiff's Complaint contains no allegations whatsoever to establish intentional discrimination as required under Title II of the ADA and Section 504. The Complaint fails to articulate any act or omission on the part of the Board that would indicate intentional discrimination *because of her* disability, which is a prerequisite to recovery of compensatory damages in the context of the instant suit. Furthermore, there are no allegations in the Complaint to assert that Ms. Minor properly alerted LSUE or her instructors of her alleged disability limitations. Under the ADA, it is the student's burden to inform her school of a disability and to request accommodations. *Choi*, 633 F. App'x at 216; *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165-66 (5th Cir. 1996). This requirement is especially important "in the amorphous world of mental disability," where "the nature of the disability, resulting limitations, and necessary accommodations are uniquely within the knowledge of the [student] and [her] health-care provider." *Taylor*, 93 F.3d at 165; *see also Thuy Doan v. Bd. of Sup'rs of La. State Univ.*, No. CV 17-3471, 2017 WL 3574453, at *3-4 (E.D. La. Aug. 16, 2017). In such cases, the student must request specific accommodations. *See Taylor*, 93 F.3d at 165-66. The school's obligation to accommodate is triggered only upon such a request. *Id*. Minor simply has not alleged that she requested the specific accommodations she now asserts to have been unjustly denied.

Additionally, none of the alleged acts or omissions asserted in the Complaint illustrate any

–23–

intentionally discriminatory behavior on the part of the defendants. Instead, Plaintiff has

frivolously asserted discrimination in a last-ditch attempt to overcome her dismissal from the

LSUE nursing program as a result of her failure to meet the program criteria and requirements.

Moreover, Plaintiff has asserted nothing more than threadbare recitals and conclusions of law

that do not suffice to state a plausible claim for relief. [Court Doc. #1, ¶¶ 59-65, 71-75]. Thus,

Plaintiff has failed to state a claim for relief upon which relief can be granted, and her Complaint

should be dismissed with prejudice, at her sole cost.

### E. *§ 1983 cannot be used as an alternative method for the enforcement of rights set forth in the Rehabilitation Act or Title II of the ADA, because the Rehabilitation Act, by its express terms, provides comprehensive enforcement and remedial measures for violations of its provisions.*

Plaintiff cannot use 42 U.S.C. § 1983 to pursue Kyle Smith in his individual capacity to

for alleged violations of the Rehabilitation Act and/or the ADA. The Fifth Circuit addressed this

issue in the case of *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999). In *Lollar*, the court held that §

1983 cannot be used as an enforcement mechanism for rights founded in the Rehabilitation Act.

In doing so, the court adopted the Eleventh Circuit's reasoning in *Holbrook v. City of Alpharetta*,

112 F.3d 1522 (11th Cir. 1997), which stated that,

> both the Rehabilitation Act and the ADA provide extensive, remedial frameworks
> that address every aspect of [a plaintiff's claim] under section 1983. To permit a
> plaintiff to sue both under the substantive statutes that set forth detailed
> administrative avenue of redress as well as section 1983 would be duplicative at
> best; in effect such a holding would provide a plaintiff with two bites at precisely
> the same apple. We conclude that a plaintiff may not maintain a section 1983 action
> in lieu of-or in addition to- a Rehabilitation Act or ADA cause of action if the only
> alleged deprivation is of the [Plaintiff's] rights created by the Rehabilitation Act
> and the ADA.

*Holbrook*, 112 F.3d at 1531.

–24–

A review of Plaintiff's Complaint clearly shows that Plaintiff has not alleged facts sufficient to state a plausible claim for relief under § 1983. None of the alleged actions and/or inactions of Kyle Smith give rise to a claim for any constitutional violations whatsoever. Additionally, any claims against Smith in his official capacity under § 1983 are barred by the Eleventh Amendment. Consequently, Kyle Smith is entitled to qualified immunity from suit under § 1983 claims, and any such claims against him should be dismissed.

## III.    CONCLUSION

Plaintiff has failed to state any claim against the defendants upon which relief can be granted. Alternatively, and only in the event this Court determines any claim has been stated, said claim is barred by the Eleventh Amendment, qualified immunity or the statute of limitations. Accordingly, the Complaint must be dismissed with prejudice at Plaintiff's cost.

Respectfully submitted:

**JEFF LANDRY
ATTORNEY GENERAL**

*/s/ Cranay D. Murphy*
Cranay D. Murphy (36600)
Assistant Attorney General
Louisiana Department of Justice –
Division of Risk Litigation
556 Jefferson Street, 4th Floor
Lafayette, Louisiana 70501
Telephone: (337) 262-1700
Facsimile: (337) 262-1707
Email: Murphyc@ag.louisiana.gov
Counsel for Defendants, Louisiana State University at Eunice, the Board of Supervisors of Louisiana State University Technical and Mechanical College, and Kyle Smith, individually and in his official

capacity as Vice Chancellor for Student
Affairs and Dean of Students for Louisiana
State University at Eunice

# EXHIBIT A



**EUNICE**

# Code of Student Conduct

| | | |
|---|---|---|
| 1.0 | COMMITMENT TO COMMUNITY | 2 |
| 2.0 | GOVERNANCE OF THE UNIVERSITY | 2 |
| 3.0 | STATEMENT OF POLICY | 3 |
| 4.0 | DEFINITIONS | 4 |
| 5.0 | JURISDICTION OF THE CODE | 7 |
| 6.0 | STUDENT RIGHTS AND RESPONSIBILITIES | 8 |
| 7.0 | ACCOUNTABILITY PROCEDURES | 12 |
| 8.0 | ACCOUNTABILITY HEARINGS | 13 |
| 9.0 | UHP COMPOSITION AND PROCEDURES | 14 |
| 10.0 | MISCONDUCT | 16 |
| 11.0 | OUTCOMES | 23 |
| 12.0 | ACCOUNTABILITY RECORDS | 31 |
| 14.0 | REFERENCE | 32 |

## 1.0   COMMITMENT TO COMMUNITY

The Louisiana State University Eunice's Commitment to Community is a document written to help to guide the ethos of the institution's community. Students are expected to exemplify the commitment to community in their daily lives.

Louisiana State University Eunice is a dynamic community in which students, faculty, and staff strive together to pursue truth, advance learning, and uphold the highest standards of performance in an academic and social environment.

For the express purpose of demonstrating my pride as a member of the Louisiana State University Eunice community, I will:

- Accept responsibility for my actions;

- Hold myself and others to the highest standards of academic, personal, and social integrity;

- Practice justice, equality, and compassion in human relations;

- Respect the dignity of all persons and accept individual differences;

- Respect the environment and the rights and property of others and the University;

- Make a positive contribution to the life of the Campus and its surrounding community;

- And utilize my experiences at Louisiana State University Eunice to be an active citizen in an international and interdependent world.

The continued success of Louisiana State University Eunice depends on the faithful commitment by each community member to these basic principles.

## 2.0   GOVERNANCE OF THE UNIVERSITY

Louisiana State University Eunice has been established by the Constitution and laws of the State of Louisiana to serve the needs of the people of Louisiana.

15-Sep-17

2

The University has the legal right to establish standards for academic and personal conduct for continued membership in the University community, to deny membership to those who do not meet these standards, and to impose outcomes and discipline on Students who are found in violation of these standards.

