UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIMONLYN MINOR,**<br>　　　　*Plaintiff,*<br><br>v.<br><br>**LOUISIANA STATE UNIVERSITY AT EUNICE,** by and through its Board of Supervisors; **KYLE SMITH,** in his individual and official capacity; and DOES 1-20, inclusively,<br>　　　　*Defendants.* | CASE NO. 6:21-cv-04036<br><br>AMENDED COMPLAINT |

**NOW COMES** Plaintiff Kimonlyn Minor, with her Amended Complaint against Louisiana State University at Eunice, by and through its Board of Supervisors, Kyle Smith, in his individual and official capacity, and DOES 1-120, inclusively, and hereby states the following:

## BACKGROUND

1. This is an action seeking damages for Defendants' violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and 42 U.S.C. §1983.

**AMENDED COMPLAINT** - 1 -

2. Plaintiff was wrongfully found guilty by Defendants of cheating on an exam. Defendant failed to grant Plaintiff a fair and impartial trial to determine Plaintiff's fault thereby violating Plaintiff's constitutional rights.

3. Defendants also failed to provide a testing environment adequate that reasonably complied with Plaintiff's needs.

4. As a result of these violations of her rights, Plaintiff has suffered financial damages and severe emotional distress as well as serious threats to her future career in nursing.

## PARTIES

5. Plaintiff Kimonlyn Minor ("Plaintiff") is a Nursing Student at Louisiana State University at Eunice and has been wrongfully found responsible for academic misconduct.

6. Louisiana State University at Eunice ("LSUE") is a public university located at 2048 Johnson Highway in Eunice, Louisiana 70535.

7. Defendant LSUE Board of Supervisors is the governing body of Louisiana State University, and was established by Article 8, Section 7 of the Louisiana Constitution. The Board was authorized by Revised Statute 17:1521 to establish LSUE.

8. Defendant Kyle Smith ("Smith") is, and at all times relevant to this case was, the Associate Vice Chancellor for Student Affairs and Dean of Students at LSUE.

9. DOES 1-20 ("Doe Defendants") are individuals who were employed by LSUE during the period of Plaintiff's enrollment. The names and job titles of the Doe Defendants are currently unknown.

## JURISDICTION & VENUE

10. This case arises under the laws of the United States. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

11. This case arises under the federal statutes: Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and 42 U.S.C. §1983.

12. United States District Court for the Western District of Louisiana is the proper venue in the because Defendants are domiciled within this district and a significant portion of the events relevant to this action occurred within this district.

## FACTUAL ALLEGATIONS

13. At all times relevant to this action, Plaintiff was a nursing student enrolled at LSUE.

14. As a young child, Plaintiff has been diagnosed with Attention-deficit/hyperactivity disorder ("ADHD") and anxiety. This diagnosis persists.

15. Despite her disabilities, Plaintiff is the first member of her family to attend college. Throughout her time at LSUE, Plaintiff has attained consistently high grades in her classes.

16. Because of her documented disabilities, Plaintiff is entitled to receive accommodations from LSUE and has received accommodations in the past.

17. As part of her disability accommodation, Plaintiff is allowed to take exams within the LSUE testing center in a solitary environment. Plaintiff is also entitled to extra time to complete her exams.

18. On October 28, 2020, Plaintiff took a second exam for a course called Nursing Clinical Pharmacology IV (NURS 2532) under the supervision of Ms. LaFleur and Ms. Sonnier.

19. Despite her testing center disability accommodations, Plaintiff was forced to take the October 28, 2020, exam in a classroom setting.

20. During a previous exam taken at the testing center, LSUE professors had denied Plaintiff the opportunity to review her exam. This was a disturbing

development because non-accommodated students are granted the ability to review exams as a matter of course.

21. In order to ensure her ability to review her exam, Plaintiff was forced to forgo her testing center accommodation and take the October 28, 2020 exam in a classroom setting.

22. The October 28, 2020, exam was administered using a computerized software program on students' personal laptops. Further, students were able to utilize scratch paper, which was to be turned in at the conclusion of the exam.

23. Although she was forced to forego her testing center accommodation, Plaintiff was still entitled to extra time as part of her disability accommodation.

24. Upon her arrival for the exam, Plaintiff picked up four pieces of scratch paper for use during the exam. During the exam, Plaintiff followed her normal exam routine of writing all her thoughts and everything she had studied onto scratch paper. This is a practice that Plaintiff had used in all her prior exams to help manage her anxiety while taking an exam.

25. By the end of the exam, Plaintiff's computer screen showed she had 30 more minutes in accordance with her disability accommodations. However, at the same time, one of the supervising professors declared there were only five minutes left in the exam.

