UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

KIMONLYN MINOR : CIVIL ACTION NO. 6:21-CV-04036

VERSUS : JUDGE MICHAEL J. JUNEAUX

LOUISIANA STATE UNIVERSITY : MAGISTRATE JUDGE PATRICK J.
AT EUNICE, ET AL HANNA

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), 12(b)(4), 12(b)(5) and 12(b)(6)**

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**

**/s/ Cranay D. Murphy**
Cranay D. Murphy T.A. (36600)
Assistant Attorney General
Louisiana Department of Justice –
Division of Risk Litigation
556 Jefferson Street, 4th Floor
Lafayette, Louisiana  70501
Telephone: (337) 262-1700
Facsimile: (337) 262-1707
Email: Murphyc@ag.louisiana.gov
Counsel for Defendants, Louisiana State
University at Eunice, the Board of
Supervisors of Louisiana State University
Technical and Mechanical College, and
Kyle Smith, individually and in his official
capacity as Vice Chancellor for Student
Affairs and Dean of Students for Louisiana
State University at Eunice

–1–

## TABLE OF CONTENTS

I.      INTRODUCTON ...........................................................................................4

II.     BACKGROUND ............................................................................................6

        A.      *Minor enrolls in the LSUE nursing program; is informed of the requirements under the Code of Student Conduct as well as the criteria for retention, progression, and re-entry/readmission process for the LSUE nursing program; but struggles to meet academic requirements and criteria* ...................................6

        B.      *Minor requests and is granted disability accommodations at LSUE; is informed of her responsibility to request test accommodations a minimum of three weekdays prior to each test; Minor neither requested nor arranged to receive testing accommodations for the October 28, 2020 NURS 2532 Exam 2; is caught and charged with using unauthorized materials and failing to follow course requirements in violation of the LSUE Code of Student Conduct* ...........8

        C.      *Minor is provided written notice of the charges against her; attends accountability meeting; receives written notice of the accountability outcome finding her responsible for charges and sanction of zero credit for Exam 2 in NURS 2532; appeals to the University Hearing Panel (UHP) and attends UHP hearing; is given written notice of the UHP decision to uphold the decision to find her responsible for charges* ..........................................................................9

        D.      *Minor is dismissed from the LSUE nursing program for failure to meet the criteria for retention/progression; files suit in federal court against LSUE, the Board of Supervisors of Louisiana State University Technical and Mechanical College (the Board), and Kyle Smith* 11

II.     LAW AND ARGUMENT...............................................................................12

        A.      *Motion to Dismiss Standards of Review*..................................................................

        B.      *The Board and Kyle Smith, in his official capacity, are entitled to sovereign immunity from suit under the Eleventh Amendment* ..........................................18

        C.      *As LSUE is not a legal entity with the capacity to be sued, the Complaints fails to state a claim upon which relief may be granted* ...............................................20

C.      ***Plaintiff failed to effectuate proper service on the Board pursuant to FRCP Rule 4; La. R.S. 13:5107; and La. R.S. 39:1538***.................................................27

D.      ***Plaintiff's Complaints fails to state a claim upon which relief can be granted under the ADA*** ........................................................................................32

        **1.**     **No individual-capacity liability exists under the ADA**

        **2.**     **Claims against Kyle Smith in his official capacity are redundant**

        **3.**     **Plaintiff has failed to state a claim against the Board under the ADA**

E.      *§ 1983 cannot be used as an alternative method for the enforcement of rights set forth in the Rehabilitation Act or Title II of the ADA, because the Rehabilitation Act, by its express terms, provides comprehensive enforcement and remedial measures for violations of its provisions*..............................23

III.    **CONCLUSION** ........................................................................................24

## EXHIBITS

**Exhibit A** –   LSUE Fall 2020 Code of Student Conduct;

**Exhibit B** –   November 5, 2020, Charge Letter to Kimonlyn Minor providing written notice of alleged academic misconduct in violation of the LSUE Code of Student Conduct and providing notice of Accountability Hearing;

**Exhibit C** –   November 6, 2020, Accountability Outcome Letter providing written notice of outcome determination;

**Exhibit D** –   November 11, 2020, Internal Memo; and

**Exhibit E** –   November 16, 2020, UHP Findings.

**MAY IT PLEASE THE COURT**:

**LOUISIANA STATE UNIVERSITY AT EUNICE (hereinafter "LSUE"), the BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVIERSITY AGRICULTURAL AND MECHANICAL COLLEGE (erroneously referred to as "The LSUE Board of Supervisors)(hereinafter "the BOARD"), and KYLE SMITH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSOCIATE VICE CHANCELLOR FOR STUDENT AFFAIRS AND DEAN OF STUDENTS FOR LOUISIANA STATE UNIVERSITY AT EUNICE (hereinafter "DR. SMITH")**, respectfully request that the Court grant their Motion to Dismiss Pursuant to FRCP 12(b)(1), 12(b)(4), 12(b)(5), and 12(b)(6) for the following reasons:

## I.      INTRODUCTION

The Plaintiff is a former nursing student who was dismissed from school after failing two nursing classes during the course of her enrollment in accordance with the LSUE nursing program's criteria for progression and/or retention. While enrolled at LSUE, Plaintiff was charged and found to be responsible for violating the LSUE Code of Student Conduct (the "Code"). With the understanding that Plaintiff was a first generation college student, Plaintiff was not issued the minimum required sanction of failing the course, as required under the Code; but was instead sanctioned by receiving zero credit on the assignment from which her misconduct arose.

Plaintiff subsequently appealed this finding to the University Hearing Panel ("UHP"), which was comprised of a Chairman, an academic advisor, an instructor, and a student representative. Ms. Minor, with the presence of her counsel, attended the UHP hearing and availed herself of the opportunity to be heard and dispute the charges alleged against her. Following the

hearing, UHP upheld the charges and sanction, finding Plaintiff responsible for the alleged Code of Student Conduct violations. Ms. Minor again appealed the findings to the Chancellor, who ultimately upheld the charges and sanction brought against her. As a result of her misconduct, Ms. Minor received zero credit on only one assignment; and her subsequent dismissal from the LSUE nursing program was the result of her failure to meet the criteria for retention and/or progression in the program.

She now brings this lawsuit, seeking compensatory damages, punitive damages, attorneys' fees and costs, as well as declaratory and injunctive relief. Defendants respectfully submit that they are entitled to sovereign immunity from suit pursuant to the Eleventh Amendment. Defendants further contend that Plaintiff has failed to effectuate sufficient process and service of process, thereby mandating dismissal pursuant to La. R.S. 13:5107. Additionally, and in the alternative, Plaintiff's Complaints contains critical defects and fails to state a plausible claim for relief. The Court, therefore, should grant this motion and dismiss this suit with prejudice.

