## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

KIMONLYN MINOR                              CASE NO.  6:21-CV-04036

VERSUS                                      JUDGE ROBERT R. SUMMERHAYS

LOUISIANA STATE                             MAGISTRATE JUDGE DAVID J. AYO
UNIVERSITY AT EUNICE ET AL


### REPORT AND RECOMMENDATION

Before the Court are motions to dismiss pursuant to Fed. Rules of Civ. P. 12(b)(1), 12(b)(4), 12(b)(5) and 12(b)(6) filed on behalf of all named defendants in this case ("Defendants"). (Rec. Doc. 37). Plaintiff opposes these motions.  (Rec. Doc. 46).  The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, this Court recommends that Defendants' motions to dismiss be GRANTED as specified herein.

### A.  Factual Background

In this case, plaintiff Kimonlyn Minor ("Plaintiff") contests dismissal from the nursing degree program at Louisiana State University at Eunice ("LSUE"), alleging her dismissal was the result of disability-based discrimination in violation of her constitutional right to due process under the Fourteenth Amendment (U.S. CONSTITUTION, Amends. V, XIV; 42 U.S.C. § 1983), as well as her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794.  Plaintiff asserts she suffers from anxiety and attention-deficit/hyperactivity disorder ("ADHD"), on which bases she sought and was granted accommodations, including use of a proctored testing center and additional time in which to complete her exams.  (First Amended Complaint ("FAC") as Rec. Doc. 33 at ¶¶ 13-17).

Plaintiff elected not to utilize the testing center accommodation during her Nursing Clinical Pharmacology IV (NURS 2532) exam on October 28, 2020.  (*Id.* at ¶¶ 18-21).  Plaintiff alleges her decision to forego accommodation on this date was prompted by a past experience at the testing center, during which the proctors denied Plaintiff the opportunity to review her exam, a practice she further alleges even non-accommodated students are permitted engage in "as a matter of course."  (*Id.* at ¶ 20).

On the date in question, Plaintiff took her NURS 2532 exam in the standard setting under the supervision of exam proctors LaFleur and Sonnier.  (*Id.* at ¶ 18).  Plaintiff's exam was administered via computer, but she was permitted the use of scratch paper, of which she collected four pieces prior to the start of the exam.  Plaintiff asserts that, consistent with her normal routine during exams, she wrote "all her thoughts and everything she had studied onto scratch paper…to help manage her anxiety."  (*Id.* at ¶¶ 22-24). Plaintiff believed she had 30 minutes remaining in which to complete her exam, but one of the proctors announced only five  minutes remaining.  (*Id.* at ¶ 25).  Plaintiff alleges no further announcements were made regarding students with disability accommodations, causing her to panic.  (*Id.* at ¶ 27).  At the conclusion of the exam, Plaintiff was required to show her "exam upload screen" to demonstrate her submission of the exam.  Plaintiff alleges she had to be asked to show her exam upload screen twice because of her anxiety and lack of familiarity with the testing environment.  (*Id.* at ¶ 29).  Plaintiff opened her computer to comply with the proctor's request and a single piece of scratch paper "containing all [Plaintiff's] exam-related knowledge" was discovered inside her laptop computer.  (*Id.* at ¶ 30).  Plaintiff alleges in her "state of panic and heightened anxiety, she forgot to turn [this piece of scratch paper] in."  (*Id.* at ¶ 28).  Ms. LaFleur confiscated the scratch paper before Plaintiff left the premises.  (*Id.* at ¶ 32).

By letter dated November 5, 2020, Plaintiff was notified of two charged violations of the LSUE student code of conduct against her:

> 10.1.D.  Failure to Follow Course Requirements
> Failure to adhere to standards of conduct for academic integrity that are promulgated by an academic unit and/or instructors;
>
> 10.1.I.   Unauthorized Materials
> Using materials, techniques or devices on an academic assignment that are prohibited; having any forbidden and unauthorized materials in sight during a test/quiz will be considered utilization of the material[.]

(FAC at ¶ 34; LSUE Code of Student Conduct as Rec. Doc. 37-1 at pp. 17-18; Correspondence of November 5, 2020 as Rec. Doc. 37-2).

The letter also informed Plaintiff of an "accountability meeting" with a student conduct hearing officer scheduled for the following day, November 6, 2020.  (FAC at ¶¶ 34).  Plaintiff attended the November 6 meeting and, by correspondence dated the same day, was informed of the hearing officer's finding of Plaintiff's responsibility for the student conduct offenses charged. (Correspondence of November 6, 2020 as Rec. Doc. 37-3).  Based upon a finding of mitigating circumstances, including Plaintiff's status as a first-generation college student, the student conduct officer elected a downward departure from the prescribed sanction for such conduct, which would have required Plaintiff to receive a failing grade in the course.  (*Id.*, citing LSUE Code of Student Conduct Section 11.4.A1).  Instead, the student conduct officer imposed the lesser sanction of zero credit for the particular exam upon which Plaintiff was found to have cheated.  (*Id.*).  The November 6 letter also informed Plaintiff of her right to appeal the findings discussed therein by requesting a rehearing by the University Hearing Panel ("UHP").  (*Id.*).