Within the Office of Student Affairs and Enrollment Services, the Student Affairs Official is responsible for administering this code.  As per the Family Educational Rights and Privacy Act a/k/a FERPA  (see 20 USC § 1232g), public comment may not be made regarding any individual's case.  However, in limited circumstances, as required or allowed by law, information relative to certain incidents and case statistics may be disclosed.  USC §1092f and 20 USC §1232g)

Under the provision of Article VIII of the Constitution of Louisiana and Revised Statutes 17:3351, the Board of Supervisors of Louisiana State University has the authority to exercise all powers to direct, control, supervise, and manage all institutions of higher education  under its control, which includes Louisiana State University Eunice.  The disciplinary powers of the University are derived from the provisions of Louisiana Revised Statutes 17:3351, which grants to the Board of Supervisors the specific power to "adopt, amend, or repeal rules and regulations for the government and discipline of students."

The Code of Student Conduct may be amended by the Student Affairs Official, subject to review and approval by the Chancellor.

## 3.0   STATEMENT OF POLICY

3.1   General Rights and Responsibilities

It is the responsibility of each individual student to be familiar with and adhere to the Louisiana State University Eunice Code of Student Conduct, which will hereafter be referred to as the "Code".

3.2   Purpose of the LSU Eunice Code of Student Conduct

The purpose of the Code is to engage Students on issues of community membership, encourage responsible decision making, promote academic integrity, safeguard the health and welfare of all members of the University community, and protect University property.

Faculty and staff are required to follow the procedures outlined in the Code when they become aware of any behavior that may violate the standards of this Code. These procedures are an important part of the educational process.

3.3     Implementation of Rights

The Code is the University's document governing student conduct and the Student Accountability process. All discipline imposed upon a Student must be in accordance with the provisions of this Code, except

A.     A student found to have engaged in research misconduct pursuant to Policy Statement 74 (Principal Investigators Manual for Research Involving Human Subjects) shall be subject to sanctions, administrative actions or conditions imposed by the Deciding Official.

B.     A Student's failure to adhere to any professional and/or ethical requirements of a particular program may be considered and addressed pursuant to written program guidelines or requirements.

C.     To the extent the conduct at issue may also constitute a violation of this Code, faculty and staff must refer the matter to the Student Affairs Official.

D.     Any act covered by Title IX of the Education Amendments of 1972 (reference PM73)

Student responsibility will be determined using a standard of a preponderance of the evidence or more likely than not. Evidentiary rules applicable to civil and criminal cases shall not apply to University Accountability proceedings. Pertinent information regarding any alleged violation may be considered. A finding of responsibility must be supported by the available information.

## 4.0   DEFINITIONS

The listed terms and phrases are defined as follows:

4.1     Academic Misconduct

Those violations detailed in the Code that are specific to Academic Student behavior. Certain conduct may constitute both Academic and Behavioral Misconduct.

4.2     Accountability Hearing

An opportunity in which a Charged Student will discuss the charge with the Student Affairs Official, who will determine if there is information indicating that the violation was more likely than not to have occurred, and if so, determine if the Student is Responsible for the alleged violation(s).

4.3   Accountability Outcome

The Accountability Outcome, or Outcome, identifies an Accountability resolution and any requirements, restrictions, or change in Student status that have been assigned to the Student by the SAO or University Hearing Panel (UHP).

4.4   Advisor

A Student has the right to have one Advisor of his/her choice present during any Accountability meeting.  The Advisor may not have personal involvement regarding any facts or circumstances of the alleged misconduct.

The Advisor's only function shall only be to assist and consult with the Student regarding an Accountability meeting or UHP.  The Advisor may not act as a spokesperson for the Student and may not directly address the Student Affairs Official, UHP members, or Material Observers.  The Advisor may be an attorney, but participation shall be limited as stated above.

4.5   Behavioral Misconduct

Those violations detailed in the Code that are specific to non-Academic Student behavior. Certain conduct may constitute both Academic and Behavioral Misconduct.

4.6   Campus

Campus includes all land, buildings, property, and facilities in the possession of, owned by, used by, or controlled by the University, regardless of contiguity or proximity. This includes land leased to others, property owned, managed or maintained by the University, and all streets, alleys, sidewalks, and public ways adjacent to any land of the University or the land upon which housing is located even if the housing is not owned by the University.

4.7   Chancellor

The term "Chancellor" refers to the person holding this position within the University. The Chancellor may delegate the authority to perform any of the duties assigned to him or her in this Code.

4.8   Charge Letter

The written notice sent to a Student of the allegations and corresponding Code sections to be addressed.

4.9   Charged Student or Charged Organization

A Student or Registered Student Organization who has received notice of allegations detailing a potential violation of the Code, contract, Bylaws and Regulations of the Board of Supervisors, Policy Statement, or Permanent Memoranda.

4.10   Instructor

The term "Instructor" includes but is not limited to Professor, Associate Professor, Assistant Professor, Instructor, Adjunct Faculty, or other professional charged with oversight of a lab, class, section, or course at LSU Eunice.

4.11   Material Observer

A person who has knowledge of facts or circumstances pertaining to an alleged violation.

4.12   Not Responsible

The finding that indicates a Student is not in violation of the Code.

4.13   Referral

A written complaint against a Student or Registered Student Organization forwarded to the Student Affairs Official. A referral may be submitted by any individual(s). Anonymous referrals may be considered at the discretion of the Student Affairs Official.

4.14   Reporting Party

The individual(s) who submit a Referral against a Student or Registered Student Organization alleging potential misconduct under the Code.

4.15   Responsible

The finding or acknowledgment that indicates a Student is in violation of the Code.

4.16   Student

For the purpose of this Code, any person admitted to LSU Eunice or enrolled or scheduled to be enrolled in a course for academic credit through LSU Eunice. This includes any person attempting to fulfill requirements for academic credit through LSU Eunice, even if not currently enrolled.

4.17    Student Affairs Official

The term Student Affairs Official (SAO) refers to the individual designated by the University to perform or delegate the authority to perform any of the duties assigned to him or her in this Code.

4.17    University or LSU Eunice

University or LSU Eunice refers to Louisiana State University Eunice.

4.18    University Hearing Panel

A group of individuals with responsibility under this Code to hear a case referred by the Student Affairs Official after a Student has declined an Accountability Outcome.  A member of the UHP shall be designated as the panel chair.

4.19    Written Communication

Written correspondence generated by the Student Affairs Official, including but not limited to email. Any correspondence sent to a Student's University issued email address shall constitute actual notice under this Code.

## 5.0   JURISDICTION OF THE CODE

5.1    Jurisdiction of the Code

The LSU Eunice Code of Student Conduct shall apply to conduct that occurs on the LSU Eunice Campus, at LSU Eunice sponsored activities, and/or when the Student is representing LSU Eunice. The University shall have discretion to extend jurisdiction over conduct that occurs off Campus when the conduct adversely and significantly affects the learning environment or University community and would be in violation of the Code if the conduct had occurred on Campus. In determining whether or not to extend jurisdiction, the University may consider its ability to gather information. The University may extend jurisdiction if the alleged conduct:

A.    Involved violence or produced a reasonable fear of physical harm; and/or

B.      Involved any other members of the University community or any academic work, records, documents, or property of the University.

Each Student shall be responsible for his/her conduct from the time of application for admission through the actual awarding of a degree, though conduct may occur before classes begin or after classes end, as well as during the academic year and during periods between terms of actual enrollment and even if the conduct is not discovered until after a degree is awarded.