26. At no time did the supervising process declare that those with disability accommodations had time remaining back the five minutes declared to the testing room.

27. This unexpected shortage of time caused Plaintiff's anxiety to increase dramatically as she had expected an extended amount of time for the exam consistent with her disability accommodation. Because Plaintiff still had questions to answer, she was put into a state of panic.

28. At the end of the exam, Plaintiff was required to turn in all four pieces of the scratch paper. However, due to Plaintiff's state of panic and heightened anxiety, she forgot to turn in one of the pieces of scratch paper.

29. After the exam, Ms. LaFleur asked Plaintiff to show her exam upload screen. Plaintiff had to be asked to show the screen twice due to Plaintiff being at the peak of her anxiety. Moreover, she was unfamiliar with the testing environment and classroom procedures. Therefore, Plaintiff did not understand what was being asked of her.

30. In the opened computer was the single piece of scratch paper that Plaintiff had forgotten to turn in at the end of the exam. This piece of scratch paper is where Plaintiff had written out all her exam-related knowledge at the beginning of the exam.

31. The paper was not folded and contained large and small writing, as is usual for Plaintiff when she is anxious.

32. Plaintiff did not leave the testing environment with this paper. Instead, Ms. LaFleur took it.

33. Unbeknownst to Plaintiff, Ms. LaFleur and Ms. Sonnier reported Plaintiff to Dr. Lisa Hawthorne based on their mistaken belief that Plaintiff committed misconduct related to this exam.

34. On November 5, 2020, Plaintiff received a letter from Defendant Smith charging her with the following violations of the LSUE student code of conduct:

*Unauthorized Materials*
*Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized material in sight during a test/ quiz will be considered utilization of the material*

*Failure to Follow Course Requirements*
*Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors*

35. With respect to "Unauthorized Materials," it was alleged that Plaintiff had brought an unauthorized "cheat sheet" into the exam. This allegation was based on the false belief that the single piece of scratch paper, that Plaintiff had forgotten to turn in at the end of the exam, was a "cheat sheet" that Plaintiff had smuggled into the exam.

36. With respect to "Failure to Follow Course Requirements," it was falsely alleged that Plaintiff violated confidentiality rules by attempting to leave the testing environment with the scratch paper.

37. On November 6, 2020, Plaintiff conducted an "accountability meeting" with Defendant Smith to discuss the charges against her.

38. In the meeting it was apparent that Defendant Smith was already convinced of Plaintiff's guilt. Defendant Smith repeatedly insisted that Plaintiff had cheated, no matter what she said.

39. During this "accountability meeting," Defendant Smith failed to consider any evidence brought by Plaintiff. More specifically, Defendant Smith did not consider an email from one of Plaintiff's advisors confirming that Plaintiff always brought scratch paper with her into exams, that Plaintiff wrote out all her knowledge at the beginning of an exam, and that the writing on the scratch paper can vary in size.

40. Additionally, Defendant Smith relied on the false assumption that the scratch paper left behind in Plaintiff's computer was folded.

41. The outcome of this "accountability meeting" was that Defendant Smith found Plaintiff responsible for both charges.

42. As a result of this outcome, Plaintiff was set to receive zero credit for the October 28, 2020 exam. This outcome would cause Plaintiff to fail the entire

course and render it extremely difficult, if not impossible, for Plaintiff to obtain the degree she worked so hard to obtain.

43. Plaintiff opted to appeal the outcome of the "accountability meetings" and have a University Hearing Panel (UHP) review the charges brought against her.

44. In an internal memo dated November 11, 2020, Defendant Smith, confirmed that that scratch paper alleged to be a "cheat sheet" was not folded. Defendant Smith had relied on the assumption that the scratch paper was in fact folded in making the decision to find Plaintiff responsible for the charges against her.

45. On November 16, 2020, the University Hearing Panel ("UHP") conducted their hearing.

46. At the hearing, Plaintiff requested to see the original scratch paper in question. LSUE was unable to provide the paper to UHP or Plaintiff. The UHP was only presented with low quality scans of the scratch paper in question.

47. There was no explanation given by LSUE as to where the original paper had gone within the short amount of time between the exam and the hearing, and why they were unable to present the original.

48. Additionally, LSUE presented no live witnesses, such as Ms. LaFleur and Ms. Sonnier. Instead, they relied on hearsay regarding what Ms. LaFleur and Ms. Sonnier had told Ms. Lisa Hawthorne, LSUE's Director of Nursing.

49. LSUE was unable to produce evidence that Plaintiff had anything on her testing table except permitted materials when the exam started.

50. LSUE was unable to produce evidence that Plaintiff had left the testing environment with the scratch paper. Moreover, they admitted that the paper found in the classroom had been taken by Ms. LaFleur before Plaintiff left her table.