According to the Complaints, Kimonlyn Minor, "attained consistently high grades in her classes," throughout her time at LSUE. [Court Doc. #1, ¶15, p. 4]. However, Plaintiff had previously received a failing grade in a nursing course during the Fall semester of 2018; and pursuant to the LSUE Nursing Student Handbook, receiving a second failing grade in a nursing course mandates dismissal from the program. Ms. Minor's sanction for academic misconduct was to receive a failing grade on the *assignment only*, and although unfortunate, her ultimate dismissal was a result of her failure to earn a final passing grade in a nursing course.

Minor's Complaints should be dismissed because it does not allege viable claims. At the

–5–

outset, Defendants submit that LSUE is not a juridical entity capable of being sued, and all claims against it should be dismissed. Further, Plaintiff failed to properly serve the Board, the Louisiana Attorney General, and the Office of Risk Management as required under La. R.S. 13:5107 and La. R.S. 39:1538. Therefore, La. R.S. 13:5107(D) requires the mandatory dismissal of all claims against LSUE and the Board mandatory for Plaintiff's failure to properly and timely effectuate service. Additionally, while Minor now claims that LSUE discriminated against her and failed to accommodate her under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1983, she has failed to allege that she made any request whatsoever to receive reasonable accommodations for the October 28, 2020 exam. Minor does not allege that— prior to being charged with misconduct—she asked for accommodations for the exam at issue. Nor does she allege any facts showing that her dismissal was due to supposed disability discrimination, as opposed to her failing to meet the nursing program criteria. Finally, Plaintiff's Complaints contains no allegations which assert a plausible claim for relief under 42 U.S.C. § 1983.

## II.     BACKGROUND

> ### A.     *Minor enrolls in the LSUE nursing program; is informed of the requirements under the Code of Student Conduct as well as the criteria for retention, progression, and re-entry/readmission process for the LSUE nursing program; but struggles to meet academic requirements and criteria.*

Plaintiff enrolled at LSUE as a nursing student in the Fall semester of 2017, at which time she was made aware of her obligation to abide by the LSUE Code of Student Conduct[1] at all times during her enrollment at LSUE. The Code of Student Conduct sets out certain rules and regulations

---

[1] Exhibit A - referenced in Plaintiff's Complaints, Court Doc. #1, ¶31, p. 7.

that LSUE students are required to follow, and puts students on notice of the processes, procedures, and potential consequences which may result from violations of it. Specifically, it states that, "[i]t is the responsibility of each individual student to be familiar with and adhere to the Louisiana State University Eunice Code of Student Conduct, which will hereafter be referred to as the "Code."[2] At all times pertinent to the subject incident of this lawsuit, Plaintiff was aware that she was obligated to abide by the Code.

Section 10.1 of the Code addresses Academic Misconduct, and establishes that "Failure to Follow Course Requirements" and "Unauthorized Materials" are both considered misconduct under the Code. The Code further defines Failure to Follow Course Requirements as, "[f]ailure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors."[3] If further defines Unauthorized Materials as, "[u]sing materials, techniques, or devices on an academic assignment that are prohibited; *having any forbidden and unauthorized material in sight during a test/quiz will be considered utilization of the material*."[4]

Plaintiff alleges that she was ". . . admitted into LSUE's nursing program. In this program, Plaintiff maintained an extremely high grade point average (GPA)." [Court Doc. #1, ¶58]. Upon enrolling in the nursing program, Plaintiff was also obligated to abide by the LSUE Nursing Student Handbook, and was informed that in order to be retained and progress in the nursing program, a student must not earn a "D", "F", "NC", and/or "W" in any nursing course *more than once*. Under the LSUE Nursing Student Handbook, any student who obtains a *second* "D", "F",

---

[2] Exhibit A – Statement of Policy 3.1, p. 3
[3] Exhibit A – Academic Misconduct 10.1 D, p. 17
[4] Exhibit A – Academic Misconduct 10.1 I, p. 18.

"NC", and/or "W" in any nursing course will be dismissed from the program. During the Fall semester of 2018, Plaintiff received a final grade of "NC" in Nursing Concepts II and Nursing Pharmacology II, and an "F" in Nursing Clinical Practice II.

   **B.**     ***Minor requests and is granted disability accommodations at LSUE; is informed of her responsibility to request test accommodations a minimum of three weekdays prior to each test; Minor neither requested nor arranged to receive testing accommodations for the October 28, 2020 NURS 2532 Exam; is caught and charged with using unauthorized materials and failing to follow course requirements in violation of the LSUE Code of Student Conduct.***

In her Complaints, Plaintiff references the disability accommodations she received from LSUE. [Court Doc. #1, ¶¶ 16-17]. Specifically, she alleges that, ". . . Defendant LSUE was fully aware of plaintiff's disability. *LSUE had previously granted <u>multiple accommodations</u> for her disabilities*, including allowing Plaintiff to take exams at the LSUE testing center and allowing Plaintiff extra time to take her exams." [Court Doc. #1, ¶ 61, p. 13]. What she has failed to allege, however, is that she requested accommodations for the October 28, 2020, exam. <u>Ms. Minor was fully aware of her affirmative duty to request testing accommodations a minimum of three weekdays prior to each test pursuant to LSUE's Disability Services policies, and did in fact request accommodations prior to multiple examinations that semester, except for the Exam 2 of NURS 2532 on October 28, 2020.</u> Despite having prior knowledge and experience with the required procedure to request test accommodations, Plaintiff simply opted out requesting test accommodations altogether, advising her professors that she preferred not to use the testing center services or its computers. [Court Doc. #1, ¶ 19, p. 5]. Nowhere in the Complaints does there lie any allegation that Ms. Minor requested reasonable accommodations for the October 28, 2020, exam, nor did she allege a request for accommodations with regards to any subsequent review of

–8–

any her exams.

On the date of the exam at issue, students were allowed to have scratch paper, which was provided by the faculty at the time of testing. All scratch paper was to be turned in at the *end of the exam*. However, at the end of the exam, after the students had been required to turn in their scratch paper, the instructor asked Plaintiff to show the test upload screen on her laptop, which is the standard practice for all students. The instructor was required to ask Ms. Minor to open the laptop and show the test upload screen twice. After the first request, Plaintiff stated that the test was complete and refused to comply.[5] She subsequently complied upon being asked a second time to open her laptop, at which time she was found to be in possession of a piece of scratch paper after the time to turn in all scratch paper had passed.[6] The scratch paper included information related to the exam, and Plaintiff's retention of the paper after having been instructed to turn it in was in violation of both the nursing program guidelines, as well as the Code of Student Conduct. This incident of alleged incident misconduct was reported to Kyle Smith in accordance with Section 7.2 A of the Code.