Plaintiff appealed to the UHP and was granted a hearing on November 16, 2020.  By letter of the same date, Plaintiff was informed of the UHP's post-hearing decision to affirm the findings

3

and sanction recommended by the student conduct officer.  (Rec. Doc. 37-5).  Plaintiff appealed the UHP findings to LSUE's Chancellor, who by correspondence sent through the university's General Counsel on April 7, 2021, upheld the UHP findings and sanction.  (FAC at ¶¶ 53-54).  Thereafter, Plaintiff received zero credit on her NURS2532 exam, which resulted in Plaintiff receiving an overall failing grade for the NURS2532 course.  (FAC at ¶ 42).  Pursuant to school policy, nursing students receiving two failing or incomplete grades in nursing curriculum classes are dismissed from the nursing degree program.  (Rec. Doc. 37-6 at pp. 7-8).  Plaintiff had previously received at least one such impermissible grade in a nursing curriculum class in the Fall of 2018, which, when combined with the failing NURS2532 grade, resulted in her dismissal from the nursing program.  (*Id.*).

Plaintiff initiated this suit by filing her original complaint on November 22, 2021.  (Rec. Doc. 1).  Plaintiff's complaint was filed under her own name and that of her attorney with the caveat "pro hac vice to be applied for[.]" (*Id.* at p. 22). Plaintiff's complaint named as defendants LSUE, by and through its Board of Supervisors; Kyle Smith, Associate Vice-Chancellor for Student Affairs and Dean of Students ("Smith"), in his official and individual capacities and John Does 1-20.  (Rec. Doc. 1 at p. 1).  Plaintiff's suit asserted claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Fifth and Fourteenth Amendments to the U.S. Constitution via 42 U.S.C. § 1983.  (*Id.*, generally).

On December 6,  2021, Plaintiff's purported attorney filed for issuance of summonses to defendants as follows: (1) Louisiana State University at Eunice, c/o Board of Supervisors; and (2) Kyle Smith, c/o Board of Supervisors, and asked that both summonses be served at the same address:  104B University Administration Building, 3810 West Lakeshore Drive, Baton Rouge,

Louisiana, 70808.  (Rec. Doc. 3).  That motion was deemed deficient because it was not signed by an attorney admitted to practice before this Court.  (Rec. Doc. 4).  Plaintiff, again designating herself as *pro se*, refiled the request for issuance of summonses on December 14, 2021.  (Rec. Doc. 5).  The Clerk of Court issued the requested summonses the same day.  (Rec. Doc. 6).  Returns of service were filed as to defendant Smith on January 24, 2022 and as to defendant LSUE on February 1, 2022.  (Rec. Docs. 7, 8).

Defendants filed a responsive motion to dismiss on February 25, 2022.  (Rec. Doc. 10). After a number of deficiencies and with the guidance of this Court, Plaintiff's attorney was admitted *pro hac vice* and granted a waiver of local counsel on March 25, 2022.  (Rec. Doc. 25). Plaintiff was granted leave to file an amended complaint, which was entered in the record on May 24, 2022.  (Rec. Doc. 33).  Defendants renewed their prior motion to dismiss on June 14, 2022. (Rec. Doc. 37).  Plaintiff filed a brief in opposition on August 4, 2022.  (Rec. Doc. 46).  Defendants filed a reply brief in support of their motions on August 16, 2022.  (Rec. Doc. 51).

Defendants now move to dismiss all claims by Plaintiff on three bases: (1) the Eleventh Amendment bars federal suits against LSUE as an arm of the State of Louisiana and against Smith in his official capacity, warranting dismissal of all such claims pursuant to Fed. R. Civ. P. 12(b)(1); (2) Plaintiff failed to timely and properly serve her original and amended complaint on the LSUE Board of Supervisors, Louisiana Attorney General, and Office of Risk Management for the State of Louisiana as required by Federal Rules of Civil Procedure 4 and 12(b)(5), La. R.S. 13:5107(A)(2), and La. R.S. 39:1538(4) warranting dismissal of all claims against the Board pursuant to Fed. R. Civ. P. 12(b)(4) and (5); and (3) Plaintiff's suit fails to state a claim as to which relief may be granted as to Smith, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Defendants' arguments are addressed below.

5

### B.  Applicable Standards

### I.   Rule 12(b)(1)

A motion pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of a district court to hear a case.  Considering such a motion, a court may base its jurisdictional finding upon (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).   The party asserting federal jurisdiction "constantly bears the burden" of proving its existence.  *Id.*, (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1996)).  "'When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"  *Block v. Texas Board of Law Examiners*, 952 F.3d 613, 616 (5th Cir. 2020) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

### II.  Rules 12(b)(4) and 12(b)(5)

Motions to dismiss under Federal Rules 12(b)(4) and (5) challenge the district court's personal jurisdiction over defendants based on defects in process and service of process.  Motions pursuant to Rule 12(b)(4) and (5) implicate the court's personal jurisdiction over defendants and, thus, merit early consideration.  *Omni Capital Int'l., Ltd., v. Rudolf Wolf & Co.,* 484 U.S. 97, 104 (1987) (district court cannot exercise personal jurisdiction over a party not properly served under Fed. R. Civ. P. 4(m)).  It is Plaintiff's burden, once challenged, to prove proper service under Rules 12(b)(4) and 12(b)(5).  *Systems Signs Supplies v. U.S. Dept. of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (citing *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir.