5.2    Violation of Law and LSU Eunice Policy

Proceedings may be instituted against a Student charged with conduct that potentially violates both the law and the Code without regard to the status of any civil or proceedings in court or any criminal arrest and prosecution. Proceedings under this Code may be carried out prior to, simultaneously with, or following any civil or criminal proceedings.

# 6.0   STUDENT RIGHTS AND RESPONSIBILITIES

6.1    Rights of a Charged Student

A Student charged with a violation under this Code shall have the following rights:

A.      To be notified through written communication of the specific allegation(s) and charge(s).

B.      To be provided a reasonable amount of time to respond to the Charge Letter.

C.      To refuse to comment or answer questions.

D.      To present information and/or Material Observers.

E.      To have the Charge(s) considered by a UHP, unless this right has been waived by the Student.

F.      Per Policy Statement 34 – Privacy Rights of Parents and Students, to schedule a time prior to a UHP to inspect and review the information on which the Charge(s) are based.

G.      To accept the Accountability Outcome(s) imposed, thereby waiving the right to have the Charge(s) considered by a UHP.

H.     To have an Accountability Outcome imposed that is commensurate with the violation.

I.     To have an Advisor present in an Accountability meeting.

J.     To receive a list of all Material Observers to be called by the University at least two (2) business days prior to a UHP. However, a UHP may continue the proceedings to allow the University to identify Material Observers to rebut any information presented by the Student.

K.     To retain rights as a Student while the charges are being considered, and, if found Responsible, until he or she has exhausted his or her rights of appeal as established in this Code. However, a Student may be subject to an Interim Suspension or limitations or conditions as set forth in this Code.

K.     Unjust Process – A Student who has reason to believe that he or she is being unjustly accused, disciplined, or threatened with disciplines by a University Employee without the full protection offered by the Code should immediately contact the Office of Student Affairs and Enrollment Services for clarification of his or her rights under this Code.  If the Student alleges the Student Affairs Official is involved, the person should contact the Chancellor of the institution.

6.2    Responsibilities of a Charged Student

Student(s) charged shall have the following responsibilities:

A.     To be honest.

B.     To schedule an appointment with the SAO within five (5) business days from the time of issuance of the Charge Letter.

C.     To respond to or acknowledge all written communications and diligently participate in the Accountability process.

6.3    Rights and Responsibilities of a Charged Student during a UHP

A.     To request that a member or members of a UHP be excluded from the Panel for good cause clearly established by the Student. The Student must make the request immediately after the introduction of the members of the UHP. The decision to exclude the UHP member(s) shall be at the sole discretion of the Chairperson.  If the Chairperson is the one in question, the decision will rest with the SAO.  If a hearing panel member

believes he or she is unable to render a fair and impartial decision, the member will remove himself or herself from participating in the hearing.

B.   To present information on his or her own behalf. The Charged Student must provide copies of any documents to the hearing panel members. Additionally, any information to be presented during the hearing must be presented to the SAO at least one (1) business day in advance of the hearing. This includes any item(s) that will be provided to the UHP in either hard copy, digitally, or presentation format.

C.   To present Material Observers on his or her own behalf. A list of all Material Observers to be called by the Charged Student must be presented to the SAO no less than one (1) business day prior to the hearing.

D.   To conduct reasonable questioning of the Material Observers appearing at the hearing and/or providing statements. Whenever possible, Material Observers will present oral instead of written statements. Oral statements, written statements, previously written memoranda, letters, and/or other written materials may be presented at a hearing even if the Material Observer is not present and the ability to question him or her was not possible at the time the written materials were prepared. The UHP may limit any questions or responses to pertinent information and/or to maintain order, avoid repetition or prevent harassment or unnecessary embarrassment. The UHP may require that the Charged Student present his/her questions in writing for a member to ask.

E.   To request assistance from the SAO in bringing Students or University employees of his or her choice to serve as Material Observers. The Student may request that the SAO assist in obtaining information from the University that is pertinent to the charge.

F.   To have his or her information kept private to the extent allowed by law. All UHPs are private. The individual(s) allowed into the UHP are the Charged Student(s), Material Observer(s), UHP Members, and the SAO. Material Observers may be included or excluded at the discretion of the panel chair. Material Observers and non-voting panel participants may only be present during the portion of the hearing in which they answer questions and/or provide information relevant to the charge(s). Only voting UHP members remain during panel deliberations.

G.    To have prior violations of the Code excluded from review or consideration during the Panel's determination of Responsibility for the present charge(s), unless it is presented to directly rebut claims by the Student that he or she has not previously engaged in Misconduct. If a Charged Student is found Responsible, prior violations of the Code may be considered when the SAO or UHP is determining the Outcome(s).

H.    Per Policy Statement 34 – Privacy Rights of Parents and Students, to schedule a time to listen to the recording of the UHP proceedings. Only the University may record the UHP proceedings.

I.    To Appeal any UHP Outcome as detailed in this Code.

6.4    Proceeding in Absentia

A.    In the event a Student fails to attend an Administrative Hearing, the UHP may proceed without the Charged Student in attendance.

B.    If the SAO determines that the Student's failure to appear was due to compelling circumstances, the SAO may require that a new UHP be scheduled.

6.5    Rights of a Victim

A.    Any and all rights extended to a Student under Sections 6.1 and 6.3 are extended to a Victim in cases of Physical Violence, Sexual Harassment, Sexual Misconduct, and/or Stalking.

B.    To the extent allowed by law, the alleged victim of any act(s) of violence or harassment will be notified of the Outcome of the hearing involving his/her specific case.

C.    When participating in an Accountability Hearing or UHP, the Victim may use conference call, written statement, video/recording, closed-circuit television, privacy screen or other measure for his or her safety and/or wellness. SAO may require that the Victim respond to reasonable questions requested by the Charged Student in a format determined by the SAO.

D.    Impact Statements – The Victim is entitled to submit a written or verbal statement for consideration by the SAO and UHP during the Outcome phase of the Hearing.

## 7.0  ACCOUNTABILITY PROCEDURES

7.1   Non-Discriminatory Application of Accountability Procedures

Application of this Code shall be based on the principle of equal treatment without regard to race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national origin, age, mental or physical disability, or veteran status.

7.2   Initiation of Accountability Process:

A.   Accountability Referral

Any person who has a reasonable basis to believe that a Student may have committed a violation of this Code shall submit all such information to the SAO. The initial contact may be in person or by telephone, but must be followed by a written statement in a reasonable period of time.  The written Referral must include the signature of the Complainant and his or her contact information.   In addition, official reports from LSU Eunice Campus Security, any University department, and other law enforcement entities will also be accepted.

B.   Investigation by the Student Affairs Official

The SAO may investigate any alleged or potential Misconduct.  This investigation can include meeting(s) with a Reporting Party, interviews of persons who may have knowledge pertaining to the facts and circumstances, and other types of information collection. The investigation can begin before or after a Charge Letter has been issued.

C.   Disqualification of the Student Affairs Official

In the event the SAO may be a Material Observer in an Accountability Hearing or for any reason cannot perform his or her duties under these Accountability Procedures, the Chancellor shall appoint another person to perform such duties.

7.3   Requiring a Student to Meet

A.   The SAO may require a Student to meet in connection with an alleged violation by sending an e-mail to the Student's University e-mail address.