51. After the hearing, Defendant Smith did not leave the room. Plaintiff did. Instead, Defendant Smith stayed with the UHP while the panel was making its decision.

52. On November 16, 2020, the UHP found Plaintiff responsible for both charges.

53. On November 23, 2020, Plaintiff, through counsel, appealed the findings of the UHP by sending an appeal letter to LSUE.[1]

54. On April 7, 2021, General Counsel for LSUE informed Plaintiff that LSUE had decided to uphold their decision finding Plaintiff responsible for the charges against her.

---

[1] LSU Student Code of Conduct section 11.7 states that an appeal to a UHP decision "must be submitted in writing to the Student Affairs Official within 5 business days after the Student and/or Student Victim is notified of the UHP Outcome or new information becomes known to the Student or Victim. The November 23, 2020 appeal letter was timely sent because November 21 and 22, 2020 were weekend dates.

**AMENDED COMPLAINT** - 10 -

## RESPONDAET SUPERIOR AND AGENCY

55. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

56. Under federal and Louisiana law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of their employer.

57. At all times relevant to this action, Defendant Smith was employed by LSUE. The acts and omissions of Defendant Smith relevant to this action were undertaken within the scope of his employment with LSUE.

## FIRST CAUSE OF ACTION
### Violation of Title II of the Americans with Disabilities Act
### (Against Defendant LSUE)

58. Plaintiff incorporates by reference all preceding paragraphs in this complaint.

59. The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

60. Plaintiff was diagnosed with severe ADHD and anxiety. Therefore, she suffers from a protected disability.

61. Plaintiff's ADHD and anxiety limit major aspects of her life, making many activities difficult for her. This condition affects Plaintiff's ability to

concentrate, comprehend, and retain information. Thus, her ability to learn is challenged.

62. Despite Plaintiff's disabilities, and on the basis of Plaintiff's scholastic performance, Plaintiff was admitted into LSUE's nursing program. In this program, Plaintiff maintained an extremely high-grade point average (GPA).

63. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

64. At all relevant times, Defendant LSUE was fully aware of Plaintiff's disability. LSUE had previously granted Plaintiff multiple accommodations for her disabilities, including allowing Plaintiff to take exams at the LSUE testing center and allowing Plaintiff extra time to take her exams.

65. Defendant LSUE <u>denied</u> Plaintiff's reasonable accommodations. Thereby Defendant LSUE discriminated against Plaintiff on the basis of her disability through the following actions:

a. During several exams, Defendant LSUE failed to provide Plaintiff with the same opportunity to review exams that was afforded to non-disabled students.

b. Defendant LSUE failed to provide Plaintiff with an extra twenty-five (25) minutes for her October 28, 2020 exam. When Plaintiff was informed of only having five (5) minutes to complete the exam, her anxiety turned into panic.

66. Defendant LSUE has discriminated against Plaintiff by failing to provide a full and equal opportunity to use the services Defendant LSUE provides, as per 42 U.S.C. §§ 12182, 12183(a)(1).

67. Defendant LSUE's inobservance of the law requires declaratory and injunctive relief pursuant to 42 U.S.C. § 12182, Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

68. As a direct and proximate result of Defendant LSUE's unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff was denied access to an education equal to that enjoyed by non-disabled students. Therefore, Plaintiff has sustained and continues to sustain injuries and damages due to Defendant LSUE's discriminatory actions.

## SECOND CAUSE OF ACTION
**Violation of Section 504 of the Rehabilitation Act of 1973**
**(Against Defendant LSUE)**

69. Plaintiff incorporates by reference all preceding paragraphs in this complaint.

70. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federally funded entities from discriminating based on disability. Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or

activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

71. As a public school receiving federal funding, Defendant LSUE is subject to Section 504 of the Rehabilitation Act of 1973.

72. Plaintiff was diagnosed with severe ADHD and anxiety. Therefore, Plaintiff suffers from a disability protected by Section 504.

73. Plaintiff's ADHD and anxiety limit major aspects of her life, making many activities difficult for her. This condition affects Plaintiff's ability to concentrate, comprehend, and retain information. Thus, her ability to learn is challenged.

74. Despite Plaintiff's disabilities, and on the basis of Plaintiff's scholastic performance, Plaintiff was admitted into LSUE's nursing program. In this program, Plaintiff maintained an extremely high-grade point average (GPA). Thus, Plaintiff was otherwise qualified to receive a good grade on her exam and finish her degree.

75. Given that Plaintiff was accepted to LSUE's nursing program, she was otherwise qualified to continue school at LSUE.

76. At all relevant times, Defendant LSUE was fully aware of Plaintiff's disability. LSUE had previously granted Plaintiff multiple accommodations for her disabilities, including allowing Plaintiff to take exams at the LSUE testing center and allowing Plaintiff extra time to take her exams.