**C.    *Minor is provided written notice of the charges against her; attends accountability meeting; receives written notice of the accountability outcome finding her responsible for charges and sanction of zero credit for Exam 2 in NURS 2532; appeals to the University Hearing Panel (UHP) and attends UHP hearing; is given written notice of the UHP decision to uphold the decision to find her responsible for charges.***

On November 5, 2020, a charge letter was sent to Kimonlyn Minor in accordance with the LSUE Code of Student Conduct, which provided written notice of the alleged violations of the

---

[5] Exhibit D – November 11, 2020, Internal Memo.
[6] *Id*.

LSUE Code of Student Conduct for Unauthorized Materials and Failure to follow Course Requirements.[7] The Charge letter further advised that, pursuant to Section 6.2 B of the Code of Student Conduct, she was required to meet with a student conduct hearing officer on November 6, 2020, regarding the charges against her.[8] The Code further provides that once misconduct has been reported, the university ". . . *may* investigate any alleged or potential Misconduct. . . . The investigation can begin <u>before or after</u> a Charge Letter has been issued."[9]

Ms. Minor attended an Accountability Meeting with Defendant, Kyle Smith, on November 6, 2020, at which time she was allowed to respond to the charges against her before an outcome determination was made. Thereafter, on November 6, 2020, Plaintiff was issued a written notice of the outcome and findings that she was responsible for violating the Code for Unauthorized Materials and Failure to Follow Course Requirements.[10] The November 6th notice further advised Plaintiff that:

> According to Section 11.4.A.1 of the Code of Student Conduct, the *minimum sanction* for a violation for academic misconduct *must be a failing grade in the course*. <u>I found mitigating circumstances to be Ms. Minor's status as a first generation college student to lower the sanction to failing the assignment</u>. Also, according to Section 11.4.A.1 of the Code, 'in no instance may the Student receive credit for the exam on which the violation occurred.'[11]

As a result of these findings, Plaintiff was sanctioned to receive zero credit for Exam 2 in Nurse 2532.[12]

---

[7] Exhibit B – November 5, 2020 Charge Letter referenced in the Complaints – [Court <u>Doc. #1</u>, ⍰ 31, pp. 7-8].
[8] *Id*.

[10] Exhibit C – November 6, 2020 Outcome Letter referenced in the Complaints – [Court <u>Doc. #1</u>, ⍰ 34, p. 8].
[11] *Id*.
[12] *Id*.

Plaintiff subsequently appealed the outcome of the Accountability Meeting, and requested to have the University Hearing Panel (UHP) to review the charges brought against her. [Court Doc. #1, ¶ 40, p. 9]. At the hearing, Ms. Minor was accompanied by her counsel, and was provided an opportunity to be heard, ask questions, and dispute the charges against her. Ultimately, the UHP upheld the findings and sanction of zero credit for the October 28, 2020, exam. Ms. Minor was afforded and availed herself of the appropriate due process procedures in relation to the charges of misconduct, and subsequently appealed the UHP's findings to the Chancellor, who also determined that the findings would be upheld.

D.   ***Minor is dismissed from the LSUE nursing program for failure to meet the criteria for retention/progression; files suit in federal court against LSUE, the Board of Supervisors of Louisiana State University Technical and Mechanical College (the Board), and Kyle Smith.***

Throughout the remainder of the fall semester of 2020, Plaintiff resumed her normal practice of requesting accommodations prior to her exams, and was provided the requested accommodations. Despite having only received zero credit for the one assignment in connection with her misconduct, Ms. Minor ultimately received her second failing final grade in one of her nursing courses. As provided in the LSUE Nursing Student Handbook, the second failing grade in a nursing course mandated Plaintiff's dismissal from the program. She subsequently filed the instant action against Defendants herein on November 22, 2021.

## II.   LAW AND ARGUMENT

A.   ***Motion to Dismiss Standard of Review***

1.   **Fed. R. Civ. P. 12(b)(1)**

Federal courts are courts of limited jurisdiction, possessing only the authority granted by

the United States Constitution and conferred by the United States Congress. *Howery v. Allstate Insurance Company*, 243 F.3d 912, 916 (5th Cir. 2001).Without jurisdiction conferred upon them by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liability Litigation*, 668 F.3d 281, 286-87 (5th Cir. 2012); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1988).The proper procedural vehicle to challenge a court's subject-matter jurisdiction is a motion to dismiss under FED. R. CIV. P. 12(b)(1). *Valentin v. Hospital Bella Vista, et al.*, 254 F.3d 358, 362 (1st Cir. 2001). Under FED. R. CIV. P. 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *In re FEMA Trailer Formaldehyde Prods. Liability Litigation,* at 286.A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id*. And it should do so particularly as to subject-matter jurisdiction in order to determine whether it is present before addressing other issues. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)(per curiam)).

And a motion to dismiss based upon the sovereign immunity provided by The Eleventh Amendment is best brought under FED. R. CIV. P. 12(b)(1). Rule 12(b)(1) is a large umbrella, overspreading a wide variety of different types of challenges to subject-matter jurisdiction including one made under sovereign immunity. *Id.* at 362-63. And a challenge to the court's subject-matter jurisdiction based upon sovereign immunity presents what amounts to a pure (or nearly pure) question of law. *Id*. at 363. When reviewing a motion to dismiss, a district court must consider the Complaints liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inference. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).

–12–

FED. R. CIV. P. 12(b)(1) provides that a district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the Complaints alone; (2) the Complaints supplemented by undisputed facts evidenced in the record; or (3) the Complaints supplemented by undisputed facts plus the court's resolution of facts." *St. Tammany Parish ex. rel. Davis v. Federal Emergency Management Agency*, 556 F.3d 307, 315 (5th Cir. 2009), citing *Williamson v. Tucker*, 645 F. 2d 404, 413 (5th Cir. 1981); see also *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

A plaintiff may not, however, rest merely on unsupported conclusions or interpretations of law. *Murphy*, citing *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir. 1993). Subjective characterizations or conclusory descriptions of a general scenario would *could* be dominated by unpleaded facts" will not defeat a motion to dismiss. *Id*., citing *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992) (internal quotes omitted) (emphasis in the original). And when determining the merits of a motion to dismiss under 12(b)(1), the court should be "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Id*., citing *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir.), cert. denied, 510 U.S. 823, 114 S. Ct. 82, 126 L. Ed. 2d 50 (1993); see also *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id*., citing *Menchaca v. Chrysler Credit Corp*, 613 F.2d 507, 511 (5th Cir. 1980).