1985)); *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. Unit A Jan. 1981).

### III.  Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting, *inter alia*, *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic*, 127 U.S. at 556);  *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

## C.  Analysis

### I.     Allegations considered by this Court

As pointed out in Defendants' reply brief, Plaintiff's opposition contains new factual allegations not previously pled within the original or amended complaint. (Rec. Doc. 51 at pp. 4-7).  It is well settled that new factual allegations within an opposition to dismissal under Fed. R. Civ. P. 12(b)(6) are to be disregarded in the Court's assessment of the motion.  *Becnel v. St. Charles Parish Sheriff's Office*, Civ. Act. No. 15-cv-1011, 2015 WL 5665060 * 1 n. 3 (E.D. La. 09/24/2015) ("'[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (internal citations omitted)).  Plaintiff's opposition includes new allegations

appearing to assert claims for deprivation of a liberty or property interest as to alleged damage to Plaintiff's reputation resulting from either the exam-related sanction or Plaintiff's ultimate dismissal from LSUE's nursing program, as well as claims for breach of contract under Louisiana law.  (Rec. Doc. 46 at pp. 14-15) ("[a] valid contract was entered into…entitling Plaintiff to continued educational instruction from LSU."); (*Id.* at p. 17) ("Plaintiff's academic record will tarnish her good name and viably could affect her ability to sit for the nursing boards and obtain employment in the medical field…programs will be unlikely to admit Plaintiff with the tarnished record Defendants have wrongfully attributed to her name.").  Plaintiff also alleges, for the first time, that Defendants failed to adhere to school policy in their conduct of the hearings at issue in this case in support of her due process claims under the Fifth and Fourteenth Amendments.  (*Id.* at p. 14) ("[i]t is LSU's official policy not to terminate a student contract without due process. Defendants' failure to follow its own policy or custom was the cause in fact of the deprivation of rights inflicted.").  This Court does not consider such claims or allegations, as they are not fairly included within the scope of Plaintiff's amended complaint.

## II.     Claims against LSUE the Board

### A.     Lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)

Federal courts are courts of limited jurisdiction possessing only that power expressly entrusted to them by the Constitution or statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Eleventh Amendment prohibits federal courts from hearing suits against states by citizens of another state, a foreign state, or of that same state.  *Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890); *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Eleventh Amendment sovereign immunity also applies where, though not directly named, "'the state is the real,

substantial party in interest.'"  *Richardson v. Southern Univ.*, 118 F.3d (5th Cir. 1997) (finding the State of Louisiana was the "real party in interest" as to claims against Southern University's Board of Supervisors).  The state is fairly considered the real party in interest where the judgment sought would be satisfied from a state's treasury or the state itself would be restrained from or compelled to act.  *Warnock*, 88 F.3d at 343 (quoting *Pennhurst*, 465 U.S. at 101 n. 11).

Defendants' motion seeks dismissal of claims against the Board based on sovereign immunity.  The Board is an arm of the State of Louisiana and, as such, entitled to sovereign immunity unless specifically waived.  *Raj v. Louisiana State University*, 714 F.3d 322, 329 (5th Cir. 2013).  The State of Louisiana has not waived its sovereign immunity as to suits under § 1983. La. R.S. 13:5106(A).  Neither has Congress abrogated Louisiana's sovereign immunity as to suits under § 1983.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Considering these precepts, this Court will recommend dismissal of all claims against defendants LSUE and the Board by Plaintiff under 42 U.S.C. § 1983 pursuant to Fed. R. Civ. P. 12(b)(1) based on sovereign immunity.

**B.      Insufficiency of process under Fed. R. Civ. P. 12(b)(4)**

As explained above, Plaintiff's original and amended complaints name LSUE, by and through its Board of Supervisors, as a defendant to this suit.  Plaintiff's original complaint designated LSUE as the defendant and simply identified the Board of Supervisors as the governing body of LSUE.  (Rec. Doc. 1 at ¶¶ 6 – 7).  Plaintiff's amended complaint identifies LSUE as a public university and names its Board of Supervisors as the party defendant. (Rec. Doc. 33 at ¶¶ 6 – 7).  Although Plaintiff made a highly technical edit to the amended complaint's list of parties, the undersigned agrees with Defendants' observation that LSUE remains designated as a party to the suit and necessarily interpreted as a party defendant.  (FAC at p. 11 "<u>FIRST CAUSE OF</u>

ACTION Violation of Title II of the Americans with Disabilities Act (Against Defendant LSUE)" and p. 13 "SECOND CAUSE OF ACTION Violation of Section 504 of the Rehabilitation Act of 1973 (Against Defendant LSUE)"). Plaintiff does not address the discrepancy and appears to focus on service of process under Rule 12(b)(5). (Rec. Doc. 46 at pp. 9-11).