B.    The SAO may prohibit and/or cancel the enrollment, place a hold on the Charged Student's records, or proceed to an Administrative Hearing when a Student fails without good cause to comply with an e-mail sent. An e-mail sent to the Student, as listed in the Registrar's record, shall constitute full and adequate notice. The failure of a Student to read or open the e-mail shall not constitute good cause for failure to comply with the summons. The modification to the Student's enrollment status may be lifted at the discretion of the SAO when the Student responds to the summons as requested.

7.4    Administration of Charges

The Student Affairs Official shall review each Referral. Based on the review, the appropriate course of action may include, but is not limited to:

A.    Take no action;

B.    Request to meet the Charged Student through an Accountability Hearing, and, if found Responsible, issue an Outcome to the Student;

C.    Initiate an Accountability Proceeding; or

D.    Hold the Referral for further investigation

If the Student Affairs Official decides to take no action, this does not preclude the referral being revisited at a later date.

# 8.0  ACCOUNTABILITY HEARINGS

8.1    Accountability Meeting with an Administrator

A.    Most cases begin with an administrative Accountability Meeting between a SAO and the Charged Student(s).

B.    For the matter to be resolved administratively, the Student must agree to accept the recommendation of the SAO by doing the following:

        1.    Accept Responsibility for his or her conduct and the Outcome in writing; and

        2.    Waive his or her right to have the case considered by a UHP.

C.    The SAO may refer a matter directly to a UHP for resolution.

8.2     University Hearing Panel (UHP)

 UHP hears alleged violations under this Code referred by the Student Affairs Official. If a Charged Student declines the SAO Outcome or the SAO official declines to issue an Outcome, the matter will be referred to a UHP.

# 9.0   UHP COMPOSITION AND PROCEDURES

9.1     Faculty and Staff Members of the UHP

Faculty and staff members shall be appointed by the Student Affairs Official to the UHP. Appointments of faculty and staff members to the UHP shall be made annually and as needed. The Faculty and Staff members may be reappointed for additional terms.

9.2     Student Members of the UHP

Student members shall be appointed annually and as needed, by the Student Affairs Official, for a 1-year term. Student members may be reappointed for additional terms. Student members of the UHP may not be on any type of Probation, Deferred Suspension, and/or academic probation or warning during the time of his/her service on the UHP.

9.3     Composition

A.      Three voting members of the UHP shall constitute a quorum; one of the three members must be a Student and one must be a faculty member. The UHP can be comprised of a maximum of five voting members. One panel member will serve as the panel chair.

B.      When, in the judgment of the SAA Official, the subject matter of a proceeding makes it advisable to request the participation of person(s) with special knowledge or technical expertise, the SAA official may appoint such persons to serve as a Material Observer. This person will serve as a resource and may provide relevant information during the hearing.

C.      In cases involving Academic Misconduct, a representative of the division in which the Student is enrolled shall bring to the hearing the Charged Student's complete academic record. This representative shall serve as a Material Observer and will be available to provide relevant information during the hearing.

9.4     Procedures

A.     A Charged Student will be notified in writing of the time, date, and place of the UHP.

B.     If the Student fails to appear, he or she will be deemed to have forfeited his or her right to respond before a UHP. The UHP may proceed in absentia.

C.     The SAA Official who participated in an investigation or an Accountability Meeting may participate in the hearing as a Material Observer.

D.     An Outcome by the UHP finding the Student Responsible for a violation of this Code shall be based solely on the information presented at the hearing.

E.     Past violation(s) may not be introduced or considered in the deliberation of Responsibility for the violation unless it is presented to directly rebut claims by the Student that he or she has not previously engaged in misconduct. If the Charged Student is found Responsible for the violation, record of past violation(s) may be considered by the UHP in determining an Outcome.

F.     The UHP may elect not to hear persons not previously identified as Material Observers.

G.     Hearsay may be considered during the Hearing.

H      A majority vote of the Panel members present is required to find a Student Responsible and/or Not Responsible for violation(s) of the Code.

I.     The SAO may establish additional procedures for the UHP.

9.5     Alternate UHP Composition and Procedures

The Student Affairs Official may use an Alternate UHP to consider charges of sexual misconduct, sexual harassment, physical endangerment, harassment, stalking, and in other situations, where the emotional or mental health of the victim or charged student is implicated. An Alternate UHP shall consist of three members. There must be at least one Student member, one faculty member and one member serving as Chair. Alternate UHP shall be chosen in the same manner as UHP members; however, prior to serving, members are required to attend additional specialized training developed and facilitated by the Student

Affairs staff. Members will also serve under the same parameters as UHP members. The Student Affairs Official will determine use of an Alternate UHP

# 10.0 MISCONDUCT

10.1   Academic Misconduct

High standards of academic integrity are crucial for the University to fulfill its educational mission.  To uphold these standards, procedures have been established to address academic misconduct.

As a guiding principle, the University expects Students to model the principles outlined in the University Commitment to Community, especially as it pertains to accepting responsibility for their actions and holding themselves and others to the highest standards of performance in the academic environment.  For example, LSU Eunice Students are responsible for submitting work for evaluation that reflects their individual performance and should not assume any assignment given by any professor is a "group" effort or work unless specifically noted as such.  In all other cases, Students must assume the work is to be done independently.  If the Student has a question regarding the instructor's expectations for individual assignment, projects, tests, or other items submitted for a grade, it is the Student's responsibility to seek clarification.

Any Student found to have committed or to have attempted to commit Academic Misconduct is subject to the disciplinary sanctions set forth in Section 11.

An instructor may not assign a disciplinary grade, such as an "F" or zero on an assignment, test, examination, or course as a sanction for admitted or suspected Academic Misconduct in lieu of formally charging a Student with Academic Misconduct under provision of this Code.  All grades assigned as a result of accountability action must be approved by the Student Affairs Official or designee.

No Student may drop a course to avoid the academic impact of an Academic Misconduct sanction.  All Students who drop the course under such circumstances will be re-enrolled in the class and then given the appropriate grade post sanction.

To protect the University's education purposes and the University community, a Student may be formally charged with a violation of this Code and be subject to the sanctions herein for the following acts or omissions related to academic misconduct:

A.    Collaboration

Unauthorized interaction between two or more individuals on any academic work by giving, receiving, or otherwise sharing information without permission of the instructor;

B.    Collusion

Communicating with another Student(s) or other individual(s) during an examination or assignment without the permission of the instructor;

C.    Copying

Copying from another Student's academic work; assisting with Copying by making answers or other completed assignments available. In whole or part, to another student, whether or not the recipient's intentions to copy were known to the Student prior to sharing.

D.    Failure to Follow Course Requirements

Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors;

E.    False Pretenses

Failing to thoroughly follow requirements related to the preparation and presentation of work, including group projects, submitted for credit in a manner that results in submitting as one's own the work of another or misleading an instructor as to :

1.    The condition under which the work was prepared;

2.    Falsifying or fabricating an excuse or documentation in order to avoid or delay timely submission of academic work or delay the taking of a test or examination.

F.    Misrepresentation

Misleading an instructor as to the condition under which the work was prepared including, but not limited to, substituting for another Student or permitting another person to substitute for oneself on any academic work.

G.    Other Academic Misconduct

Attempting to commit, or assisting someone in the commission of an offense defined in this section, or any other act of Academic Misconduct. Academic units and members of the faculty may prescribe and give Students prior written notice of additional standards of conduct for academic integrity in a particular course or setting.  A violation of such a standard will be considered Academic Misconduct.