77. The Rehabilitation Act and its implementing regulations require that Defendants administer programs/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. § 41.51 and 45 C.F.R. § 84.4.

78. Defendant LSUE' denied Plaintiff's reasonable accommodations and thereby discriminated against Plaintiff on the basis of her disability through the following actions:

a. During several exams, Defendant LSUE failed to provide Plaintiff with the same opportunity to review exams as was afforded to non-disabled students.

b. Defendant LSUE failed to provide Plaintiff with an extra twenty-five (25) minutes for her October 28, 2020 exam. When Plaintiff was informed of only having five (5) minutes to complete the exam, her anxiety turned into panic.

79. Defendant LSUE has discriminated against Plaintiff by failing to provide a full and equal opportunity to use the services Defendant LSUE provides.

80. As a direct and proximate result of Defendant LSUE's unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff was denied access to an education equal to that enjoyed by non-disabled students. Plaintiff has therefore sustained and continues to sustain injuries and damages due to Defendant LSUE's actions.

## THIRD CAUSE OF ACTION
### Violation of 42 U.S.C § 1983
### Fifth and Fourteenth Amendment
### (Against All Defendants)

81. Plaintiff incorporates by reference all preceding paragraphs in this complaint.

82. The Individual Defendants violated Plaintiff's constitutional right to due process.

83. Plaintiff had a constitutionally protected property interest in her nursing education at LSUE given Plaintiff paid tuition to LSUE in order to attend LSUE.

84. Further, Plaintiff has a constitutionally protected liberty interest in her freedom to pursue a career in nursing, her chosen occupation.

85. The Fifth and Fourteenth Amendments of the U.S. Constitution commands that no person shall be deprived of life, liberty, or property without the due process of law.

86. As such, given that Plaintiff's property and liberty interest was at stake, Plaintiff was entitled to a fair and impartial investigation with a systematic method for evaluation Plaintiff's actions and clear standards of culpability with respect to the allegations lodged against her in accordance with the policies established concerning disciplinary matters. Anything less amounts to an arbitrary disciplinary process subject only to the whims of the Hearing Panel.

87. The Defendants were aware that Plaintiff was entitled to a fair and impartial determination of the merits of the allegations against her.

88. Plaintiff received zero credit on her exam as a result of an arbitrary evaluation of her conduct.

89. With respect the November 6, 2020 "accountability meeting," Plaintiff was wrongly found responsible for the charges against her and thereby denied her due process rights when:

    a. Defendant Smith was convinced of Plaintiff's guilt and ignored all evidence provided by Plaintiff suggesting the opposite.

    b. Defendant Smith did not consider an email from one of Plaintiff's advisors, confirming that Plaintiff always takes scratch paper with her into exams on which she writes out all her knowledge at the beginning of an exam and that the writing on the scratch paper can vary in size.

    c. Defendant Smith relied on the false assumption that the scratch paper left behind in Plaintiff's computer was folded.

90. The LSUE Student Code of Conduct provides that during a UHP hearing, "Student responsibility will be determined using a standard of a preponderance of the evidence or more likely than not."

91. With respect the UHP hearing held November 16, 2020, Plaintiff was wrongly found responsible for the charges against her and was denied her due process rights when:

a. During the UHP meeting, Defendants were unable to produce important evidence, such as the original scratch paper or live witnesses.

b. The Defendants did not produce any affirmative evidence that could sustain a finding by a preponderance of the evidence that Plaintiff was responsible for charges levelled against her.

c. Defendants did not consider an email from one of Plaintiff's advisors confirming that Plaintiff always takes scratch paper with her into exams on which she would write out all her knowledge at the beginning of an exam and that the writing on the scratch paper can vary in size.

d. The biased Defendant Smith stayed with the UHP while they formed their decision, while Plaintiff had to leave the room. The presence of Defendant Smith unduly influenced the UHP to find against Plaintiff.

92. The UPH process that Plaintiff was subjected to by Individual Defendants was devoid of due process and completely arbitrary at every stage.

93. As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress as well as a serious threat to succeeding in her chosen career.

94. The actions of Defendants violated the provisions of 42 U.S.C. §1983 in that Defendants knowingly and willfully violated the civil rights of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her relief as follows:

(1) Compensatory damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress.

(2) Punitive damages against Defendants.

(3) Attorneys' fees.

(4) Costs of the case.

(5) Declaratory and Injunctive relief.

(6) Such other relief as this Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Date: April 18, 2021

*/s/Keith Altman*
Keith Altman, Esq.
*Pro Hac Vice*
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com