Under the Eleventh Amendment, "the judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any foreign state." *Hans v. Louisiana*, 134 U.S. 1, 11 (1890). This broad grant of immunity also extends to Federal suits against a state brought by citizens of that state. *Bowling, et al. v. Pence*, 39 F. Supp. 3d 1025, 1029 (S.D. Indiana 2014). And a state need not be formally named in a Complaints to trigger the provisions of the Eleventh Amendment, as it bars any suit where a state is "the real, substantial party in interest." *Pennhurst State School & Hospital, et al. v. Halderman, et al.*, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984), citing *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389 (1945); *Edelman, Director of Illinois Department of Public Aid, etc. v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356, 39 L. Ed. 2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.")

It is well-settled that "the Eleventh Amendment grants states sovereign immunity from lawsuits in federal court, and also bars suits against state agencies because such suits are considered suits against the state." *Williams v. Louisiana*, CV 14-00154-BAJ-RLB, 2015 WL 5318945, at *6 (M.D. La. Sept. 11, 2015) (citing *Vogt v. Board of Commissioners of Orleans Levee District*, 294 F.3d 684, 688-89 (5th Cir. 2002)). And "The 'ultimate guarantee of the Eleventh Amendment'…is that a non-consenting State may not be sued in federal court by private individuals, including its own citizens." *Id.*, quoting *Board of Trustees. of the University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Unless sovereign immunity is waived by the state entity, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman, Director of Illinois Department of Public Aid, etc. v.*

–14–

*Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 29 L. Ed. 2d 662 (1974). Further, "(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id*., quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945).

### 2.  Fed. R. Civ. P. 12(b)(5)

"Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process was not properly served in the appropriate manner." *Evans v. Johnson*, 2018 U.S. Dist. LEXIS 20955,*5, (W.D. La. Feb. 6, 2018); citing *Gartin v. Par Pharm. Co., Inc.*, 289 F.App'x 688, 691 n.3 (5th Cir.2008)(noting that Rule 12(b)(4) motions concern the form of process, while Rule 12(b)(5) motions challenge the mode, manner, or lack of delivery). "**In the absence of valid service of process, proceedings against a party are void**." *Evans*, 2018 U.S. Dist. LEXIS 20955, *6; quoting *Aetna Bus.Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Or. 1981). "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Evans, supra*; quoting *Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). "Good cause under Rule 4(m) requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Sream, Inc. v. Drell*, 20189 U.S. Dist. LEXIS 131074, *7 (W.D. La. July 6, 2018); quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir.2013). "**A litigant's pro se status neither excuses his failure to effect service nor excuses him for lack of knowledge of**

**the Rules of Civil Procedure**." *Thrasher*, <u>709 F.3d at 512</u>.

   3.   <u>**Fed. R. Civ. P. 12(b)(6)**</u>

Generally, when considering a Rule 12(b)(6) motion, a court cannot look beyond the pleadings. *Roberts v. Wal-Mart La. LLC*, <u>2016 U.S. Dist. LEXIS 152935, *5</u> (W.D. La. Nov. 2, 2016); citing *Spivey v. Robertson*, <u>197 F.3d 772, 774</u> (5th Cir. 1999); *Baker v. Putnal*, <u>75 F.3d 190, 196</u> (5th Cir. 1996). However, for the purpose of a Rule 12(b)(6) motion, pleadings include any documents attached to the Complaints. *Roberts*, <u>2016 U.S. Dist. LEXIS 152935, *5</u>; citing *In re Katrina Canal Breaches Litig.*, <u>495 F.3d 191, 205</u> (5th Cir. 2007)*; Collins v. Morgan Stanley Dean Witter*, <u>224 F.3d 496, 498</u> (5th Cir.2000). "<u>Specifically, documents 'attache[d] to a motion to dismiss are considered part of the pleadings, if they are *referred to in the plaintiff's Complaints* and are *central to [the plaintiff's] claim*.</u>'" *Id.*; citing *Collins*, <u>224 F.3d at 499</u>. **The Unites States Fifth Circuit Court of Appeal has established that, ". . . if the documents in question are attached to a motion to dismiss, referenced in the Complaints, and central to the plaintiff's claims, <u>they are considered pleading materials</u>**." *Leleux v. Hassan*, <u>2018 WL 328155</u>, at *1 (W.D. La. Jan. 8, 2018).  "Courts may consider documents meeting these criteria <u>without converting the motion to dismiss into one for summary judgment</u>." *Id.*; citing *Causey v. Sewell Cadillac-Chevrolet Inc.*, <u>394 F.3d 285, 288</u> (5th Cir. 2004). "Additionally, it is well-settled that 'it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'" *Id.*; citing *Norris v. Hearst Trust*, <u>500 F.3d 454, 461</u> (5th Cir.2007); see also *Cinel v. Connick*, <u>15 F.3d 1338, 1343</u> (5th Cir.1994).

A motion to dismiss for failure to state a claim is appropriate when a defendant attacks the

Complaints because it fails to state a legally cognizable claim.  *Ramming v. United States*, 281 F.3d 1338, 1343 fn.6 (5th Cir. 1994).  In considering such a motion, the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  However, this principle is subject to some limitations. As explained by the Fifth Circuit:

> **First, conclusory allegations and unwarranted deductions of fact are not accepted as true**. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir.1974); *Collins*, 224 F.3d at 498. **Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation**." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).
>
> To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. **The plaintiff's obligation is "to provide the 'grounds" of his 'entitlement to relief' [and] requires more than mere labels and conclusions.**" *Id*. at 1964-1965 citing *Papasan*, 478 U.S. at 286. The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004). If a plaintiff fails to allege facts sufficient to "nudge [ ][his] claims across the line from conceivable to plausible, [his] Complaints must be dismissed." *Id*. at 1974.

*Lawrence v. Morris*, 2010 WL 1434288, at (W.D. La. Mar. 16, 2010), report and recommendation adopted, 2010 WL 1434286 (W.D. La. Apr. 8, 2010).