Challenges brought pursuant to Rule 12(b)(4) properly address the form of process, including the allegation that a party is incorrectly named. *Gartin v. Par Pharm. Companies, Inc.*, 289 Fed. App'x. 688, 692 (5th Cir. 2008) (internal citations omitted). To the extent that Plaintiff attempts to assert claims against LSUE directly, such claims must be dismissed for lack of capacity, as LSUE is not an entity capable of being sued under Louisiana law. La. R.S. 17:3351(A)(1); *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Richardson v. Southern Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)). Considering the foregoing, this Court will recommend Defendants' motion be granted as to all claims against purported defendant LSUE under 12(b)(4).

### C.   Insufficiency of service of process under Fed. R. Civ. P. 12(b)(5)

Defendants further challenge the court's personal jurisdiction under Rule 12(b)(5), alleging lack of proper service upon the Board under Fed. R. Civ. P. 4(j)(2), La. R.S. 13:5107, and La. R.S. 39:1538. (Rec. Doc. 37-6 at pp. 21-27). Plaintiff filed a return of service indicating that service was purportedly made on LSUE on January 5, 2022. (Rec. Doc. 8). Having already determined that LSUE is not an entity capable of being sued under Louisiana law, the undersigned must now determine whether service of process upon the Board was effected under applicable law.

Service of process in federal suits is governed by Fed. R. Civ. P. 4. *Omni Capital Intern., Ltd. v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Rule 4(j)(2) requires that

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

11

> (A)     delivering a copy of the summons and of the complaint to its chief executive officer; or
>
> (B)     serving a copy of each in the manner prescribed by that state's law for service a summons or like process on such a defendant.

La. R. S. 13:5107(A) provides that service upon a state agency be requested within 90 days of the filing of such suit.  La. R.S. 39:1538(D) requires that all claims against a state agency be served not only upon the Louisiana Attorney General and the agency itself, but also on the Office of Risk Management.

Thus, under Fed. R. Civ. P. 4(j)(2) and La. R.S. 13:5107(A) and 39:1538(D), Plaintiff was required to serve the Louisiana Attorney General with a copy of the complaint and summons within 90 days of the filing of suit and to further serve copies of the complaint and summons upon the LSUE Board of Supervisors and the Office of Risk Management.

Where, as here, service of process is alleged to be defective, Plaintiff bears the burden of demonstrating proper service.  *Systems Signs Supplies*, *supra*.  Plaintiff does not sustain her burden in this regard. Rather than demonstrating that service was made according to the provisions cited above, Plaintiff argues that "LSUE was served through their legal representatives making service proper."  (Rec. Doc. 46 at p. 11).  As explained above, LSUE is not a proper party defendant to this action and Plaintiff introduces no evidence tending to show that service was properly made upon the proper defendant, the Board.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (5th Cir. 1987) .  Courts considering the impact of failure to make service pursuant to La. R.S. 13:1507(A) and 39:1538(D) reach unified results where no good cause

is shown for such failure of service. *Thrasher v. City of Amarillo*, 709 F.3d 509 (5th Cir. 2013) (surveying prior cases wherein the appellate court affirmed dismissal based upon a lack of good cause, even where such dismissal results in time bar to refiling claim); *Systems Signs Supplies v. U.S. Dept. of Justice, Washington, supra,* (affirming district court's finding of lack of good cause where pro se plaintiff failed to effect service despite numerous attempts). The record indicates no effort by Plaintiff to perfect service under La. R.S. 13:5107(A) or 39:1538(D) after the filing of Defendants' first or second motions to dismiss.  Similarly, Plaintiff makes no argument in support of good faith, stubbornly refuting her burden of proof under Rule 4 and applicable Louisiana statutes.  This Court is aware of Plaintiff's initial need to proceed *pro se*, as her attorney did not timely enroll in the suit but notes that no further efforts at service were attempted since counsel's enrollment on or about March 25, 2022.  (Rec. Doc. 25).   Whether acting *pro se* or with representation of counsel, the requirements under Rule 4 and La. R.S. 13:5107(A) and 39:1538(D) apply uniformly.  *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("'[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.'")).  Although a court may extend the period for service for good cause shown, mistake or ignorance of law does not constitute such good cause. *Systems Signs*, *supra*, at 1013 – 14; *McDonald v. United States*, 898 F.2d 466 (5th Cir. 1990).

Plaintiff's opposition briefly suggests that leave of court be given to amend her complaint for a second time, should this Court find service is defective as against the Board.  (Rec. Doc. 46 at p. 18).  Even if the Court were to stretch the bounds of good cause to permit an enlargement of time for service in this case, this Court concludes that such relief would be futile, as Plaintiff's claims are prescribed under applicable law.  Neither Title II of the ADA, nor § 504 of the