H.    Plagiarism

Lack of appropriate citation, or the unacknowledged inclusion of someone else's words, structure, ideas, or data; failure to identify a source, or the submission of essentially the same work for two assignments without the permission of the instructor(s).  Plagiarism also includes:

1.    Falsifying or fabricating any information or citation in any academic exercise, work, speech, thesis, dissertation, test, or examination;

2.    Submission of essentially the same written assignment for two courses without the prior permission of the instructors.

I.    Unauthorized Materials

Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material;

10.2   Behavioral Misconduct

A Student may be charged with Behavioral Misconduct for any of the following conduct:

A.    Alcohol

Unlawful or unauthorized possession, use, distribution, delivery, or sale of alcohol and/or public intoxication; consumption that endangers oneself; or operating a vehicle while intoxicated or under the influence of alcohol;

B.    Complicity

Attempting to commit, knowingly permitting, encouraging, or assisting others with the commission or attempted commission of any act, omission or conduct prohibited under this Code;

C.   Computer Misuse

Unauthorized access or entry into a computer, computer system, network, software, or data; alteration of computer equipment, software, network or data; failing to comply with laws, license agreements, and contracts governing network, software and hardware use; using University computing resources for prohibited activities; using University computing resources for unauthorized solicitation or commercial purposes or any violation of LSU Eunice computer policies;

D.   Disorderly Conduct

Behavior that impairs or interferes with the orderly functions or processes of the University and/or the reasonable safety, security, or use of members of the University community;

E.   Disruption/Obstruction

Disruption or obstruction of teaching, research, administration, Accountability proceeding, or other University activities and/or the performance of duties of University personnel or contractors;

F.   Drugs

Possession, use, public intoxication, sharing, furnishing or distribution of illegal drugs, intoxicants, controlled substances and/or drug paraphernalia; including the distribution, use or possession of prescription medications contrary to a valid prescription;

G.   Endangerment

Physical abuse or force against one's self, another individual, or group, or the reasonable apprehension or threat of such harm; conduct that endangers the health, safety, or well-being of one's self or another person or group;

H.   Failure to Comply

Defying the order or instruction of an authorized person on behalf of the University and/or any University policy, contract, mandate or rule;

I.   False Information

Providing false information to a law enforcement officer, to the University or a University official, or making an intentional or reckless misrepresentation which creates an unfair advantage or is reasonably likely to damage, mistreat or harm another;

J.   Forgery

Altering, falsifying, or otherwise misrepresenting documents to or relating to any University official or office;

K.   Harassment

Repeated, persistent, severe, or pervasive actions directed toward specific individual(s) with the intent or effect to harass, harm, or alarm, including attempted or threatened physical contact, or acts that create the reasonable apprehension of unwanted contact; (Also reference PM73)

L.   Hazing

Any reckless act or activity occurring on or off-campus, by one person alone or acting with others, directed toward one or more Students, that subjects that Student(s) to an unreasonable risk, sensation or fear of physical, mental, emotional, and/or academic harm for reasons related to that Student's status at the University.

The same act(s) listed above that occur for the purpose of pledging, being initiated into, affiliating with, holding office in, or maintaining membership in any registered organization or group whose members are or include other Students at the University.

The intent of any person engaging in hazing activities or the consent or cooperation of any person who is a victim of hazing does not negate a potential violation of the Code. The definition will include any aspect of the Louisiana State Hazing Law R.S. 17:1801.

M.   Identity Misuse

Illegal or unauthorized use of an identification card, password, access code or number; including, but not limited to permitting another Student or non-Student to use a University issued identification card; alteration or sale of an identification card;

N.   Offensive Behavior

Lewd, indecent, or obscene conduct, including, but not limited to, nudity or sexually explicit behavior that would reasonably be offensive to others;

O.   Property Misuse

Intentional or reckless destruction, defacement or damage to University property or to the property of any individual or group; unauthorized entry or use of any property or facility;

P.   Residential Life Violation

Disruption of Residential Life policies and/or the violation of other Student housing rules, policies, proceedings, or regulations established and promulgated by the Department of Residential Life or by any contract entered into by the Charged Student.

Q.   Safety

Tampering with or unapproved activation of any safety equipment and/or warning system; setting or causing a fire; engaging in dangerous activities contrary to posted or verbal warnings;

R.   Sales & Solicitation

Unauthorized or prohibited solicitation, sale, fundraising, canvassing, distribution or posting of any written material, electronic mail, web, or printed material;

S.   Sexual Harassment

Repeated, severe, or pervasive actions of a sexual nature directed toward specific individual(s) with the intent or effect to embarrass, harass or alarm, including actual, attempted or threatened physical contact, or acts that create a reasonable apprehension of such behavior, conduct or contact of a sexual nature that creates an intimidating, hostile, or offensive

campus, educational, or working environment for another person (Also reference PM73);

T.   Sexual Misconduct

Any sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. This includes, but is not limited to, video voyeurism, violence of a sexual nature, sexual abuse, unwanted sexual contact, and obtaining, posting or disclosure of intimate descriptions, photos or videos without express consent of the other individual (Also reference PM73);

U.   Stalking

Repeated, unwanted conduct toward or contact with another person, including but not limited to, following someone, contacting someone verbally, electronically, via third party, or by any other means with the effect of creating fear and/or emotional distress (Also reference PM73);

V.   Theft

Using, depriving, removing or possessing the property and/or services of the University or another individual(s) without entitlement or authorization

W.   Unauthorized Surveillance

Creating, making, possessing, storing, sharing, or distributing unauthorized video, digital, or photographic images of a person taken in a location in which that person has a reasonable expectation of privacy;

X.   Violating a Law

Committing an act or omission, or attempting to commit an act that would be in violation of city, parish, state, or federal law.  This would include gambling.

Y.   Violating a Rule of the University

Violating, attempting to violate, or assisting in the violation of any contract, rule, policy, bylaw, and/or regulation of the University;

Z.    Weapons

Possession on one's person, which includes any bag, case, container, purse, clothing or backpack and/or use of any weapon, defined as any object used or designed to inflict or attempt to inflict harm or injury or fear of harm or injury. Weapons include, but are not limited to firearms, facsimile guns, air guns, knives, explosives, any dangerous chemical or biological agent or any other object or material capable of causing harm, and used by the offending person to inflict or attempt to inflict fear, harm or injury.

# 11.0 OUTCOMES

11.1  General

The Accountability process intentionally uses Outcomes to encourage positive change and developmental growth and to protect persons, property and the integrity of the University. A Student will receive notice of assigned Outcomes in writing, along with specific conditions required for successful completion.

The Student Affairs Official or UHP may delay registration for classes or withhold the issuance of an official transcript, grade, diploma, or degree to a Student alleged to have violated a rule or regulation of the University who has not completed an Outcome or responded to a directive of the Student Affairs Official.

11.2  Accountability Status

The following Outcomes may be imposed or instituted by the University for violation(s) of this Code:

A.    Warning

A written Warning issued to a Student, indicating that he/she has been found Responsible for violation(s) of the Code. This will be in effect for a specified time period and will not be recorded on the Student's academic transcript;

B.    Disciplinary Probation

Disciplinary Probation is a status for a specified period of time during which any further violation of the Code or University policy jeopardizes the Student(s) status with the University;

1.   Disciplinary Probation with restriction includes loss of privileges, including but not limited to, removal from residential facilities, inability to hold a position of leadership in a registered Student organization, participation in intramurals, and/or other representation of the University.