To survive a Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The plaintiffs' obligation is "to provide the 'grounds' of his 'entitlement to relief' [and] requires more than mere labels and conclusions." *Id*. at 1964-1965

–17–

citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986). The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004). If a plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] Complaints must be dismissed." *Id.*

> **B.**   ***The Board and Kyle Smith, in his official capacity, are entitled to sovereign immunity from suit under the Eleventh Amendment.***

The State of Louisiana is entitled to Eleventh Amendment immunity, and has not waived its sovereign immunity at any time. The Louisiana Legislature clearly expresses that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana court." La. R.S. 13:5106(A). Further, the *Ex parte Young* exception to the Eleventh Amendment immunity applies only to suits brought against "state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute." *Hall v. Louisiana,* 974 F.Supp.2d 978, 988 (M.D. La. 09/30/13); citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "For *Ex parte Young* to apply, the 'suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect.'" *Hall,* 974 F.Supp.2d at 989. To that

The Fifth Circuit has established that higher education management boards and university systems are entitled to sovereign immunity under the Eleventh Amendment. The Board, as a State institution of higher education for the State of Louisiana, is immune from suit for monetary

damages in certain claims in federal court. *Richardson v. Southern University*, 118 F.3d 450 (5th Cir. 1997). "The State of Louisiana has not consented to be sued in federal court, and there has been no Congressional lifting of sovereign immunity as to civil rights claims under 42 U.S.C. §§ 1981-1985." *Anderson v. Phelps*, 655 F.Supp. 560, 564 (M.D. La. 03/29/85). Thus, even if a court has *Ex Parte Young* jurisdiction over claims for declaratory and injunctive relief as to Kyle Smith, in his official capacity, the court lacks jurisdiction to hear claims brought directly against the Board.

However, the Eleventh Amendment also bars suit against a state official when "the state is a real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As a general rule, relief sought against the state official is, in fact, against the state if the state or state agency would actually be bound by the judgment. Further, a suit against state officials that is in fact a suit against the state is barred regardless of whether it seeks damages or injunctive relief. *Id*. at 101-02. The Fifth Circuit has also established that a plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant. *Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001). Here, although plaintiff has named Kyle Smith in his official capacity and asserts claims for declaratory and injunctive relief, the fact of the matter is that Kyle Smith was not the final decision maker with regards to Ms. Minor's proceedings, and a judgment granting declaratory or injunctive relief would actually operate against the state entity, rather than Kyle Smith. As such, the Board and Kyle Smith are entitled to sovereign immunity from this suit in federal court, and Plaintiff's claims should be dismissed, with prejudice, at her sole cost.

–19–

C.    *As LSUE is not a legal entity with the capacity to be sued, the Complaintss fails to state a claim upon which relief may be granted.*

LSUE is a higher education facility of the State of Louisiana established in 1964, pursuant to Act 74 of the 1964 Regular Session of the Legislature. La. R.S. 17:1521. The administration of LSUE was placed within the authority of the Board of Supervisors of Louisiana State University Agricultural and Mechanical College. La. Const., Art. 8, § 7; La. R.S. 17:1523. Additionally, pursuant to La. R.S. 17:3215, LSUE falls within the Louisiana State University System under the supervision and management of the Board.

It has been long established under Louisiana law that a college or university lacks the procedural capacity to either sue or be sued. See *State ex rel. Dodd v. Tison*, 175 La. 235, 143 So. 59 (La. 1932); *Huckabay v. Netterville*, 263 So.2d 113 (La. App. 1st Cir. 1972), and *Marson v. Northwestern State University*, 607 So.2d 1093 (La. App. 3rd Cir. 1992). The Louisiana Third Circuit Court of Appeal recognized the lack of a university's existence separate and apart from the Board of Supervisors in *Marson v. Northwestern State University*, 607 So.2d 1093 (La. App. 3 Cir. 1992). In *Marson*, a professor filed wrongful discharge litigation against the University. With regard to legal capacity, the Court explained:

> We do find that the exception of no cause of action to be an appropriate method of raising the objection the NSU cannot be sued or stand in judgment. Simply stated, Marson has nocause of action against NSU. It is the wrong defendant. The Board of Trustees, under the constitution and statues, is the right defendant under its supervisory powers.

*Id.* at 1095. The United States Fifth Circuit Court of Appeal has also acknowledged the fact that, under Louisiana law, only the Board, and not the university itself, can sue or be sued. *Richardson v. Southern University*, 118 F.3d 450, 456 (5th Cir. 1997), *cert denied*, 118 S.Ct. 858, 139 L.Ed.2d

–20–

757 (1998); citing to *Marson*, *supra*; see also *Mire v. Board of Supervisors of Louisiana State University*, 2016 WL4761561 (E.D. La. 2016)(wherein the plaintiff sued LSU Health rather than the LSU Board):

> The Court finds that the LSU Board, rather than LSU Health, is the proper defendant. Louisiana Revised Statutes Section 17:3215 lists "institutions under the supervision and management" of the LSU board. La. Rev. Stat. § 17:3215 (2011). These include "Louisiana State University Health Sciences Center at New Orleans, which shall include medical and related health schools and programs located in New Orleans." *Id.; see also* La. Rev. Stat. § 17:1519.5 (2010) ("The [LSU B]oard as a body corporate shall have authority to exercise all power to direct, control, supervise, and manage [LSU Health]."). Because LSU Health is an institution of postsecondary education under the control of the LSU Board, the Board is the proper defendant in a suit alleging misconduct by LSU Health. *See* La. Rev. Stat.§ 17:3351(A)(l) (2015) (granting the LSU Board authority to "sue and be sued" on behalf of "institutions of postsecondary education under its control"); *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 148 (5th Cir. 1991) ("Although the Board has the right to sue and be sued in its own name...the University does not."); *Raj v. Louisiana State Univ.,* No. 11-1126, 2012 WL 629954, at *2 (E.D. La. Feb. 27, 2012), *affd,* 714 F.3d 322 (5th Cir. 2013) ("[I]t is the Board that has the capacity to be sued, and LSU and LSU Health were wrongly added as defendants because they lack said capacity."); *Huggins v. Univ. of Louisiana Sys. Bd. of Supervisors,* No. 08-1397, 2009 WL 223272, at (W.D.La. Jan. 6, 2009) ("[T]he University is not a juridical person subject to suit.").

The same laws apply with regards to the juridical status of LSUE, and it is irrefutable that LSUE lacks the procedural capacity to be sued and is not a proper party defendant in this matter. Furthermore, as Plaintiff has named the Board as a defendant herein, naming LSUE as a party-defendant is redundant. Therefore, Defendants respectfully submit that LSUE must be dismissed from this suit, since Plaintiff has no viable claim against it.

**D.    *Plaintiff failed to timely serve the Board pursuant to F.R.C.P. Rule 4; La. R.S. 13:5107; and La. R.S. 39:1538.***

Fed. R. Civ. P. 12(b)(5) provides for dismissal of a claim if service of process was not

timely made in accordance with Fed. R. Civ. P. 4 or was not properly served in the appropriate manner. Fed. R. Civ. P. 12(b)(5). Under Fed. R. Civ. P. 4(j)(2), a state, municipal corporation, or any other state-created governmental organization that is subject to suit, must be served either by delivery of a summons and Complaints to the chief executive officer *or* in the manner prescribed by state law. Plaintiff herein sued and requested service on LSUE, which is not a juridical entity capable of being sued, but she should have requested service on the Board instead. Thus, she has not satisfied the first service option available to her under Fed. R. Civ. P. 4(j)(2)(A). Likewise, she has failed to satisfy the alternative service option available to her under Fed. R. Civ. P. 4(j)(2)(B). After all, La. R.S. 13:5107(A) and La. R.S. 39:1538(D) require the plaintiff to effect service on the Board, the Attorney General and the Office of Risk Management ("ORM").