Rehabilitation Act, nor 42 U.S.C. § 1983 contain their own statutes of limitations.   Where Congress does not provide a limitations period, the cause of action is governed by the most analogous state law provision.  *Frame v. City of Arlington*, 657 F.3d 215, 236-37 (5th Cir. 2011). La. Civ. C. Art. 3492 provides a one-year, liberative prescriptive period for tort actions and is the appropriate *de facto* statute of limitations for Title II ADA, Rehabilitation Act, and § 1983 claims. *Id.*; *Burge v. Parish of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993).  "Where the limitations period is determined with reference to state law, accrual of a cause of action is governed by federal law." *Webster v. Board of Supervisors of University of Louisiana System*, 2015 WL 4197589 (E.D. La. 7/10/2015) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  Accrual occurs "the moment the plaintiff becomes aware he has suffered an injury or has sufficient information to know that he has been injured."  *Webster*, 2015 WL 4197589 at *5 (internal citations omitted). Construing the facts of the case in the light most beneficial to Plaintiff, her claims prescribed on or about April 7, 2022; one year from the date on which she learned of  the decision to affirm the findings and sanctions of the student conduct hearing officer and UHP.[1]  Although Plaintiff's suit was filed on November 22, 2021, well within the prescriptive period, Plaintiff's failure to effect service as required results in the voiding of such suit.  This is true because, pursuant to La. R.S.13:5107(D), a suit as to which service is not perfected does not interrupt the running of prescription.  *Cruz v. Louisiana*, 528 F.3d 375, 378 (5th Cir. 2008) (instructing that interruption of prescription during the pendency of a suit under La. Civ. C. Art. 3463 does not operate where the suit is later dismissed for failure to effect service).

---

[1]     Plaintiff's complaint alleges she was informed of the Chancellor's decision on her second level appeal by correspondence dated April 7, 2021 from LSUE's General Counsel.  Rec. Doc. 33 at ¶ 54.

Considering the foregoing, this Court will recommend the dismissal of Plaintiff's claims against the Board for failure to effect service pursuant to Fed. R. Civ. P. 12(b)(5). This Court is aware of the heightened standard for dismissal where, as here, "'the applicable statute of limitations likely bars future litigation'" since such a result is "'an extreme sanction[.]'" *Thrasher*, 709 F.3d at 512 (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008) (citing *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 213 (5th Cir. 1976)). As detailed above, the record in this case is replete with delay, obstinance, and a lack of any demonstrated effort to effect service as required.  Plaintiff acted *pro se* in this matter during the period in which service should have been effected.  Plaintiff's own failure to make service according to Rule 4(m) and Louisiana law is not excused by virtue of her *pro se* status.  *Systems Signs Supplies v. U.S. Dept. of Justice, Washington D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (citing *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988)).   Considering Plaintiff's *pro se* status during the period in question, we do not perceive this as a case in which Plaintiff's counsel is solely to blame for the failure of service, requiring additional consideration.  *Thrasher*, 709 F.3d at 514 (quoting *Millan*, 546 F.3d at 326) (internal citations omitted).  For the foregoing reasons, this Court will recommend defendants motion be further granted, dismissing Plaintiff's claims against the Board with prejudice pursuant to Fed. R. Civ. P. 12(b)(5) and La. Civ. C. Art. 3492.

**III.    Claims against Smith**

Plaintiff's amended complaint asserts claims against Smith in his official and individual capacities for violation of her due process rights under the Fifth Amendment, made applicable to the states by the Fourteenth Amendment.  (FAC at ¶¶ 81-94).  Plaintiff's claims against Smith are addressed below.

## A.  Official capacity claims

As a university official, Smith is a "state official" for purposes of this suit because the Louisiana State University system is an "arm of the state" according to Fifth Circuit jurisprudence. *Raj*, 714 F.3d at 328.  Claims against Smith in his official capacity are interpreted as claims against the State of Louisiana. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).  With few exceptions, the Eleventh Amendment bars suits against states, their agencies and officials by, *inter alia*, citizens of that state. *Cozzo v. Tangipahoa Parish Council – President Gov't.*, 279 F.3d 273, 280 (5th Cir. 2002); *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 146 (5th Cir. 1991).  An exception to the defense of Eleventh Amendment sovereign immunity applies to suits against state officials in their official capacities for prospective relief.  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Edelman v. Jordan*, 415 U.S. 651 (1973), *Milliken v. Bradley*, 433 U.S. 267 (1977)).  "Thus, 'prospective or declaratory relief against a state [official] is permitted…but retrospective relief in the form of a money judgment in compensation for past wrongs…is barred.'"  *Nelson v. University of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988)).  Accordingly, claims against Smith for retrospective monetary relief must be dismissed pursuant to the Eleventh Amendment's sovereign immunity bar on such claims. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Clay v. Texas Women's Univ.*, 728 F.2d 714, 715-16 (5th Cir. 1984) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).  We now turn to Plaintiff's amended complaint to examine any remaining claims for prospective relief under the *Ex parte Young* exception. *Ex parte Young*, 209 U.S. 123, 167-68 (1908); *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020).