2.   Disciplinary Probation without restriction would allow Students to participate in Student organization leadership, intramurals, or other specified co-curricular activities.

3.   Disciplinary Probation will not be recorded on the Student's academic transcript except in cases of Academic Misconduct.

4.   The length of probation may vary up to indefinitely.

C.   Deferred Suspension

Deferred Suspension may be imposed on a Student for whom suspension from the institution is an appropriate penalty, but for whom there are mitigating circumstances, as determined by the SAO or University Hearing Panel. If a Student is found to have violated any rule of Louisiana State University Eunice while the penalty of Deferred Suspension is in effect, the penalty for such a violation will be suspension.  If a Student disputes the charge(s), the facts of the matter may be decided by the SAO, but if the Student is found in violation, the penalty must be Suspension or Expulsion.  Conditions related to the offense may be imposed, such as loss of privileges, prohibition of certain conduct, counseling, educational seminars, or unpaid work assignments.  Failure to meet the condition(s) shall be considered an additional Code violation

D.   Suspension

Suspension is the physical separation from the University for Misconduct.

1.    A Student may be Suspended for at least one semester and/or for multiple years. The Suspension may be delayed at the discretion of the SAO.

2.   Students Suspended from the University may be readmitted if they meet requirements to the University and if approved by the SAO.

3.   When a Student is Suspended from the University, he or she may NOT be on Campus without specific written authorization by the SAO.

4.   Suspension from the University will be recorded on the Student's academic transcript.

E.   Expulsion

Expulsion is the permanent separation of a Student from the University without the possibility of readmission.

1.   When a Student is expelled from the University, he or she may NOT enter or remain on Campus without specific written authorization by the SAO.

2.   Expulsion will be recorded on the Student's academic transcript.

F.   Interim Suspension

In cases where it is determined that a Student's continued presence on Campus constitutes an immediate threat of harm to Student(s), other individuals and/or University premises, the Student Affairs Official may immediately suspend that Student from the University, or limit access or attendance pending final disposition of the matter. Upon issuance of an Interim Suspension, the Student Affairs Official shall endeavor to contact the Student, advise the Student that an Interim Suspension is in effect, and provide the Student with an opportunity to address the alleged misconduct.

1.   The Interim Suspension status will be reviewed by SAO as soon as reasonably possible. This review can lead to a continuance of, revocation and/or modification of the Interim Suspension.

2.   If a Student is reinstated to the University following an Interim Suspension, the Student will be afforded the opportunity to make up academic work missed during the period in which the Suspension was imposed. It is the responsibility of the Charged Student to make arrangements with instructors for completing missed work.

Students separated (but not Expelled) from the University may be readmitted to the University if approved by the Student Affairs Official

A Student Separated from the University for "the remainder of the semester or summer term" as provided in Section above shall receive a grade of "W" in all classes in which he or she is enrolled for that semester, except as provided in Sections of this Code.  Medical withdrawals do not count toward the "W" grade policy

Separation from the University will be recorded on the Student's official University transcript.

11.3   Accountability Outcomes

A.   Educational Activities

Educational Activities may be assigned to a Student to encourage positive behavioral change and developmental growth. These include, but are not limited to, attendance/participation at educational programs, creation of documents, referral to a counselor, psychologist or other health or wellness provider, completion of treatment recommendations made by a health or wellness provider, community service, and provision of documents from court ordered directives. Fees may be charged for Educational Activities related to a specific Outcome.

B.   Grade impact

In situations involving Academic Misconduct, a Student may be assigned a failing grade for the work in question, may receive zero credit, no credit, or partial credit for the work in question, may have his/her overall class grade lowered by one letter, or may receive a failing grade for the course.

C.   No Contact Directive

A Student may be directed to cease all communication and contact with another Student, group of Students, Instructor or other University employee or contractor. Under a no contact directive, a Student may be prohibited from entering or remaining in or around a specified University building, facility or area of Campus.

D.   Restitution

A Student may be required to pay for damage to property, for personal injury expenses and/or other expenses. Payment will be made under the stipulations determined by the SAO.

E.   Restrictions

Restrictions may be imposed as an Outcome for any Student on Disciplinary Probation, Deferred Suspension, Suspension, Interim Suspension and/or Expulsion. Restrictions include, but are not limited to, loss of privileges, removal from residential facilities, inability to hold a position of leadership in a registered Student organization, participation in intramurals, LSU Eunice study abroad programs, and/or other representation of the University, and limitations to entering or being present in specific Campus locations.

F.   Revocation of Degree or Diploma

Revocation of any degree and withdrawal of the diploma may be imposed when the violation is related to the integrity of any academic credit, work, service, or prerequisites required for the degree.

G.   Parent/Guardian Notification

The Parent/Guardian Notification Policy is designed to help families and LSUE work together to prevent drug and alcohol abuse on campus. FERPA permits LSUE to inform parents or guardians when their student, under the age of 21, has been found in violation of LSUE's Substance Abuse and Drug-Free Campus Policy (P.S. 41). This policy also permits notification in health and safety emergencies regardless of student age or dependent status.

11.4   Academic Misconduct by Students

A.   Assigning a grade when there is Academic Misconduct

1.   Absent sufficient mitigating circumstances, a Student found responsible for Academic Misconduct will, at a minimum, be assigned a permanent failing grade for the course.  In no instance may the Student receive credit for the exam or assignment on which the violation occurred.

2.     If a Student is charged with Academic Misconduct and the case cannot be resolved prior to the final date for filing a semester grade, the student shall continue to complete all work and the instructor referring the matter shall report an "I" grade in the course in which the alleged Academic Misconduct occurred. If the Student is not found in violation, a permanent grade shall be assigned to remove the "I" grade on the basis of the quality of the work done in the course. If the Student is found in violation of Academic Misconduct, the instructor shall assign a grade that incorporates the sanction issued. This class and grade cannot be dropped, removed, or withdrawn.

B.     Non-grade related for Academic Misconduct

In addition to the academic sanction, other non-grade sanctions may be assigned.

1.     For the second offense, the minimum sanction is separation from the University for one full year;

2.     For the third offense, the sanction is expulsion;

3.     Multiple violations in the same course may be treated together or as separate offenses.

11.5   Sanctions for Non-Academic Misconduct

A.     The following general guidelines are used for maximum and minimum sanctions for nonacademic offenses. Any sanction or combination of sanctions consistent with similar cases with similar facts and circumstances may be imposed.

1.     Acts of violence or threat offenses against persons and/or offenses that directly place persons in jeopardy or fear of harm.

    a.     The minimum sanction is separation from the University for the remainder of the semester in which the offense occurred, and restitution (if appropriate);

    b.     The intermediate sanction is separation from the University for one calendar year or more, and restitution (if appropriate);

     c.     The maximum sanction is Expulsion from the University.

2.     Offenses that involve disruption of the University, its program, or other University efforts to accomplish its objectives and/or that indirectly place persons in jeopardy or harm.

     a.     The minimum sanction is Disciplinary Probation for the remainder of the Student's enrollment in the University;

     b.     The intermediate sanction is separation from the University for at least the semester in which the offense occurred;

     c.     The maximum sanction is Expulsion.

3.     Offenses that involve theft or damage to University property or the property of other members of the University community.

     a.     The minimum sanction is Disciplinary Probation for one or more regular semesters and restitution (if appropriate);

     b.     The intermediate sanction is separation from the University for one or more regular semesters, and restitution (if appropriate);

     c.     The maximum sanction is Expulsion from the University.