La. R.S. 13:5107(A)(2) further mandates that service shall be requested upon the attorney general within ninety days of filing suit. Additionally, pursuant to La. R.S. 13:5107(D)(2). Failure to do so entitles the Board to have its challenge/defense of insufficient process and/or service of process recognized under Federal Rule of Civil Procedure 12(b)(4) and (5). *E.g. Weaver v. State ex rel. Dept. of Transp. And Development,* 2011-0282 (La. App. 1 Cir. 9/30/11), 2011 WL 4544024, at *5; *and Norbert v. Louisiana Med. Ctr.,* No. CV 05-1650, 2006 WL 8434948, at *1 (W.D. La. 2006)("Rule 4 requires that a summons shall be served with a copy of the Complaints and that service of process upon a state or state agency must be made upon its chief executive officer or by serving the summons and Complaints in the manner prescribed by state law. Fed. R. Civ. P. 4(j)(2). Louisiana R.S. 39:1538(4) requires that the Secretary of DHH, the Office of Risk Management, and the Attorney General be served when the state or a state agency is a named

–22–

defendant.").

This type of service-related deficiency was at issue in *Lathan Co., Inc., v. Div. of Administration,* 2017-0396 (La. App. 1 Cir. 1/24/19), <u>272 So.3d 1</u>, <u>2019 WL 337188</u>. Specifically, the court was called upon to consider the timeliness of a request for service on the Attorney General relative to a lawsuit filed against the Division of Administration.  There, the determination  centered on whether the plaintiff timely requested service on the Attorney General, namely Section 5107(A)(2)'s requirement of a request for service within 90 days of suit. The court, in its analysis, recognized that Section 5107 "clearly contemplates that service upon the attorney general as well as an additional service is required in suits against the State or a state agency." *Id*. at *7.  However, the court further stated that Section 5107, "thereafter becomes unclear  about  what effect the failure to timely  request service  on the attorney  general has on plaintiff's suit." *Id*. For this reason, a divided panel of the court decided in favor of maintaining the plaintiffs claim and therefore ruled that the exception of service appropriately was overruled.

The Board takes  this opportunity  to raise the  service-related deficiency  in this case for the very reason articulated by Judge Guy Holdridge in *Lathan,* namely a failure to timely request service on the Attorney General (not to mention, others upon whom the plaintiff should have requested service):

> ...  I disagree with that part of the opinion on the effect of Lathan's failure to request service on the attorney general. The amendment to La. R.S.13:5107(A)(2) without question requires two services, one on the attorneygeneral and one on the department, board, or commission. As the majority opinion recognizes, subsection A(2) mandates a request of service onthe attorney general. It does not allow for a waiver or for service not to be made on the attorney general and the suit go forward. Additional service can only mean that there must be two services under [Section 5107].

–23–

Moreover, this very premise was recognized by the Louisiana Fourth Circuit in *Wright v. State,* 2018-0825 (La. App. 4 Cir. 10/31/18), <u>258 So.3d 846</u>, *writ denied,* 2018-1931 (La. 1/28/19), <u>262 So.3d 902</u> - a case in which the plaintiff served state employees but failed to timely request service on the Board,  the Attorney  General,  and ORM.  Specifically, the court  recognized that "it is presumed the Legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject." *Id*. at 849.

In order to give effect to both Section 5107 and Section 1538, and to accomplish the known and intended consequences of non-compliance in this case, the Board's service-related challenge/defense should  be recognized.   After all, the plaintiff has yet to request and effect complete and proper service on all of the individuals/offices/entities required  under La. R.S. 13:5107 and La. R.S. 39:1538, namely the Attorney General, ORM, and the Board, in the manner prescribed by law.  Given that the plaintiff failed to satisfy the requirement to serve each of the requisite individuals/offices/entities under the laws governing service of process on the state and/or its agencies and because proper citation is the foundation of all actions, the Board submits that knowledge of the legal action and/or receipt of the petition  fails to satisfy the requirement  of citation and service under Louisiana law.[10]  Therefore, the claims against the Board should be dismissed.

As set forth above, LSUE is not a juridical entity capable of being sued and is not a proper party defendant in this matter. However, Plaintiff only requested an issuance of summons on LSUE and Kyle Smith. [Court <u>Doc. #5</u>]. <u>There has been no valid request for an issuance  of  summons  on  the  Board  since  the  filing  of  the  Complaints,  nor  has  Plaintiff</u>

–24–

effectuated service on the Board.

Rule 4(j) provides that a plaintiff who sues, "[a] state, a municipal corporation, or any other state-created governmental organization" must effectuate service of process on the defendant by either: 1) "delivering a copy of the summons and of the Complaints to its chief executive officer" or 2) "serving a copy in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FRCP 4(j)(2). Plaintiff has not requested nor effectuated service of the summons and Complaints on the chief executive officer of the Board. Furthermore, the state law service statute that is applicable to the instant lawsuit is La. R.S. 13:5107, which provides in pertinent part as follows:

> In all suits filed against the state of Louisiana or a state agency, citation and service may be obtained by citation and service on the attorney general of Louisiana, or on any employee in his office above the age of sixteen years, or any other proper officer or person, depending upon the identity of the named defendant and in accordance with the laws of this state, and on the department, board, commission, or agency head or person, depending upon the identity of the named defendant and in accordance with the laws of this state, and on the La. R.S. 13:5107(A)  head or person, depending upon the identity of the named defendant and the identity of then named board, commission, department, agency, or officer through which or through whom suit is to be filed against.

(Emphasis added). Additionally, because Plaintiff has filed this suit against the Board to recover money damages, La. R.S. 39:1538(D) mandates that service of process *shall* be made on the head of the department concerned, the Office of Risk Management, and the Attorney General, as well as any others required by La. R.S. 13:5107. Therefore, in a suit against a State agency, service of process on the State is effective only if service is made in accordance with La. R.S. 13:5107 and La. R.S. 39:1538.