Read generously, Plaintiff's amended complaint's prayer for unspecified "declaratory and injunctive relief" may be construed as one for vacatur of the university's findings and sanction regarding the cheating allegations against Plaintiff and/or reinstatement to LSUE's nursing program.[2]  In this Court's view, the permissible inference of requested prospective relief depends upon the scope of Plaintiff's § 1983 claim.  If Plaintiff's claim is based on the allegation of cheating and resulting hearings, prospective relief would take the form of vacatur of the sanction of a zero on the exam at issue.  On the other hand, if Plaintiff's claim is based on her eventual dismissal from the nursing program, prospective relief would include reinstatement to the program.  Plaintiff's claim under § 1983 does not directly address her dismissal from LSUE's nursing program, focusing instead on the hearings held as to the university's cheating allegation against her.  (FAC at ¶¶ 89-92).  The closest approximation of a claim for reinstatement based on her eventual dismissal appears in Paragraph 93 of the amended complaint, in which Plaintiff alleges "…Plaintiff has suffered…a serious threat to succeeding in her chosen career."  (FAC at ¶ 93).  Based on the foregoing, construction of Plaintiff's complaint as incorporating a claim for reinstatement is a reach.  However, out of an abundance of caution, this Court will assume inclusion of claims for vacatur of the exam-related sanction, as well as for reinstatement to LSUE's nursing program.  Assuming such claims are fairly included in Plaintiff's amended complaint, we proceed to analysis.

To state a claim for injunctive relief, Plaintiff must show:  (1) that she was deprived of a constitutionally protected interest, and (2) that she was deprived of that interest without constitutionally adequate process. *Mathai v. Bd. of Sup'rs of Louisiana State Univ. and Agr. and*

---

[2]    This Court notes Plaintiff's memorandum in opposition to Defendants' motion to dismiss also fails to request reinstatement or otherwise specify the nature of the prospective relief sought.  (Rec. Doc. 46).

*Mech. College*, 959 F. Supp. 2d 951, 958 (E.D. La. 7/17/2013) (citing *LaCroix v. Marshall Cnty.*, 409 Fed.Appx. 794, 803 (5th Cir.2011)).   We begin with Plaintiff's claim for vacatur of the exam-related sanction imposed.  (FAC at ¶¶ 81-94).  It is undisputed that the hearings at issue in this case resulted in the sanction of zero credit on Plaintiff's NURS2352 exam.  (FAC at ¶ 88). This Court assumes, without deciding, that Plaintiff possesses a cognizable liberty or property interest in her NURS2352 exam grade, but notes that neither party addresses this issue.  *Perez v. Texas A&M University at Corpus Christi*, 589 Fed. Appx. 244 (5th Cir. 2014) (quoting *Smith v. Davis*, 507 Fed. Appx. 359, 362 (5th Cir. 2013) ("'The [Supreme] Court has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections[…] our court has followed suit.'")).  *Wheeler v. Miller*, 168 F.3d 241 (5th Cir. 1999) (assuming cognizable liberty or property interest for appellate purposes, as did the district court before it); *Davis v. Mann*, 882 F.2d 967, 973 (5ᵗʰ Cir. 1989) (quoting *Horowitz*, 435 U.S. 78 ("'assuming the existence of a liberty or property interest,'" in evaluating due process required in academic proceedings resulting in dismissal from post-graduate residency program)).  Analysis must now consider whether Plaintiff alleges that she was deprived of her protected interest without requisite due process.

Plaintiff's complaint alleges that the individual defendants, including Smith, deprived Plaintiff of the due process to which she was entitled under the Constitution when:

(a) [d]uring the UHP meeting, Defendants were unable to produce important evidence, such as the original scratch paper or live witnesses[;]

(b) …Defendants did not produce any affirmative evidence that could sustain a finding by a preponderance of the evidence that Plaintiff was responsible for charges levelled against her[;]

(c) Defendants did not consider an email from one of Plaintiff's advisors confirming that Plaintiff always takes scratch paper

with her into exams on which she would write out all her knowledge at the beginning of an exam and that the writing on the scratch paper can vary in size[;]

(d) [t]he biased Defendant Smith stayed with the UHP while they formed their decision, while Plaintiff had to leave the room.  The presence of Defendant Smith unduly influenced the UHP to find against Plaintiff.

(Rec. Doc. 27 at ¶ 91).

The Due Process Clause guarantees that "[n]o person shall be...deprived of life, liberty, or property, without due process of law."  U.S. CONSTITUTION, Amend. V.   The Fifth Amendment's due process protections include a substantive component, as well as a procedural component.  *Reyes v. North Texas Tollway Auth.*, 861 F.3d 558, 562 (5th Cir. 2017).  Inherent in the due process protections of the Constitution is the right to be heard "'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  While procedural due process regards the process of adjudication used prior to the deprivation of a protected liberty or property interest, substantive due process recognizes that some such deprivations are barred no matter what procedural due process is afforded. *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)).

Plaintiff's allegations referenced above allege defects in the adjudicative process employed by Defendants, which implicates Plaintiff's procedural due process rights.  Out of an abundance of caution, this Court will also consider whether Plaintiff states a claim for a substantive due process violation.

Within the university context, proceedings may be either academic or disciplinary in nature.  *Pham v. University of Louisiana at Monroe*, 194 F. Supp. 3d 534 (W.D. La. 7/13/2016) (citing *Shah v. Univ. of Tex. Southwestern Med. Sch.*, 54 F. Supp. 3d 681, 692 (N.D. Tex. 2014),

19

*Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 98 (1978)). Proceedings arising

from allegations of cheating may be regarded as "disciplinary" or "academic" within the Fifth

Circuit. *Patel*, 941 F.3d at 747 (proceedings regarding allegations of cheating and plagiarism

during a final exam were academic in nature); *Pham v. Blaylock*, 712 Fed. Appx. 360 (5th Cir.