4.     All other violations.

     a.     The minimum sanction is Warning or Disciplinary Probation;

     b.     The intermediate sanction is Disciplinary Probation for a period ranging from one regular semester to the remainder of the Student's enrollment in the University or a period of separation from the University;

     c.     The maximum sanction is Expulsion from the University.

     The SAO is not required to adhere rigidly to the sanctions outlined in Section 9.7.A. However, a sanction more severe than the maximum sanction listed or less severe than the minimum sanction listed should be justified by mitigation or aggravating circumstances or other justification for the

specific sanction. Such circumstances or justification shall be incorporated into the final written sanctions.

If a Student is charged with multiple violations in a single proceeding, the SAO will render factual findings on each charge. The occurrence of multiple or repeated violations may be a factor in determining whether to assign the maximum sanction or to recommend a more severe sanction.

11.6    Appeals

A Student may decline the Accountability Outcome issued by the Student Affairs Official and request a UHP. Only Outcomes of a UHP or Alternative UHP can be appealed. The Appeal procedure provides the opportunity for questioning the appropriateness of the proceedings and/or Outcome.

Any Victim entitled to be informed of Accountability Outcomes may also Appeal an Outcome of the UHP or Alternative UHP based upon the criteria delineated in this Code.

An Appeal will only be considered on the following grounds:

A.    Evidence of bias by the UHP;

B.    Significant departure from the procedures, definitions or standards in the Code;

C.    New information has become available since the UHP;


11.7    Appellate Process

On Appeal, a finding of responsibility may be upheld or overturned in whole or in part. An Appeal must be submitted in writing to the Student Affairs Official within 5 business days after the Student and/or Student Victim is notified of the UHP Outcome or new information becomes known to the Student or Victim. The written document must identify the specific actions and/or Outcomes being contested. All submissions must include one of the aforementioned criteria as the basis for Appeal. Once the Student Affairs Official receives an Appeal, any Outcome issued by the UHP is placed on hold pending final resolution by the Dean.

Upon receipt of the written appeal, the SAA Official will submit a written position statement to the Student Affairs Official within 5 business days.

At the Student Affairs Official's sole discretion, the following may result:

A.      UHP Outcome is upheld;

B.      Rehearing by the original UHP;

C.      Rehearing by a new UHP; or

D.      The SAO modifies the Outcome.


The decision by the Student Affairs Official is final and concludes the Accountability process. Any Outcome imposed and upheld will commence once the Student Affairs Official has issued a decision.

11.8   Request for Review by the Chancellor

A.      The Chancellor's review will be limited to the question of serious procedural errors and/or the abuse of discretionary authority by the SAO.

B.      The Chancellor in his/her sole discretion may decline a request to review.

C.      The imposition of the sanction will not be delayed by a review by the Chancellor.

D.      If accepted, the request must:

1.      Be in writing signed by the student requesting review;

2.      Be delivered to the Chancellor's office within the 7 business days after the Charged Student's receipt of the SAO's decision;

3.      Contain a complete statement of the alleged serious procedural errors and/or specific examples of abuse of discretionary authority;

4.      Outline the relief sought.

## 12.0 ACCOUNTABILITY RECORDS

Student Accountability cases and records are education records of the University and are maintained by the Student Affairs Official. Consistent with the 1974

Family Educational Rights and Privacy Act (FERPA), a Student may review and examine his or her Accountability records. These records are generally not available for others to review except in accordance with law. Materials within the Student's Accountability record will not be provided to University personnel outside of the Student Affairs Official unless disseminated in accordance with FERPA. University personnel or University legal counsel may have access to the Accountability records of individual Students only if such information is needed in the performance of duties assigned to that person. Refer to Policy Statement 34 – Privacy Rights of Parents and Students.

A.    Files for Suspensions, expulsions, and violent offenses are maintained indefinitely. All other files are maintained for seven years after the incident's resolution. At the end of the seven-year period, the files are destroyed in accordance with the University's record disposal policies.

B.    Academic Misconduct, Deferred Suspension, Suspension, Expulsion and/or any other Accountability action that separates the Student from the University is recorded on the Student's academic transcript maintained in the Office of the University Registrar.

C.    A notation on the Student's academic transcript will be removed at the completion of the Outcome period, except in cases of a Suspension or Expulsion.

D.    In cases of Suspension, a Student may petition the SAO in writing to have this notation removed from his or her academic transcript. At the discretion of the SAO, this notation may be removed from the academic transcript; however, the Accountability record maintained in the Office of Student Affairs and Enrollment Services will remain as provided in this Code. Typically a Suspension notation will only be removed after the Student has returned to the University.

E.    A notation of Expulsion or Degree Revocation from the University is never removed from a Student's academic transcript.

## 14.0 REFERENCE

Louisiana State A & M University (2014).  LSU Code of Student Conduct. https://saa.lsu.edu/code

# EXHIBIT B



— Division of —
**Student Affairs**

November 5, 2020

Kimonlyn Minor
Sent electronically to 68138@mail.lsue.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2020006001

Dear Ms. Minor,

On October 28, 2020, you were involved in a possible violation of the Louisiana State University at Eunice Code of Student Conduct. Specifically, it is alleged that you are alleged to have used unauthorized materials on an exam in your NURS2532 course.. As a result, you are charged with the following violations of the LSU Eunice Code of Student Conduct:

- **Unauthorized Materials**
  Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material.

- **Failure to Follow Course Requirements**
  Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors.

Per Section 6.2 B of the Code of Student Conduct, you are required to meet with a student conduct hearing officer. This meeting has been scheduled for **Friday, November 6, 2020 at 9:00 AM in Office of Student Affairs, Acadian Center, Room 112**. If you cannot attend this meeting, please call the main office at 337-550-1218 to reschedule. Per Section 6.4 of the Code, the student conduct hearing officer will proceed with the accountability meeting in your absence and will issue a decision as to your responsibility.

We encourage you to refer to the LSU Eunice Code of Student Conduct at www.lsue.edu/student-code-of-conduct to review the accountability process and your rights and responsibilities as a charged student. Please complete and bring the attached student statement form to your meeting.

Per Section 10.1 of the Code of Student Conduct, you may not drop a course where an alleged violation of academic misconduct has occurred. Any student who drops the course without written permission from Student Affairs will be re-enrolled in the class.

If you have a disability and need accommodations for this meeting, please notify the Office of the Dean of Students via email at kdsmith@lsue.edu or call at 337-550-1218, and we will make the necessary arrangements.

Louisiana State University Eunice
PO Box 1129, 2048 Johnson Highway
Eunice, LA 70535-1129

**Success Starts Here.**

P (337) 550-1218
F (337) 550-1393
www.lsue.edu

Concerned,

Kyle Smith
Associate Vice Chancellor for Student Affairs and Dean of Students

EXHIBIT C



— Division of —
**Student Affairs**

November 6, 2020

Kimonlyn Minor
Sent electronically to 68138@mail.lsue.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2020006001

Dear Ms. Minor,
Student ID: 68138

On November 6, 2020, you met with conduct officer, who after a review of the information, has made the following determinations regarding your responsibility for the following charges from the LSU Eunice Code of Student Conduct:

- Unauthorized Materials -- **Responsible**
  Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material.

- Failure to Follow Course Requirements -- **Responsible**
  Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors.