The Louisiana Supreme Court has held that, "[P]laintiffs are strictly held to the obligation

–25–

of serving the correct agent for service of process. . . ." quoting *Barnett v. Louisiana State University Medical Center-Shreveport*, 2002-2576 (La. 2003), 841 So.2d 725, 726; see also *Conner v. Continental Southern Lines*, 294 So.2d 485 (La. 1974) (holding that service of process on incorrect agent is illegal and without effect); *Brooks v. Terry*, 91-1234 (La. App. 1 Cir. 10/16/92), 608 So.2d 1047 (annulling judgment against defendant who had been improperly served). Further, "with regard to service of citation upon a designated agent for a corporation, the law is clear that service of process directed to a corporate defendant, but made on one other than the person authorized to accept such service is illegal and without effect." *Thomas v. Louisiana Dept. of Public Safety and Corrections*, 2002-0897 (La. App. 1 Cir. 03/28/03), 848 So.2d 635, 639; citing La. C.C.P. art. 126; see also *Conner*, 249 So.2d at 487. It is well settled under Louisiana law that a "request for service of process upon the wrong agent for service of process for the state agency involved herein [is] not a 'valid and effective request' and likewise is void and without effect." *Thomas*, *supra*.

Here, Plaintiff was required to request and effectuate service on: 1) the Board; 2) the Louisiana Attorney General; and 3) the Office of Risk Management. La. R.S. 13:5107(D)(1) requires that, "[i]n all suits in which a state, a state agency, or political subdivision, or any officer or employee thereof is named as a party, service of citation shall be requested within ninety days of the commencement of the action. . . ." Pursuant to La. R.S. 13:5107 (D)(2), "[i]f service is not requested by the party filing the action within [ninety days], the action shall be dismissed without prejudice, after a contradictory motion. . . as to the state, state agency, or political subdivision, or any officer or employee thereof, upon whom service was not requested within [ninety days]." The

record establishes that Plaintiff has neither requested or perfected service on the Board within ninety days of commencing this action, as required under La. R.S. 13:5107 and La. R.S. 39: 39:1538. As can be seen from the record, Plaintiff effectuated service on LSUE by service of the summons on Robin Richardson, who, according to the proof of service, "is designated to accept service of process on behalf of *LSU Legal Dept. for LSUE*. . . ." [Court Doc. #8]. Since the Board is the proper party defendant in this matter, Plaintiff was required to effectuate service on the Chief Executive Officer or the Head of the Board. Plaintiff was also required to effectuate service on the Attorney General and ORM; however, she has failed to effectuate proper service on all above-referenced accounts. Therefore, La. R.S. 13:5107(D) requires the mandatory dismissal of all claims against the Board mandatory for Plaintiff's failure to properly and timely effectuate service.

   **D.**   ***Plaintiff's Complaints fails to state a claim upon which relief can be granted under both the ADA and Rehabilitation Act***.

The Rehabilitation Act (42 U.S.C. § 794) prohibits discrimination against disabled persons "under any program or activity receiving Federal financial assistance." Title II of the ADA (42 U.S.C. § 12132) also prohibits discrimination in "services, programs, or activities of a public entity." "When a Section 504 claim is made together with a Title II ADA claim . . . most courts consider them together as they provide the same remedies, procedures and rights." *Pisauro, et al. v. Silvia*, *et al.*, 15-02832, 2016 WL 8730584, at *3 (W.D. La. March 23, 2016); citing 42 U.S.C. § 12133; *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The Fifth Circuit applies the same standard to both Section 504 and ADA claims under review. *Id.*; citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc).

   **1.**   **No individual-capacity liability exists under the ADA and Rehabilitation Act.**

–27–

Neither Title II of the ADA, nor section 504 of the Rehabilitation Act, provide causes of action for individual liability, thus any claims against Kyle Smith under the ADA and the Rehabilitation Act should be dismissed.

### 2.      Claims against Kyle Smith in his official capacity are redundant.

"A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Demeke v. Board of Supervisors of Louisiana State University and A&M College, et al*, 2020 WL 6386872, at *4 (M.D. La. 10/29/20). Since Plaintiff has named the Board as a defendant to this litigation, the allegations against Kyle Smith in his official capacity are redundant and should be dismissed.

### 3.      Plaintiff has failed to state a claim against the Board under the ADA and Rehabilitation Act.

In the event that this Honorable Court finds that the Board and Kyle Smith are not entitled to sovereign immunity under the Eleventh Amendment, Defendants submit the following in the alternative. In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which the school district is responsible; and (3) that such exclusion or discrimination was *because* of her disability." *Pisauro*, *supra*; quoting *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 292 (5th Cir. 2012). Both ADA and Section 504 claims share these three elements; however, Section 504 requires a fourth element, "that the relevant program or activity be receiving Federal financial assistance." *Id.*; see also *S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir.

–28–

2008). Of importance, a plaintiff who asserts a private cause of action for ADA and Section 504 violations, ". . . <u>may only recover compensatory damages upon a showing of <i>intentional discrimination</i></u>." *Delano-Pyle v. Victoria County*, <u>302 F.3d 567, 575</u> (5th Cir. 2002).

This Honorable Court has established that, "[t]o show disability discrimination in the educational context. . . ." a plaintiff is required to show "that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school." *Pisauro*, *supra*. Further, "[f]acts creating an inference of <u>professional bad faith</u> or <u>gross misjudgment</u> are necessary to substantiate a cause of action for intentional discrimination under Section 504 or ADA against a school district." *Id*. "<u>Allegations that educational authorities 'exercised professional judgment,' even mistakenly, do not suffice unless the "depart grossly from accepted standards among educational professionals</u>." *Id*.; quoting *Bennett*, <u>431 F.3d at 454-55</u>.

In order to state a plausible claim under the ADA, Plaintiff must allege facts showing: 1) she is a qualified individual with a disability; 2) the disability and its consequential limitations were known by the school; and 3) the school failed to make reasonable accommodations for such known limitations. *Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, <u>633 F. App'x 214, 215</u> (5th Cir. 2015). Although Plaintiff has artfully crafted her Complaintss to *appear* to allege that LSUE forced her to take her October 28, 2020, exam in a classroom setting; <u>a careful review of Plaintiff's allegations clearly show that, as a part of her reasonable accommodations, Ms. Minor had the <i>option</i> to take her exams in the testing center and be granted extended time to complete them</u>. Importantly, Ms. Minor does not allege that she was denied reasonable accommodations to take her all of her exams, but alleges only that she did not receive accommodations on the October

–29–

28, 2020, exam *only*. **Plaintiff alleges a denial of accommodations in relation to this singular exam; however, the Complaints is completely <u>void</u> of any allegation whatsoever that she properly alerted LSUE to her supposed disability and limitations for the October 28, 2020 exam**. In fact, Plaintiff did not raise any issue or grievance pertaining to her accommodations *until <u>after</u> she was accused and charged with academic misconduct in violation of the Code*, because, as she has alleged, she <u>voluntarily</u> forwent her testing center accommodations.