2017) *cert. denied*, 138 S. Ct. 1548 (2018) (proceedings against pharmacy student regarding

allegations of cheating were disciplinary in nature); *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir.

1999) (academic deficits of Ph.D. student were the basis of dismissal, despite additional cheating

allegations, making proceedings at issue were academic in nature). As explained below, whether

viewed as disciplinary or academic in nature, this Court finds Plaintiff fails to allege facts which,

if true, would support a procedural due process claim against Smith.

In *Board of Curators of the University of Missouri v. Horowitz*, the U.S. Supreme Court

addressed procedural due process requirements in university disciplinary proceedings, instructing

that students subject to disciplinary proceedings must

> 'be given oral or written notice of the charges against him and, if he
> denies them, an explanation of the evidence the authorities have and
> an opportunity to present his side of the story'…[comprising] an
> 'informal give-and-take' between the student and…'administrative
> body…that would, at least, give the student 'the opportunity to
> characterize his conduct and put it in what he deems the proper
> context.'

*Horowitz*, 435 U.S. 78, 85-86 (1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 740-41 (1975)). Later

in *Perez v. Texas A&M University at Corpus Christi*, the Fifth Circuit, also citing *Goss*, explained

that "[i]f a public university dismisses a student for 'disciplinary reasons,' the student is not entitled

to a formal hearing…" 529 Fed. Appx. 244, 248-49 (5th Cir. 2014) (citing *Goss*, 419 U.S. at 584).

Here, Plaintiff does not allege she was not provided with notice or hearing as to the

cheating allegation lodged against her. Correspondence cited in the amended complaint affirms

that Plaintiff was granted a series of hearings, at which she appeared and presented her side of the story.  (FAC at ¶¶ 37, 45, 53; Rec. Doc. 36-3, 36-5).   Plaintiff's allegations that the original "cheat sheet" at issue was not produced, that LSUE failed to produce live witnesses and relied upon hearsay testimony, and that Smith remained in the proceeding during deliberation while Plaintiff had to wait outside the proceeding are unavailing.  (FAC at ¶¶ 46-50).

Due process does not require that an accused student be permitted to cross-examine an accusing witness in person.  *Walsh v. Hodge*, 975 F.3d 475, 485 (5th Cir. 2020) (agreeing with First Circuit Court of Appeals' position "'that due process in the university disciplinary setting requires 'some opportunity for real-time cross-examination, even if only through a hearing panel…we have no reason to believe that questioning…by a neutral third party is so fundamentally flawed as to create a categorically unacceptable risk of erroneous deprivation.'" (internal citation omitted)).  Further, due process does not require adherence to the rules of evidence.  (*Esfeller v. O'Keef*, 391 Fed. Appx. 337 (5th Cir. 2010) (disciplinary proceedings do not require the formalities or procedural protections of trial), *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697, 701 (5th Cir. 1974) (use of hearsay testimony during disciplinary proceeding does not violate a student's due process right).  Finally, due process does not permit the inference of bias except where a Plaintiff can show: (1) the official possessed a pecuniary interest in the outcome of the proceeding; or (2) that the official previously subjected Plaintiff to "personal abuse or criticism." *Pham*, *supra*, at 363 (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  Plaintiff fails to allege facts which would permit the inference of bias as to Smith.  Thus, Plaintiff's claim for injunctive relief based on an alleged procedural due process violation in the context of a disciplinary proceeding must fail.

To the extent that Plaintiff's amended complaint alleges a violation of her substantive due process right regarding disciplinary proceedings, this Court similarly concludes that such claim fails, as Plaintiff fails to allege acts by the university that "shock the conscience."  *City of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  Plaintiff's amended complaint alleges the proceedings at issue were "devoid of due process and completely arbitrary at every stage."  (FAC at ¶ 92).  Plaintiff does not allege a departure from school policy, nor does Plaintiff otherwise factually support her claim of arbitrary proceeding.  Moreover, Plaintiff fails to allege the lessened sanction imposed against her – a grade of zero as to the exam in question, rather than the standard sanction of a failing grade in the overall class – was unreasonable in light of the alleged cheating conduct.  Accordingly, Plaintiff's claim for injunctive relief based on an alleged substantive due process violation in the context of a disciplinary hearing also fails.

To the extent Plaintiff's amended complaint seeks to assert a liberty or property interest deprivation based on her subsequent academic dismissal, such claim must also fail.  Defendants assert and Plaintiff does not dispute, that her eventual dismissal was based on her accrual of two unsatisfactory or failing grades in nursing curriculum courses during her enrollment.  Correspondence following the first two steps of the hearing process does not reference expulsion, but, rather, the sanction of zero credit on the particular exam at issue.  Accordingly, Plaintiff's eventual dismissal from LSUE's nursing program is not alleged to be the result of the university's findings as to the allegation of cheating lodged against her.  Were we to construe Plaintiff's amended complaint as so alleging, such claim would still fail since Plaintiff fails to refute Defendants' assertion that her dismissal was based on her academic record; to wit: Plaintiff's accrual of two failing grades in nursing curriculum courses, and not the proceedings at issue.  Plaintiff does not offer evidence or argument that her ultimate dismissal was arbitrary or otherwise

22

shocking to the conscience.[3]  Any claim for substantive due process grounded in her ultimate dismissal is, therefore, not viable given the "'narrow avenue of judicial review'" applicable to decisions within an academic setting. *Wheeler*, 168 F.3d at 249 (quoting *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 227 (1985)).