Subsequently, you are assigned the following outcome(s):

- You will receive zero credit for Exam 2 in NURS2532-25.

The following rationale has been provided by the hearing officer/panel:

*According to Section 11.4.A.1. of the Code of Student Conduct, the minimum sanction for a violation for academic misconduct must be a failing grade in the course. I found mitigating circumstances to be Ms. Minor's status as a first generation college student to lower the sanction to failing the assignment. Also according to Section 11.4.A.1. of the Code, "in no instance may the Student receive credit for the exam on which the violation occurred."*

Per Section 6.0 of the Code of Student Conduct, you have the right to accept or decline this outcome. By accepting the outcome, you agree to comply with the outcome and deadlines included in this letter, as well as accept responsibility for your actions in this case. To accept, you may simply work towards the deadlines (if any) for the above listed sanctions. There is no need to respond.

However, you may also decline the outcome in this letter and request that the case be reheard by a

Louisiana State University Eunice
PO Box 1129, 2048 Johnson Highway
Eunice, LA 70535-1129

**Success Starts Here.**

P (337) 550-1218
F (337) 550-1393
www.lsue.edu

University Hearing Panel (UHP). In this instance, a UHP will issue a decision that will replace the outcome in this letter. You may request a UHP by requesting a hearing by emailing the Dean of Students at kdsmith@lsue.edu within three (3) days of the date of this letter.

You will be required to complete any conditions or activities as directed in this letter. Please understand that should you fail to complete any portion of this outcome, a registration hold may be placed on your record and will remain until all outcome requirements are completed.

Per Section 10.1 of the Code of Student Conduct, "A student found responsible for Academic Misconduct may NOT drop the course in which the violation occurred. Any Student who drops the course without written permission from Student Affairs will be re-enrolled in the class and then given the appropriate grade post Outcome."

If you have any questions, please email kdsmith@lsue.edu or call 337-550-1218.

Sincerely,

Kyle Smith
Associate Vice Chancellor for Student Affairs and Dean of Students

# EXHIBIT D

FROM:        Dr. Kyle Smith

DATE:        Wednesday, November 11, 2020

TIME:        11:30 AM

SUBJECT:     Additional information for Minor case for UHP review

**Follow-up conversation with Dr. Hawthorne, Nursing Program Director**
I called Dr. Lisa Hawthorne to inquire about some of Ms. Minor's statements in our meeting.

Dr. Hawthorne did confirm the paper was <u>not</u> folded.  That was an incorrect detail in the report.

I told Dr. Hawthorne that Ms. Minor stated very strongly that she did not hesitate when Ms. Lafleur asked her to open her laptop to verify test completion.

Dr. Hawthorne stated that Ms. Lafleur had to ask Ms. Minor twice to open up her laptop.  After the first time, she stated that the test was completed and did not comply with the initial request.  After Ms. Lafleur asked a second time, Ms. Minor complied.

# EXHIBIT E



—— Division of ——
**Student Affairs**

November 6, 2020

Kimonlyn Minor
Sent electronically to 68138@mail.lsue.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2020006001

Dear Ms. Minor,
Student ID: 68138

On November 6, 2020, you met with conduct officer, who after a review of the information, has made the following determinations regarding your responsibility for the following charges from the LSU Eunice Code of Student Conduct:

- Unauthorized Materials -- **Responsible**
  Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material.

- Failure to Follow Course Requirements -- **Responsible**
  Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors.

Subsequently, you are assigned the following outcome(s):

- You will receive zero credit for Exam 2 in NURS2532-25.

The following rationale has been provided by the hearing officer/panel:

*According to Section 11.4.A.1. of the Code of Student Conduct, the minimum sanction for a violation for academic misconduct must be a failing grade in the course. I found mitigating circumstances to be Ms. Minor's status as a first generation college student to lower the sanction to failing the assignment. Also according to Section 11.4.A.1. of the Code, "in no instance may the Student receive credit for the exam on which the violation occurred."*

Per Section 6.0 of the Code of Student Conduct, you have the right to accept or decline this outcome. By accepting the outcome, you agree to comply with the outcome and deadlines included in this letter, as well as accept responsibility for your actions in this case. To accept, you may simply work towards the deadlines (if any) for the above listed sanctions. There is no need to respond.

However, you may also decline the outcome in this letter and request that the case be reheard by a

Louisiana State University Eunice
PO Box 1129, 2048 Johnson Highway
Eunice, LA 70535-1129

**Success Starts Here.**

P (337) 550-1218
F (337) 550-1393
www.lsue.edu

University Hearing Panel (UHP). In this instance, a UHP will issue a decision that will replace the outcome in this letter. You may request a UHP by requesting a hearing by emailing the Dean of Students at kdsmith@lsue.edu within three (3) days of the date of this letter.

You will be required to complete any conditions or activities as directed in this letter. Please understand that should you fail to complete any portion of this outcome, a registration hold may be placed on your record and will remain until all outcome requirements are completed.

Per Section 10.1 of the Code of Student Conduct, "A student found responsible for Academic Misconduct may NOT drop the course in which the violation occurred. Any Student who drops the course without written permission from Student Affairs will be re-enrolled in the class and then given the appropriate grade post Outcome."

If you have any questions, please email kdsmith@lsue.edu or call 337-550-1218.

Sincerely,

Kyle Smith
Associate Vice Chancellor for Student Affairs and Dean of Students

EXHIBIT E
(CORRECTED)



—— Division of ——
**Student Affairs**

November 16, 2020

Kimonlyn Minor
Sent electronically to 68138@mail.lsue.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2020006001

Dear Ms. Minor,

The University Hearing Panel (UHP) held a hearing on November 16, 2020 to review charges brought against you for allegedly violating the Louisiana State University at Eunice Code of Student Conduct. Based on the information presented at the Hearing, the University Hearing Panel has issued the following findings related to the Code of Student Conduct:

- Unauthorized Materials -- **Responsible**
  Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material.

- Failure to Follow Course Requirements -- **Responsible**
  Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors.

You are being issued the following sanction(s):

- You will receive zero credit for Exam 2 in NURS2532.

The following rationale was provided by the University Hearing Panel:

*Although the statements you provided are at odds with the charges, the UHP concurred that there was a preponderance of evidence to suggest that you were responsible for both charges. The UHP decided to uphold the original sanctions, which are the most minimal sanctions that can be applied in cases of academic misconduct.*

You may appeal the decision of the University Hearing Panel and/or the sanctions imposed in writing, within five (5) business days of the date of this letter. Appeals are submitted to Dr. Kyle Smith, Louisiana State University at Eunice, Dean of Students, P.O. Box 1129, 2048 Johnson Hwy, Eunice, LA 70535. All supporting documentation, when appropriate or requested, shall be included with the appeal.

Such appeal must be based on (1) whether or not bias is able to be demonstrated amongst the members of the UHP, (2) whether or not there has been a significant departure from the procedures, definitions, or

Louisiana State University Eunice
PO Box 1129, 2048 Johnson Highway
Eunice, LA 70535-1129

**Success Starts Here.**

P (337) 550-1218
F (337) 550-1393
www.lsue.edu

standards in the Code of Student Conduct, and/or (3) whether or not new evidence is introduced that was not available at the time of the hearing. The appeal must clearly identify which of these bases for appeals are being contested.

Sincerely,

Kyle Smith
Associate Vice Chancellor for Student Affairs and Dean of Students