 **Under the ADA, it is the student's burden to inform her school of a disability and to request accommodations.** *Choi v. University of Texas Health Sciences Center at San Antonio* <u>633 F. App'x at 216</u>; *Taylor v. Principal Fin. Grp., Inc.*, <u>93 F.3d 155, 165-66</u> (5th Cir. 1996); *Aragona v. Berry*, No. 3:10-CV-1610-G, <u>2012 WL 467069</u>, at *10 (N.D. Tex. Feb. 14, 2012). In both the Original and Amended Complaintss, Plaintiff merely alleges that the school had previously granted her accommodations, including allowing Plaintiff to take exams in the testing center and allowing extra time on her exams; however, she does not allege that she provided any information which would alert the professor proctoring the examination that she was entitled to accommodations for the October 28, 2020 exam. This fact is particularly important, because plaintiff's suit is based solely upon having allegedly been denied accommodations for only one exam during the entire semester. Plaintiff only complains of this one instance, because she did request accommodations for every other exam that she took during that semester, both before and after October 28, 2020. Plaintiff failed to meet her burden of requesting accommodations for the October 28, 2020 exam. Further, Plaintiff also alleges that that the exam software provided by LSUE did provide her 30 extra minutes, but *fails to allege that she was required to finish the exam*

*early*. Instead, Plaintiff alleges that her anxiety "increased dramatically" upon hearing the instructor announce that there were five minutes left in the exam to the classroom full of non-accommodated students, since she had opted out of her testing center accommodations, which afforded her an environment with reduced distractions.

Plaintiff's Complaints contains no allegations whatsoever to establish intentional discrimination as required under Title II of the ADA and Section 504. The Complaints fails to articulate any act or omission on the part of the Board that would indicate intentional discrimination *because of her* disability, which is a prerequisite to recovery of compensatory damages in the context of the instant suit. Furthermore, there are no allegations in the Complaints to assert that Ms. Minor properly alerted LSUE or her instructors of her alleged disability limitations for the October 28, 2020, exam. As previously stated, it is the student's burden to inform her school of a disability and to request accommodations. *Choi*, 633 F. App'x at 216; *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165-66 (5th Cir. 1996). This requirement is especially important "in the amorphous world of mental disability," where "the nature of the disability, resulting limitations, and necessary accommodations are uniquely within the knowledge of the [student] and [her] health-care provider." *Taylor*, 93 F.3d at 165; *see also Thuy Doan v. Bd. of Sup'rs of La. State Univ.*, No. CV 17-3471, 2017 WL 3574453, at *3-4 (E.D. La. Aug. 16, 2017). In such cases, the student must request specific accommodations. *See Taylor*, 93 F.3d at 165-66. The school's obligation to accommodate is triggered only upon such a request. *Id*. Minor simply has not alleged that she requested the specific accommodations for the October 28, 2020, exam, which she now asserts to have been unjustly denied.

Additionally, none of the alleged acts or omissions asserted in the Complaints illustrate any intentionally discriminatory behavior on the part of the defendants. Instead, Plaintiff has frivolously asserted discrimination in a last-ditch attempt to overcome her dismissal from the LSUE nursing program as a result of her failure to meet the program criteria and requirements. Moreover, Plaintiff has asserted nothing more than threadbare recitals and conclusions of law that do not suffice to state a plausible claim for relief. [Court Doc. #1, ¶¶ 59-65, 71-75]. Thus, Plaintiff has failed to state a claim for relief upon which relief can be granted, and her Complaints should be dismissed with prejudice, at her sole cost.

E.  *§ 1983 cannot be used as an alternative method for the enforcement of rights set forth in the Rehabilitation Act or Title II of the ADA, because the Rehabilitation Act, by its express terms, provides comprehensive enforcement and remedial measures for violations of its provisions.*

Plaintiff cannot use 42 U.S.C. § 1983 to pursue Kyle Smith in his individual capacity to for alleged violations of the Rehabilitation Act and/or the ADA. The Fifth Circuit addressed this issue in the case of *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999). In *Lollar*, the court held that § 1983 cannot be used as an enforcement mechanism for rights founded in the Rehabilitation Act. In doing so, the court adopted the Eleventh Circuit's reasoning in *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997), which stated that,

> both the Rehabilitation Act and the ADA provide extensive, remedial frameworks that address every aspect of [a plaintiff's claim] under section 1983. To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenue of redress as well as section 1983 would be duplicative at best; in effect such a holding would provide a plaintiff with two bites at precisely the same apple. We conclude that a plaintiff may not maintain a section 1983 action in lieu of-or in addition to- a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the [Plaintiff's] rights created by the Rehabilitation Act and the ADA.

*Holbrook*, 112 F.3d at 1531.

A review of Plaintiff's Complaints clearly show that Plaintiff has not alleged facts sufficient to state a plausible claim for relief under § 1983. None of the alleged actions and/or inactions of Kyle Smith give rise to a claim for any constitutional violations whatsoever. Additionally, any claims against Smith in his official capacity under § 1983 are barred by the Eleventh Amendment. In an effort to bolster her deficient allegations by asserting "group" pleading allegations, where the allegations of wrongdoing are made against "Defendants" collectively. Allegations of collective responsibility, however, cannot be used to attach liability to each defendant in the § 1983 context. **Both the Supreme Court and Fifth Circuit have found that § 1983 liability is personal, and cannot be established by allegations of collective wrongdoing**. *Woods v.* Edwards, 51 F. 3d 577, 583 (5th Cir. 1995), *cert. denied*, 122 S.Ct. 53 (2001); see also *Hernandez v.* Terrones, 397 F.Appx. 954, 964 (5th Cir. 2010). As previously stated, the only allegations of individual liability asserted in the Complaints do not give rise to a plausible claim for relief under § 1983. Consequently, Plaintiff's § 1983 claims should be dismissed.

III.    **CONCLUSION**

Plaintiff has failed to state any claim against the defendants upon which relief can be granted. Alternatively, and only in the event this Court determines any claim has been stated, said claim is barred by the Eleventh Amendment or qualified immunity.Accordingly, the Complaints must be dismissed with prejudice at Plaintiff's cost.

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**

–33–

**/s/ Cranay D. Murphy**
Cranay D. Murphy T.A. (36600)
Assistant Attorney General
Louisiana Department of Justice –
Division of Risk Litigation
556 Jefferson Street, 4th Floor
Lafayette, Louisiana  70501
Telephone: (337) 262-1700
Facsimile: (337) 262-1707
Email: Murphyc@ag.louisiana.gov

Counsel for Defendants, Louisiana State University at Eunice, the Board of Supervisors of Louisiana State University Technical and Mechanical College, and Kyle Smith, individually and in his official capacity as Vice Chancellor for Student Affairs and Dean of Students for Louisiana State University at Eunice