Considering this Court's finding that Plaintiff fails to allege the deprivation of a protected liberty or property interest without requisite procedural or substantive due process, whether based on a disciplinary hearing or an academic dismissal, Plaintiff's §1983 claim against Smith in his official capacity must be dismissed based on lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), since Plaintiff fails to allege facts sufficient to establish a claim for injunctive relief under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity.

### B.  Individual capacity claims

Plaintiff asserts claims against Smith in his individual capacity under 42 U.S.C. §1983. (FAC at ¶¶ 81-94).  Defendants urge dismissal of this claim, as well as claims against Smith in his individual capacity under the ADA and Sec. 504 of the Rehabilitation Act.  It is well established that neither Title II of the ADA, nor Section 504 of the Rehabilitation Act establish causes of action against government officials in their individual capacities. *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999).  Plaintiff's amended complaint specifies that claims under the ADA and Sec. 504 of the Rehabilitation Act are brought only against "Defendant LSUE[.]"  (Rec. Doc. 33 at pp. 11, 13).  On that basis, dismissal of such claims is unnecessary, but to the extent Plaintiff's amended complaint may be read to include individual capacity ADA and Rehabilitation Act claims against

---

[3]     This Court resolves this factual dispute under the standard applicable to motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), based on a potential lack of subject matter jurisdiction if the defense of sovereign immunity under the Eleventh Amendment applies.

Smith, this Court will recommend dismissal with prejudice of all such claims pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's individual capacity §1983 claim against Smith remains for consideration.  As argued by Defendants, the Fifth Circuit conclusively established that plaintiffs may not press claims for violations of the ADA or § 504 of the Rehabilitation Act via § 1983.  *Pace v. Bogalusa City School Board*, 403 F.3d 272, 278-88 (5th Cir. 2005); *Lollar*, 196 F.3d at 610 (citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997)).  Accordingly, this Court will recommend dismissal with prejudice any purported § 1983 claims for violation of the ADA or Section 405 of the Rehabilitation Act against Smith in his individual capacity.

To state a claim for relief under §1983 in this case, Plaintiff must show the deprivation of a liberty or property interest secured by the Constitution and an action by Smith, acting under color of state law, that resulted in the identified deprivation without requisite due process.  *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991)).

As explained above, this Court finds Plaintiff fails to allege facts which, when taken as true, give rise to a cognizable claim against Smith in his official capacity for the deprivation of what this Court continues to assume is a constitutionally protected liberty or property interest in either her NURS2532 exam grade or her continued education as a nursing student at LSUE without due process under the Fifth and Fourteenth Amendments.  Given this Court's findings above, Plaintiff similarly fails to allege facts sufficient to state such claims against Smith in his individual capacity.[4]  Specifically, Plaintiff's allegations of inadequate procedural and substantive due

---

[4]     This Court's findings are made pursuant to the standard applicable to motions filed pursuant to Fed. R. Civ. P. 12(b)(6).

process fail, as they do not allege facts, when taken as true for these purposes, would constitute a violation of the due process required of a university in a disciplinary or academic proceeding.  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (reciting applicable standards as to motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)) (internal citations omitted).

Considering this Court's findings regarding Plaintiff's claims under 42 U.S.C. § 1983 as to Smith in his official and individual capacities, it is similarly concluded that Plaintiff fails to allege facts sufficient to state cognizable claims against "Doe Defendants 1-20[,]" named in Plaintiff's amended complaint as, "individuals who were employed by LSUE during the period of Plaintiff's enrollment [whose] names and job titles [are] currently unknown."  (FAC at ¶ 9). Plaintiff alleges no facts as to any such Doe Defendant, making dismissal under Fed. R. Civ. P. 12(b)(6) appropriate at this time.

## Conclusion

For the reasons discussed herein, the Court recommends that Defendants' motion be granted as follows: as to all purported claims against LSUE and all claims against the Board of Supervisors of Louisiana State University pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5), dismissing all such claims with prejudice based on prescription under La. Civ. C. Art. 3492; as to all claims against defendant Kyle Smith in his official capacity pursuant to Fed. R. Civ. P. 12(b)(1), dismissing such claims without prejudice; as to all claims against defendant Kyle Smith in his individual capacity pursuant to Fed. R. Civ. P. 12(b)(6), dismissing such claims with prejudice; and as to all claims against Doe Defendants 1-20 pursuant to Fed. R. Civ. P. 12(b)(6), dismissing such claims with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

**THUS DONE** in Chambers, Lafayette, Louisiana on this 9th day of March, 2023.

_____

DAVID J. AYO
**UNITED STATES MAGISTRATE JUDGE**

26